IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH FRIEL, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff

vs.

LINE 5, LLC, HEADSTART WARRANTY GROUP LLC and JEA MANAGEMENT SERVICES d/b/a COVERED AUTO

        Defendants.

Case No.

# CLASS ACTION COMPLAINT

## Preliminary Statement

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id.*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.     Plaintiff Joseph Friel ("Plaintiff") brings this action under the TCPA alleging that

JEA Management Services d/b/a Covered Auto sent pre-recorded telemarketing calls on behalf of Headstart Warranty Group LLC and Line 5, LLC promoting their goods and services, including to calls that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8. Plaintiff Joseph Friel is a resident in this District.

9. Defendant JEA Management Services d/b/a Covered Auto is a seller of vehicle service contracts, colloquially known as extended warranties, who sent pre-recorded telemarketing calls on behalf of Headstart Warranty Group LLC and Line 5, LLC.

## Jurisdiction & Venue

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. This Court has general personal jurisdiction over both Defendants Headstart Warranty Group, LLC and Line 5, LLC, because they have registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania. This Court has specific personal jurisdiction over Defendant JEA because it sent

3

calls into this District, including as part of its efforts to further the joint business enterprise in which it was engaged with Headstart and Line 5.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

## The Telephone Consumer Protection Act

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

## Factual Allegations

14.     Defendant JEA Management Services d/b/a Covered Auto sells vehicle service contracts, colloquially known as "extended warranties." Upon information and belief, as best Plaintiff can discern, JEA acts as a sales agent for Defendant Headstart's service contracts.

15.     Defendant Headstart Warranty Group LLC is a seller and guarantor of vehicle service contracts. Upon information and belief, Headstart is the guarantor of the vehicle service contracts and is the entity that will purportedly pay a covered repair under the contract.

16.     Defendant Line 5 handles the customer management, payment processing, and also provides financing for the service contracts sold by JEA and guaranteed by Headstart.

17.     To generate business for this joint enterprise, JEA place illegal telemarketing calls, some pre-recorded, on Headstart's and Line 5's behalf.

18.     Plaintiff's telephone number, (610) XXX-XXX, is a non-commercial telephone number not associated with any business.

4

19. Plaintiff's telephone number is used for personal residential purposes.

20. Plaintiff's telephone number has been listed on the National Do Not Call Registry since 2011.

21. Plaintiff has never been a customer of any of the Defendants nor asked or inquired to be a customer of any of the Defendants.

22. Despite that, the Plaintiff received at least fourteen telemarketing calls from JEA from August 8, 2024 to September 27, 2024, from various caller IDs, including 610-987-7826, 610-424-6854, 267-338-4647, 610-537-7100, 267-329-8297, 610-665-3944, 610-440-0343, 610-898-3992, 267-947-6287, 267-220-6347, 272-304-2756, 272-301-4734, and 267-703-3851.

23. The calls all began with a prerecorded message with the same fake typing and office background noise.

24. The calls all started with the same pre-recorded voices, possibly using an Artificial Intelligence (AI) robot or Mechanical Turk, and began:

> Hey Joseph, my name is Adam calling on behalf of the Vehicle Service Department. How are you doing today?

25. Defendants use the fake name "Vehicle Service Department" to obfuscate their identities and themselves as the source of the illegal calls Plaintiff received.

26. The Plaintiff would simply hang up on most of these calls because he was not interested.

27. However, to identify the identity of the individuals calling him illegally, and for no other reason, the Plaintiff played along during a call he received on 9/27/2024 at 11:37j from the caller ID 267-878-3165.

28. That call began with the same pre-recorded voice:

5

> Hey Joseph, my name is Adam calling on behalf of the Vehicle Service Department. How are you doing today?

29. Plaintiff replied, "I'm fine." The call continued:

> Well Joseph, the main reason for the call is to see if you still have some type of coverage on your vehicle. I just want to confirm that you still drive a Hyundai. Is that right?
> Yes.
> And how are you liking it so far?

30. Even today, when the 267-898-3165 number is called, the same pre-recorded message plays, albeit with slight differences. Accordingly, it is evident that Defendants continue to use pre-recorded messages and voices and such conduct will continue in the absence of an injunction.

31. The AI/Mechanical Turk, "Adam," continued with a marketing script, and asked the Plaintiff for the mileage of his car, asked about the car's condition, and then connected the call to a live sales agent, named "Charles Burch."

32. Unlike the previous AI/Mechanical Turk, Mr. Burch was clearly a human being. He asked the same questions, explained the protection plan and what was included, and also extolled some of the benefits, including hotel reimbursement, a rental car, and oil changes.

33. Mr. Burch also extolled the benefits of Line 5's financing program, explaining that Line 5 would finance the monthly fee of $134.80 and that it would also cover the normal $400 start fee with zero money down.

34. Mr. Burch specifically mentioned the benefits of Line 5's financing by name.

35. Mr. Burch also provided a callback number of 800-853-7773.

6

36. Thereafter, the Plaintiff received various emails and text messages from Line5, including an email sent by Line5 itself stating that there were coverage documents ready to sign, and linking to an E-Sign form to be signed through Line5's platform.

37. This email also listed "Charles Burch" as the "Finance Manager" and "Covered Auto-AP" as the "Dealer."

38. "Covered Auto" is a DBA for Defendant JEA Management Services.

