# **<u>EXHIBIT F</u>**

Case 3:24-cv-01866-JKM   Document 30-6   Filed 01/21/25   Page 2 of 7

Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC, Not Reported in Fed....

2019 WL 7195309
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

LACKAWANNA CHIROPRACTIC P.C., a New York professional corporation, individually and on behalf of all others similarly situated, Plaintiff,
v.
TIVITY HEALTH SUPPORT, LLC, a Delaware limited liability company, Defendant.

18-CV-00649-LJV-JJM
|
Signed 08/29/2019

**Attorneys and Law Firms**

Avi R. Kaufman, Pro Hac Vice, Kaufman P.A., Miami, FL, Stefan Louis Coleman, Law Offices of Stefan Coleman, P.A., New York, NY, for Plaintiff.

Emma Jane O'Connor, Pro Hac Vice, David C. Layden, Pro Hac Vice, Jenner & Block LLP, Chicago, IL, Sharon M. Porcellio, Bond, Schoeneck & King, PLLC, Buffalo, NY, for Defendant.

### REPORT AND RECOMMENDATION

JEREMIAH J. MCCARTHY, United States Magistrate Judge

 *1  This action has been referred to me by District Judge Lawrence J. Vilardo for supervision of pretrial proceedings [40]. [1] Before the court is plaintiff Lackawanna Chiropractic P.C.'s unopposed Motion seeking preliminary approval of a class action settlement [39]. For the following reasons, I recommend that the motion be denied. [2]

### BACKGROUND

**A. Litigation History**
Lackawanna Chiropractic commenced this action on June 7, 2018, seeking relief on behalf of itself and others for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Complaint [1]. Subject to certain exceptions (47 U.S.C. § 227(b)(1)(C)(i-iii)), the TCPA prohibits the "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" (47 U.S.C. § 227(b)(1)(C)), and defines "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise". 47 U.S.C. § 227(a)(5). It allows "recover[y] for actual monetary loss from such a violation, or ... $500 in damages for each such violation, whichever is greater" (47 U.S.C. § 227(b)(3)(B)), and provides treble damages for "willful[ ] or knowing[ ]" violations. 47 U.S.C. § 227(b)(3).

Lackawanna Chiropractic alleges that defendant Tivity Health Support, LLC sent "facsimile advertisements ... to Plaintiff and members of the Class without their prior express invitation or consent, and despite the lack of an existing business relationship between it and members of the Class", and that "[b]y sending the unsolicited advertisement faxes at issue to Plaintiff and members of the Class without their prior express invitation or permission, Defendant violated 47 U.S.C. § 227(b)(1)(C)". Amended Complaint [15], ¶¶30-31. That pleading defined the proposed class as "[a]ll persons and entities who (1) on or after four years prior to the filing of the initial complaint in this action, (2) were sent a telephone facsimile advertisement, (3) by or on behalf of Tivity, and (4) from whom Tivity did not have a record of prior express consent to send the facsimile advertisements, or from whom Tivity claims to have obtained consent in the same manner it claims to have obtained consent from Plaintiff" (id., ¶19). [3]

Prior to answering, Tivity moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6), arguing that Lackawanna Chiropractic failed to plausibly allege that the fax which Tivity sent to it [15-1] constituted an "unsolicited advertisement" within the meaning of 47 U.S.C. § 227. [19]. In a Corrected Decision & Order dated January 23, 2019 [24], Judge Vilardo denied that motion. While noting that "[i]f Tivity did not have the commercial purpose of promoting its products and services when sending the fax, it may not have violated the TCPA", he concluded that "plaintiffs have plausibly alleged that Tivity sent a fax with a commercial purpose of advertising the commercial availability and quality of its goods and services and that the fax therefore was commercial in nature.... Tivity can rebut that allegation, but only after answering the complaint and proceeding to discovery". Id., p. 8

**\*2** Thereafter, Tivity answered the Amended Complaint, denying that it faxed unsolicited advertisements to Lackawanna Chiropractic or members of the alleged class (Tivity's Answer [29] ¶¶30-31), and affirmatively alleging that Lackawanna Chiropractic "and/or the members of the putative class provided express permission or invitation to receive the faxes at issue" and "had an established business relationship ('EBR') with Tivity". Id., p. 14, ¶¶3-4.

