# **EXHIBIT A**



**User Name:** Elyse Cohen

**Date and Time:** Tuesday, January 21, 2025 2:41:00□PM EST

**Job Number:** 243270727

## Document (1)

1. _Smith v. State Farm Mut. Auto. Ins. Co._

   **Client/Matter:** 0FIRM0/000PD-

   **Search Terms:**

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |



⚠️ Caution
As of: January 21, 2025 7:41 PM Z

## *Smith v. State Farm Mut. Auto. Ins. Co.*

United States District Court for the Northern District of Illinois, Eastern Division

September 23, 2013, Decided; September 23, 2013, Filed

No. 13 C 2018

**Reporter**

2013 U.S. Dist. LEXIS 135230 *; 2013 WL 5346430

JENNIFER SMITH on behalf of herself and other similarly situated, Plaintiff, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

**Prior History:** *Primack v. State Farm Auto. Ins. Co., 2013 U.S. Dist. LEXIS 188160 (N.D. Ill., Sept. 18, 2013)*

## Core Terms

Farm, insurance agent, apparent authority, allegations, telemarketing, telephone, seller, agency relationship, customer, ratification, prerecorded, message, vicarious liability, amended complaint, authorized dealer, vicariously, generator, phone

**Counsel:** [*1] For Jennifer Smith, on behalf of herself and others similarly situated, Plaintiff: Alexander Holmes Burke, LEAD ATTORNEY, Burke Law Offices, LLC, Chicago, IL; Anthony Paronich, PRO HAC VICE, Edward A. Broderick, Broderick Law, P.C., Boston, MA; Matthew Mccue, PRO HAC VICE, Law Office Of Matthew Mccue, Natick, MA.

For State Farm Mutual Automobile Insurance Company, Defendant: James Patrick Gaughan, Jr., Joseph Anthony Cancila, Jr., Ronald S. Safer, LEAD ATTORNEYS, Virginia Ovitz Hancock, Schiff Hardin LLP, Chicago, IL.

**Judges:** AMY J. ST. EVE, United States District Court Judge.

**Opinion by:** AMY J. ST. EVE

## Opinion

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 30, 2013, Plaintiff Jennifer Smith filed a one-count Amended Complaint alleging that Defendant State Farm Mutual Automobile Insurance Company ("State Farm") violated the Telephone Consumer Protection Act ("TCPA"), *47 U.S.C. § 227(b).* (R. 29, Compl.) Specifically, Ms. Smith alleges that State farm violated *47 U.S.C. § 227(b)(1)(B)* which provides that it "shall be unlawful . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent [*2] of the called party." (*Id.* ¶ 67.) Additionally, she claims State Farm violated *Section 227(b)(1)(A)(iii)* by using an automatic telephone dialing system to call her cellphone. (*Id.*) On June 24, 2013, State Farm filed a motion to dismiss the Amended Complaint. (R. 33, Mot.) For the following reasons, the Court grants the motion and dismisses the Amended Complaint without prejudice.

### BACKGROUND

Plaintiff Jennifer Smith "received one or more

unsolicited, unattended, autodialed prerecorded voice calls on her cellular telephone in January 2013, which was placed on behalf of defendant State Farm Mutual Automobile Insurance Company." (Compl. ¶ 2.) Specifically, on January 25, 2013, Ms. Smith received a call from a lead generator, Variable Marking, LLC ("Variable Marketing"), engaged by an exclusive agent of State Farm. (*Id.* ¶¶ 32, 41.)

Variable Marketing "offers a service where it purports to deliver live insurance purchasers directly to State Farm insurance agents' phones." (*Id.* ¶ 55.) Variable Marketing worked with various State Farm agents to design parameters to use when interviewing potential customers who received the pre-recorded message in an attempt to re-qualify such customers for insurance. **[*3]** (*Id.* ¶¶ 56, 58, 59.) After pre-qualifying a potential customer, Variable Marketing would send the information to State Farm exclusive insurance agents who engaged Variable Marketing. (*Id.* ¶¶ 59, 61.)