39. The proposed Vehicle Service Agreement linked in the email listed the "Seller" as "Covered Auto," the "Lienholder" as "Line 5, LLC" and Defendant Headstart as the "Obligor."

40. The aforementioned calls were placed using and beginning with a prerecorded voices because: (a) the robot's questions and speech were sometimes cut off and clunky, (b) the robot had an identical, generic, monotone voice, (c) it would be illogical for a human to call someone and play various scripted questions and statements without the ability to engage in dialogue, (d) the robot repeated the same identical phrases during the call multiple times exactly the same way, just like playing back a recording, and (e), the Plaintiff was eventually transferred to a human being who was obviously human.

41. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

42. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

43. The FCC has instructed that sellers such as Headstart and Line5 may not avoid liability by hiding behind third party agents like Defendant JEA or outsourcing telemarketing and sales operations to third parties, such as JEA:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

44. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

45. Headstart and Line 5 is liable for Defendant JEA's conduct and telemarketing calls placed by JEA and ultimately bade for Headstart and Line 5 to generate customers for Headstart and Line 5, including the Plaintiff.

46. Indeed, Headstart and Line 5 relationships with Defendant JEA contain numerous hallmarks of agency.

47. Those hallmarks are principally in the purported agreement Plaintiff was asked to sign, which listed Line 5 as a "Lienholder" and JEA as the specific seller of the contract which Headstart underwrote and obliged itself to.

48. As such, JEA entered into contracts purporting to bind Headstart and Line 5, and therefore purported to be able to incur obligations and enter into contractual relations involving Headstart.

49. Headstart and Line 5 thus had full knowledge of JEA's illegal conduct and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior.

50. The aforementioned facts also demonstrate that Headstart and Line 5 failed to supervise JEA or enforce their compliance with applicable laws and regulations.

51. Headstart and Line 5 could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by selling in a compliance manner directly to consumers, or at the very least requiring its agents to report do not call requests and forbidding its agents from using other than approved lead generation sources, but it did not.

52. Headstart and Line 5 was interested in hiring agents to sell its products and services and financing companies to finance its contracts, who would in turn handle all aspects of the sales process, vet potential clients, and incur obligations on its behalf to interested customers they managed to sell.

53. To do so, Headstart and Line 5 authorized and hired JEA to orchestrate an *en masse* telemarketing campaign to sell its contracts for which it would be obliged.

54. Headstart and Line 5 controlled the day-to-day activities of JEA by providing the specific criteria for the consumers it would accept and oblige itself to and required its agents, to adhere to those criteria, including form contracts it drafted, which also made clear they had actual knowledge of both parties' conduct.

55. Defendants did so despite numerous indications that the Plaintiff was not interested and did not want any further calls.

56. Finally, Headstart and Line 5 could have terminated JEA.

57. It did not.

58. By virtue of identifying the criteria for customers they wanted and that they would accept to sign the contracts and directing the conduct and other indicia of the calls at issue described above, Headstart and Line 5 directed JEA in their calling, including by being the obligor and financer of the contract sold by JEA

59. A reasonable obligor and service contract company like Headstart and Line 5 whose telemarketers, financing companies, and agents are making calls would investigate into the reasons why their agents, financing companies, and telemarketers would be calling numbers on the National Do Not Call Registry and, moreover, with highly-illegal prerecorded robocalls.

60. Indeed, Headstart and Line 5 could have investigated if the contracts it was asked to oblige itself to contained customers whose numbers were on the National Do Not Call Registry.

61. It did not.

62. Headstart and Line 5 hired JEA without a proper investigation and did not terminate either of them when they were informed of JEA's illegal calling conduct.

63. As such, they knowingly ratified JEA's conduct.

64. Headstart and Line 5 also ratified JEA's conduct because, with knowledge of the fact that JEA was calling numbers on the National Do Not Call Registry with highly-illegal prerecorded robocalls, they accepted the Plaintiff's lead and ultimately attempted to sell the

Plaintiff a policy to which it would be obliged, which was, on face, sold by JEA and in which Line 5 had a security interest and financed.

65. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

66. The aforementioned calls to the Plaintiff were unwanted.

67. The calls were nonconsensual encounters.

68. Plaintiff's privacy has been violated by the above-described telemarketing calls.

69. Plaintiff never provided his consent or requested the calls.

70. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

71. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

72. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

73. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

74. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of JEA Management Services d/b/a Covered Auto, Headstart Warranty Group LLC, or Line 5, LLC, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

75. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

76. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

77. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

78. This Class Action Complaint seeks injunctive relief and money damages.

79. The Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

80. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

81. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

82. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

83. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

84. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

   a. Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

   b. Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

   c. The corresponding degrees and liability as among and between Defendants;

   d. Whether Defendants' conduct constitutes a violation of the TCPA; and

   e. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

85. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

86. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

87. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

88. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

89. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

### Statutory Violations of the Telephone Consumer Protection Act
### (47 .S.C. § 227(b)) on behalf of the Robocall Class

90. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

91. The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

92. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

93. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

94. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

95. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

96. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

97. Defendants' violations were negligent, willful, or knowing.

98. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

99. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to

15

telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.  Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.  Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

C.  That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D.  An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

E.  Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Plaintiff,
By Counsel,

*/s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich (*subject to pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com