**B. The Proposed Settlement**
Unlike the class defined in the Amended Complaint, the proposed settlement class consists of "[a]ll individuals and entities within the United States who were sent a fax by or on behalf of Tivity for the purpose of recruiting the recipient, or an individual or entity affiliated with the recipient, to join a Tivity network from June 7, 2014 through the date of the Preliminary Approval Order". Settlement Agreement and Release [39-1], ¶53. [4] Tivity agrees to pay up to $645,000, retaining any unclaimed portion of that amount. Id., ¶54. It further agrees not to contest counsel's claim for attorney's fees up to $200,000, counsel's costs up to $10,000, and a service award to Lackawanna Chiropractic of $5,000, all to be paid from the $645,000 settlement funding. Id., ¶¶70, 80-81.

In order to participate in the settlement, each class member must submit a claim form stating "under penalty of perjury that to the best of my knowledge I received one (1) or more faxes seeking to recruit an individual or entity to join a Tivity network between June 7, 2014 and the present". Id., p. 47 of 74 (CM/ECF pagination). The amount to which each member is entitled is determined by multiplying "the number of Tivity Faxes sent to the fax number of the Settlement Class Member" by "$375.00 minus a *pro-rata* allocation of Settlement Costs (which allocation is calculated by taking total Settlement Costs divided by the total number of Tivity Faxes sent to the Settlement Class). By way of example only, if 1,720 Tivity Faxes were sent to the Settlement Class, and total Settlement Costs are $230,000, a Settlement Class Member submitting an Approved Claim with respect to one Tivity Fax will be paid $241.28 ($375.00-($230,000/1,720))." Id., ¶70. [5] Any class member who does not timely opt out of the class is deemed to have released all claims "arising from Tivity Faxes". Id., ¶39.

**DISCUSSION**

Although class counsel insists that "[t]here can be no doubt that this Settlement is a fair and reasonable" (Kaufman Declaration [39-2], ¶14), the court may not simply take his word for it. *See* Martin v. Cargill, Inc., 295 F.R.D. 380, 386 (D. Minn. 2013) ("the parties seek the Court's blessing over their settlement, based primarily upon their *ipse dixit* - the proposed settlement is fair, adequate, and reasonable because they say so. The Court cannot approve a settlement on such a rocky foundation").

While there is a "strong judicial policy in favor of settlements, particularly in the class action context", Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), "preliminary approval of a proposed class action settlement is not simply a judicial 'rubber stamp' of the parties' agreement". Oladapo v. Smart One Energy, LLC, 2017 WL 5956907, \*16 (S.D.N.Y.), adopted, 2017 WL 5956770 (S.D.N.Y. 2017). Acting as "a guardian of the rights of absent class members", Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 52 (2d Cir. 2000), the court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness ... and that it was not a product of collusion". D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

**\*3** "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness." Id. Therefore, preliminary approval "should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval". 2018 Advisory Committee Notes, Rule 23(e)(1). Rule 23(e)(1)(B) requires the parties to show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal".

The proposed settlement "must stand or fall in its entirety", and I may not "delete, modify or substitute" its terms. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998); Plummer v. Chemical Bank, 668 F.2d 654, 656, n. 1 (2d Cir. 1982). Having carefully reviewed the proposal, I have several concerns:

**A. Definition of the Settlement Class**
The court's obligation to "protect absentees by blocking unwarranted or overbroad class definitions ... demand[s] undiluted, even heightened, attention in the settlement context". Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997).

The TCPA prohibits the faxing of an "unsolicited advertisement". 47 U.S.C. § 227(b)(1)(C). However, the

Case 3:24-cv-01866-JKM    Document 30-6    Filed 01/21/25    Page 4 of 7

Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC, Not Reported in Fed....