When Ms. Smith answered the call from Variable Marking on January 25, 2013, a prerecorded message played. (Compl. ¶ 42.) The message indicated that Ms. Smith could save money on her auto insurance. (*Id.* ¶ 47.) The message instructed Ms. Smith to press "1" for more information and press "3" to be removed from the telemarketing list. (*Id.*) Ms. Smith hung up without pressing any number. (*Id.*) She called the phone number later that day "to inquire about the call and the caller." (*Id.* ¶ 48.) An operator answered and discussed car insurance for a few minutes with Ms. Smith. (*Id.*) The operator then told Ms. Smith that "the call had been placed in order to sell State Farm automobile insurance, and that the call would be automatically transferred to another State Farm salesperson once [Ms. Smith] provided more personal information, which [Ms. Smith] did not do." (*Id.*) The phone number from which the call was made

corresponded to Ytel, Inc. ("Ytel"). (*Id.* ¶ 36.) Ytel provides voice broadcasting services **[*4]** which "allow its customers to use an automated telephone dialing system, capable of dialing thousands of telephone numbers simultaneously, and play a pre-recorded message when an individual answers the telephone." (*Id.* ¶ 37.)

According to Ms. Smith, the call she received, and the similar calls which others received, violate the TCPA. Ms. Smith seeks damages for herself and those similarly situated to her and an injunction prohibiting State Farm "from making impermissible robocalls in the future." (*Id.* ¶ 4.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570 F.3d 811, 820 (7th Cir. 2009)*. Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quoting *Twombly, 550 U.S. at 570*). "In evaluating the sufficiency of the complaint, [courts] view **[*5]** it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011)*; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)* ("faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which

relief can be granted, accept all factual allegations in the complaint as true").

## ANALYSIS

Ms. Smith bases her claims on a call she undisputedly received from Variable Marketing, a lead generator. Ms. Smith does not allege that she received any call either from State Farm or from any State Farm employee or insurance agent. Rather, Ms. Smith seeks to recover from State Farm based on a vicarious liability theory. Ms. Smith, however, has failed to sufficiently allege facts to support vicarious liability under *Section 227(b) of the TCPA*.

## A. The Recent Relevant FCC Ruling on *Section 227(b)*

In May of 2013, the Federal Communications Commission ("FCC") issued a decision interpreting the TRCP regarding **[*6]** *Section 227(b)* directly relevant to Ms. Smith's allegations (the "2013 FCC Ruling"). Specifically, in the 2013 FCC Ruling, the FCC "clarf[ied] that while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either *section 227(b)* or *section 227(c)* that are committed by third-party telemarketers." (R. 29-1, FCC Declaratory Ruling 13-54 ¶ 1; *28 F.C.C.R. at 6587*.) The FCC recognized that a seller may be held vicariously liable for violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *28 F.C.C.R. at 6584*. Both parties acknowledge that this FCC ruling applies here. Indeed, the FCC has authority to promulgate regulations implementing the TCPA. *See 47 U.S.C. §*

*227(b)(2)*; *Addison Auto., Inc. v. RTC Grp., Inc., No. 12 C 9869, 2013 U.S. Dist. LEXIS 99448, 2013 WL 3771423, at *4 (N.D. Ill. July 16, 2013)*.

## B. Ms. Smith Has Not Sufficiently Pled Vicarious Liability

Ms. Smith spends much of her opposition brief explaining that the 2013 FCC Ruling held that an entity **[*7]** could be held vicariously liable for a third-party telemarketer's behavior under formal agency, apparent authority, and ratification theories - a fact that State Farm does not contest. Ms. Smith, however, does not specifically identify which theory of liability applies here, and she does not sufficiently allege facts to support any of those theories.

### 1. Formal Agency

Ms. Smith argues that Variable Marketing had actual authority, and thereby was State Farm's formal agent, because 1) State Farm relied on its insurance agents to obtain new customers and authorized them to market on its behalf; 2) State Farm was "intimately involved" with the recruitment of its agents; and 3) State Farm "exercised substantial control over its agents['] marketing activities - including telemarketing." (Resp. at 10.) The Court disagrees.

For the reasons outlined below, Ms. Smith has failed to plead an agency relationship between State Farm and Variable Marketing, although she has alleged that State Farm's insurance agents had an agency relationship with Variable Marketing. *See Restatement (Third) Agency § 1.04* ("A subagent is a person appointed by an agent to perform functions that the agent has consented to **[*8]** perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal."). She has not alleged sufficient facts to reasonably infer an

agency relationship between State Farm and Variable Marketing or to reasonably infer that State Farm is responsible for the alleged acts of its insurance agents.