definition of the proposed settlement class encompasses anyone who received certain faxes from Tivity, *regardless* of whether they were unsolicited, and that is improper. See Forman v. Data Transfer, Inc., 164 F.R.D. 400, 404 (E.D. Pa. 1995) ("[p]laintiff has mischaracterized the basis of liability as arising from defendant's mere *use* of the facsimile machine to send advertisements.... Under the language of the statute, however, liability arises only if a transmitted advertisement is *unsolicited*") (emphasis in original); Brodsky v. HumanaDental Insurance Co., 910 F.3d 285, 291 (7th Cir. 2018) ("it is necessary to distinguish between faxes sent with permission of the recipient and those that are truly unsolicited. The question of what suffices for consent is central, and it is likely to vary from recipient to recipient"); Gorss Motels, Inc. v. Brigadoon Fitness Inc., ––– F.R.D. ––––, 2019 WL 2171506, *5 (N.D. Ind. 2019) ("[d]etermining which of the hundreds of customers in Brigadoon's accounting system provided permission for Brigadoon to send facsimiles, and the status of any permission, would require an individualized inquiry that could not be resolved for all members of a class in a single adjudication").

"A proper definition includes the requirement that the class not include members who have no claim against the defendant." In re Montano, 488 B.R. 695, 704-05 (Bk. D.N.M. 2013). This requirement ensures that only "those individuals actually harmed by defendant's wrongful conduct will be the recipients of the awarded relief". Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 580 (N.D. Ill. 2005), aff'd, 472 F.3d 506 (7th Cir. 2006). See also Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc., 274 F.R.D. 229, 235 (S.D. Ill. 2011) ("Vigus' proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the Casino knowing the Casino would call those numbers to present special commercial offers. They have no grievance with the Casino, and ... their inclusion in the proposed class definition renders it overbroad and the class unfit for certification"). Since the defined settlement class is not limited to those who may actually have claims against Tivity, the class is overbroad.

Not only is the proposed settlement class overbroad, but its precise contours are not reasonably ascertainable. "This Court has ... recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." In re Petrobras Securities, 862 F.3d 250, 260 (2d Cir. 2017). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." Brecher v. Republic of Argentina, 806 F.3d 22, 24-25 (2d Cir. 2015).

**\*4** The Motion does not indicate whether the faxes allegedly sent by Tivity to other class members were identical in form to the fax attached to the Amended Complaint [15-1]. Therefore, in order to ascertain the scope of the settlement class, it would be necessary to determine not only whether the other faxes were sent "by or on behalf of Tivity", but also whether they were sent "for the purpose of" recruiting others to join the Tivity network. As Judge Vilardo noted, "the purpose of the message is critical. If Tivity did not have the commercial purpose of promoting its products and services when sending the fax, it may not have violated the TCPA". January 23, 2019 Decision & Order [24], p. 8. *See also* id., pp. 5-6, n. 2 (*citing* Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc., 847 F.3d 92, 97 (2d Cir. 2017) for the proposition that the purpose of a fax may be subject to different interpretations).

Since it would be necessary to examine each fax to determine its purpose, the proposed settlement class is not sufficiently ascertainable. *See* Menkes v. Stolt-Nielsen S.A., 270 F.R.D. 80, 93 (D. Conn. 2010) ("the need for numerous individualized determinations or insufficiently precise criteria in defining class membership can preclude the propriety of class certification").

**B. Analysis of Claims and Potential Defenses**
"The most significant factor for the district judge is the strength of plaintiffs' case balanced against the settlement offer. He is required to explore the facts sufficiently to make an intelligent comparison between the amount of the compromise and the probable recovery.... Therefore, the Court must insist that the parties present evidence that would enable possible outcomes to be estimated, so that it can at least come up with a ballpark valuation." Zink v. First Niagara Bank, N.A., 155 F. Supp. 3d 297, 312 (W.D.N.Y. 2016). While the Motion suggests that the proposed settlement "is a fair and reasonable recovery in light of Defendant's defenses" (Memorandum of Law [39], p. 17), it does not discuss any of those defenses. *See* Martin, 295 F.R.D. at 385 ("the parties have provided nothing but generalities about the relative strengths and weaknesses of the class's claims and Cargill's potential defenses.... But they offer no specifics").

Moreover, Rule 23(e)(2)(D) requires the court to consider whether "the proposal treats class members equitably relative to each other". "Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 Newberg on Class Actions, § 13:56 (5th ed. 2019). While class counsel claims to have "conducted a thorough analysis of Plaintiff's claims" (Kaufman Declaration [39-2], ¶11), the Motion does not discuss potential differences among those claims. For example, although 47 U.S.C. § 227(b)(3) authorizes treble damages for knowing or willful violations of the TCPA, the Motion does not address whether Tivity's alleged violations were knowing or willful as to any class members.