The federal common law of agency as described in the 2013 FCC Ruling is in accord with the Restatement. *See Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir. 2000)*. The Restatement (Third) of Agency defines agency as a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) Agency § 1.01*. The agent's authority to act may be either actual or apparent. *See Restatement (Third) Agency § 2.01*; *see 2013 FCC Ruling, 28 F.C.C.R. at 6586*. "An essential element of agency is the principal's right to control the agent's actions." *Restatement (Third) of Agency § 1.01, cmt. f(1)* (2006). In particular, "[t]he power to **[*9]** give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *See id.* Ms. Smith has not alleged sufficient facts to show actual authority, or, as discussed below, apparent authority.

Indeed, Ms. Smith alleges that State Farm's insurance agents engaged Variable Marketing and that Variable Marketing made the call at issue. (Compl. ¶ 17.) Ms. Smith does not allege that State Farm itself made the call, that State Farm engaged Variable Marketing's services, or that State Farm had any authority over Variable Marketing. Instead, Ms. Smith offers mere conclusory allegations that State Farm "exercises substantial control over its *agents*' marketing activities, including their telemarketing." (Compl. ¶ 19 (emphasis added).) Ms. Smith's allegations - which are

conclusions without any supporting facts - merely support a claim that State Farm's insurance agents are its legal agents, not that Variable Marketing is State Farm's agent. Ms. Smith offers no factual allegations that those insurance agents controlled Variable Marketing's conduct, let alone that State Farm had any control over Variable Marketing's **[*10]** conduct or lead generation. Furthermore, for State Farm's insurance agents to create an agency relationship between Variable Marketing - the agent's agent - and State Farm, the insurance agents would need to have actual or apparent authority to appoint Variable Marketing to perform its functions. *See Restatement (Third) Agency § 3.15*. Ms. Smith has not alleged that State Farm's agents had any such authority.

In other words, there are effectively two levels of agency present here - between State Farm and its insurance agents, and between those insurance agents and Variable Marketing. Ms. Smith has sufficiently alleged that State Farm had a formal agency relationship with its own insurance agents, and that Variable Marketing acted as the insurance agent's agent, but she has failed to sufficiently connect these two relationships. She, therefore, has not sufficiently pled that Variable Marketing was State Farm's agent rather than just an agent of State Farm's insurance agents. Moreover, Ms. Smith must plead more than conclusions to survive a motion to dismiss. *Iqbal, 556 U.S. at 679*.

Furthermore, the cases which Ms. Smith cites are inapposite and pre-date the 2013 FCC Ruling. Ms. Smith **[*11]** cites *United States v. Dish Network, LLC, 667 F. Supp. 2d 952 (C.D. Ill. 2009)*, for example, to support its claim that State Farm and Variable Marketing had a formal agency relationship. In *Dish Network*, however, the court recognized formal agency based on the "on behalf of" language present in *Section 227(b)* which the FCC reinterpreted

in the 2013 FCC Ruling. *Id. at 963*. Indeed, in *Dish Network* the court concluded that "on behalf of" was broad language in part because the *Section 227(b)* "does not say 'agent' or 'at the direction of'." *Id.* As discussed above, however, the 2013 FCC Ruling clarified that the "on behalf of" language supported liability based on theories of agency. *See 28 F.C.C.R. at 6583-85*.

Additionally, *Dish Network* is factually distinct from the circumstances here as in that case the party making the phone calls at issue were Dish Networks' "authorized dealers." *Id.* As noted above, Ms. Smith has not alleged that State Farm authorized Variable Marketing in any way. Unlike Dish Network's relationship with the authorized dealers, Ms. Smith did not allege that State Farm (1) authorized Variable Marketing "to engage in telemarketing on behalf of [State Farm] to sell [State **[*12]** Farm] products and services," (2) authorized Variable Marketing "to use [State Farm] trademarks and trade names, to collect money for [State Farm], and to perform other services as part of their positions as authorized dealers"; or (3) paid "commissions and other financial incentives to [Variable Marketing] for telemarketing services." *Id. at 956*.

Ms. Smith's citation to *Desai v. ADT Sec. Services, Inc., No. 11 C 1925, 2011 U.S. Dist. LEXIS 77457, 2011 WL 2837435, at *1 (N.D. Ill. July 18, 2011)*, is similarly flawed. In *Desai*, the court concluded that the term "initiate" in *Section 227(b)* includes cases - like the one before her - where a party encouraged or otherwise prompted its authorized dealers to make calls on its behalf. As discussed above, Ms. Smith has not alleged that Variable Marketing was akin to an authorized dealer nor that State Farm encouraged or prompted any calls it made.