Absent greater detail as to the nature and strength of the various settlement class members' claims, I cannot decide whether they are being treated "equitably relative to each other". *See* Rule 23 Advisory Committee Notes, 2018 Amendments ("[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims"). "Courts may deny preliminary approval based on the settling parties' failure to furnish the court with enough information and evidence to enable it to rationally assess the reasonableness of the proposed consideration." Zink, 155 F. Supp. 3d at 313.

C. The Notice of Settlement
"[A] court's role is to safeguard the class's interest by ensuring that class members, most of whom are operating in good faith, receive the best opportunity possible to comprehend and respond to the proposed settlement." 4 Newberg, § 13:30. Whereas "a class member would presumably want to know how the proposed settlement amount would compare to his or her maximum potential recovery", Zink, 155 F. Supp. 3d at 314, neither the Motion nor the proposed Notice to class members ([39-1], pp. 37-45 of 74, CM/ECF pagination) even mentions the maximum potential recovery under the statute.

 *5  Compounding the difficulty in predicting a class member's recovery is the fact that the $375 figure is to be reduced by "a *pro-rata* allocation of Settlement Costs" (Settlement Agreement and Release [39-1], ¶71), which, in turn, are defined as "the costs of the Settlement Administrator, the Service Award approved by the Court and the attorneys' fees and costs awarded to Class Counsel by the Court". Id., ¶46. However, the "costs of the Settlement Administrator" are nowhere estimated or capped, and the amount of attorney's fees (and/or the "Service Award" to Lackawanna Chiropractic) would not be determined until *after* the deadline for submitting claims or opting out of the class. Therefore, in deciding whether to submit a claim or opt out, a potential class member would have no way of ascertaining the amount which it could expect to receive.

Moreover, the proposed Notice requires a class member objecting to the proposed settlement to "submit a letter that includes the following: ... [a] statement of all your objections to the Settlement including your legal and factual basis for each objection ... [t]he number of times in which you have objected to a class action settlement within the five years preceding the date that you filed the objection, the caption of each case in which you have made such objection, and a copy of any orders related to or ruling on your prior such objections that were issued by the trial and appellate courts in each listed case ... [a] statement confirming you intend to appear at the Final Approval Hearing ... [t]he number of times in which your counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that you file the objection, the caption of each case in which counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case ... [and] [a]ny and all agreements that relate to the objection or the process of objecting - whether written or verbal - between you or your counsel and any other person or entity". [39-1], pp. 42-43 of 74 (CM/ECF pagination).

Many of these requirements appear designed to discourage objections, in order to enhance the likelihood of final approval of the settlement - presumably because "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." Wal-Mart Stores, Inc., 396 F.3d at 118. "[B]ecause they have some interest in curtailing objections ... the settling parties will often propose to the court ... [an] onerous procedure for the filing of objections." 4 Newberg, § 13:30. However, "[c]ourts should be cautious of objection formats that unduly chill class members' capacity to object to the settlement." Id.; *see also* Rule 23 Advisory Committee Notes, 2018 Amendments ("[c]ourts should take care ... to avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards").

"[A] court's role is to safeguard the class's interest by ensuring that class members, most of whom are operating in good

faith, receive the best opportunity possible to comprehend and respond to the proposed settlement. Courts will accordingly carefully scrutinize proposed limitations on objection formats and curtail those that over-reach." 4 Newberg, § 13.30. For example, I see "no reason why a personal appearance is necessary for the Court's consideration of an objection". Rhodes v. Olson Associates, P.C., 308 F.R.D. 664, 668 (D. Colo. 2015); 4 Newberg, § 13:30 ("class members may file written objections and need not appear at the fairness hearing for their objections to be considered by the court"). Nor do I see any legitimate reason for requiring unrepresented objectors to state the "legal basis" for their objections. "This requirement is too onerous for lay class members, whose objections may be valid notwithstanding the fact that they cannot provide the 'specific legal basis' ... that supports their objections." Rhodes, 308 F.R.D. at 668. These are but a few examples of my concerns with the objection requirements.