Ms. Smith also cites *Birchmeier v. Caribbean*

*Cruise, Line, Inc., No. 12 C 4069, 2012 U.S. Dist. LEXIS 182536, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 28, 2012)*, [1] in which the court rejected the "contention that liability attaches under the TCPA only to the party that actually placed the call." (Resp. at 11.) This citation is inapposite as State Farm has not **[*13]** asserted such an argument here. Ms. Smith's citation to another minute order, which includes no reasoning or analysis, also does not bolster her position.

Ms. Smith, therefore, has failed to sufficiently plead vicarious liability based on a formal agency relationship between State Farm and Variable Marketing.

## 2. Apparent Authority

Ms. Smith also asserts that her allegations support liability under an apparent authority theory. "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." *28 F.C.C.R. at 6586*.

To support her apparent authority argument Ms. Smith cites to "illustrative examples of evidence that *may* demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable." (*28 F.C.C.R. at 6593* (emphasis added); Resp. at 8.) These examples, however, do not establish **[*14]** apparent authority here. Indeed, these examples - which were dicta in the FCC's ruling - merely describe circumstances which *may* support vicarious liability under an apparent authority theory. Moreover, Ms.

---

[1] Ms. Smith actually cites to *2012 U.S. Dist. LEXIS 182536, 2012 WL 6737190 at *1 (N.D. Ill. Dec. 28, 2012)*, but Judge Kennelly issued a superseding opinion correcting this opinion. The Court cites to the superseding opinion.

Smith has not alleged facts consistent with any of the three examples she cites which relate to 1) a seller knowing that a telemarking was violating the CPA on its behalf and failing to take steps to cease that conduct; 2) a seller allowing the telemarketer access to information and systems within its control; and 3) a telemarketer having the ability to enter information into the seller's sales or customer systems and to use the seller's trade name or mark. (*Id.*) At most Ms. Smith argues - and has alleged - that State Farm "allowed its *agents* to market using its trade name and trade mark." (Resp. at 10 (emphasis added).) According to Ms. Smith, such allegations "are sufficient to support the theory that State Farm's *agents* had apparent authority to telemarket on State Farm's behalf." (Resp. at 10 (emphasis added) (citing Compl. ¶¶ 22-24).) Ms. Smith has not alleged that Variable Marketing - rather than State Farm's own agents - had authority to use State Farm's trade name or mark. **[*15]** Rather, Variable Marketing is a lead generator which would connect a potential customer to a client - a State farm agent or an agent of another client - if the potential customer provided information meeting criteria for that particular client. Notably, according to Ms. Smith's allegations, Variable Marketing did not even mention State Farm's name during the call at issue. As noted by State Farm, to impose liability on State Farm based on an apparent authority theory here would create the absolute result of imposing liability for the same telephone call on numerous clients of the lead generator, including competitors of one another. (Reply at 6.) Ms. Smith has not provided any legal authority and has not alleged sufficient facts to support an apparent authority theory of liability here.

### 3. Ratification

Ms. Smith also claims that her allegations that State Farm "willfully and knowingly accepted

the benefit of business derived from illegal telemarketing" support the theory that State Farm ratified Variable Marketing's conduct. (Resp. at 10.) The Court disagrees.

In the 2013 FCC Ruling, the FCC noted that broader theories of agency liability such as ratification may be available in particular **[*16]** cases. *See* 28 F.C.C.R. at 6586-87 ("For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits."). Ratification occurs "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." *Id.* Here, Ms. Smith does not allege ratification by State Farm. In fact, Ms. Smith does not even allege that State Farm knew that Variable Marketing was making prerecorded calls. She also does not allege that State Farm knew that its insurance agents generated business through Variable Marketing, by robocalls or any other means. Furthermore, she has not alleged any benefit that State Farm accepted as a result of the phone call placed to Ms. Smith which, notably, did not even result in any lead for any State Farm agent. Ms. Smith, therefore, has not sufficiently pled vicarious liability based on ratification.

### CONCLUSION

For the foregoing reasons, the Court grants the motion and dismisses the Amended Complaint without prejudice. Ms. Smith may file a second amended complaint on or before October 14, 2013.

**DATED: September 23, 2013**

**ENTERED**

/s/ Amy J. St. Eve **[*17]**

**AMY J. ST. EVE**

2013 U.S. Dist. LEXIS 135230, *17

**United States District Court Judge**

---