**D. The Possibility of Collusion**

\*6 In order to approve a proposed settlement, the court must be satisfied that "it was not a product of collusion" (D'Amato, 236 F.3d at 85), and I am not satisfied. "Signs of collusion include, but are not limited to: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendants rather than to be added to the settlement fund." Philliben v. Uber Technologies, Inc., 2016 WL 4537912, \*3 (N.D. Cal. 2016); Stewart v. USA Tank Sales and Erection Co., Inc., 2014 WL 836212, \*6 (W.D. Mo. 2014).

The Settlement Agreement and Release contains a "clear sailing" provision whereby Tivity agrees not to oppose a fee award to class counsel and a "Service Award" to Lackawanna Chiropractic ([39-1], ¶¶80-81), and further provides that unclaimed settlement funds revert to Tivity. Id., ¶54. Tivity's "actual payout to class members is a function of participation rates. Thus, if participation is low, [it] will receive a large reversion, significantly reducing [its] total payout". Stewart, 2014 WL 836212, \*6.

"The heart of the concern ... is the risk that settlement agreements will be designed to give the appearance of the creation of a very large fund upon which fees may be based, frequently combined with low participation rates". Parker v. Time Warner Entertainment Co., L.P., 631 F. Supp. 2d 242, 265 (E.D.N.Y. 2009), aff'd, 378 Fed. App'x 63 (2d Cir. 2010). "In any given case, class member nonparticipation may be attributed to a variety of factors", meaning that "the defendant is likely to bear only a fraction of the liability to which it agrees". Id., pp. 265-66. Therefore, absent a reliable projection of the participation rate by class members if the settlement were to proceed, the fact that counsel intends to seek fees "not to exceed $200,000 ... payable solely out of the Settlement Funding" (Settlement Agreement and Release [39-1], ¶80) does little to dispel the possibility of collusion.

The same can be said for Lackawanna Chiropractic's request for approval of a $5,000 Service Award "to be paid by Tivity from the Settlement Funding". Id., ¶81. When coupled with its anticipated claim payment (not to exceed $375), this would amount to over 14 times the payment that similarly situated class members would receive. "Payments to class representatives, while not foreclosed, should be closely scrutinized", Ortiz v. Chop't Creative Salad Co. LLC, 89 F.Supp.3d 573, 580 (S.D.N.Y. 2015), for "when representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised". In re Western Union Money Transfer Litigation, 2004 WL 3709932, \*16 (E.D.N.Y. 2004).

Therefore, "[s]ettlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the cloud of collusion which such a settlement suggests." Allapattah Services, Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1219 (S.D. Fla. 2006); Zink, 155 F. Supp.3d at 310. Unfortunately, the numerous concerns discussed herein regarding the proposed settlement do nothing to dispel that cloud of collusion.

**CONCLUSION**

For all of these reasons, I recommend that Lackawanna Chiropractic's Unopposed Motion [39] be denied. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by September 12, 2019. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely ... waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

\*7 Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co.

Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC, Not Reported in Fed....

Case 3:24-cv-01866-JKM    Document 30-6    Filed 01/21/25    Page 7 of 7

v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection ... supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7195309

---

**Footnotes**

1     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

2     "[A] motion seeking the Court's preliminary approval of the settlement of the case may be effectively dispositive." Keirsey v. eBay, Inc., 2013 WL 5609318, *2 (N.D. Cal. 2013).

3     That class definition is subject to certain exclusions which are irrelevant to this motion (id., ¶20).

4     The settlement class definition is likewise subject to certain exclusions which are irrelevant to this motion (id.).

5     " 'Settlement Costs' means the costs of the Settlement Administrator, the Service Award approved by the Court and the attorneys' fees and costs awarded to Class Counsel by the Court" (id., ¶46), and " 'Tivity Fax' means a fax sent by or on behalf of Tivity for the purpose of recruiting the recipient, or an individual or entity affiliated with the recipient, to join a Tivity network." Id., ¶51.

---

**End of Document**        © 2025 Thomson Reuters. No claim to original U.S. Government Works.