# **EXHIBIT B**



**User Name:** Elyse Cohen
**Date and Time:** Tuesday, January 21, 2025 2:48:00 PM EST
**Job Number:** 243271660

## Document (1)

1. *Clemons v. State Farm Mut. Auto. Ins. Co.*
   **Client/Matter:** 0FIRM0/000PD-
   **Search Terms:**
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   |  | -None- |

LexisNexis | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2025 LexisNexis

Elyse Cohen

Positive
As of: January 21, 2025 7:48 PM Z

# Clemons v. State Farm Mut. Auto. Ins. Co.

United States District Court for the Central District of Illinois, Peoria Division

July 21, 2020, Decided; July 21, 2020, Filed

Case No. 1:20-cv-1050

**Reporter**
2020 U.S. Dist. LEXIS 128155 *; 2020 WL 4193997

SHERRY L. CLEMONS and JANETTE SCOTT, on behalf of themselves and others similarly situated, Plaintiffs, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

## Core Terms

telemarketers, apparent authority, allegations, amended complaint, manifestation, Registry, actual authority, third party, factual allegations, vicarious, brand, phone number, demonstrating, contracted, facial

**Counsel:** [*1] For Sherry Clemons, on behalf of herself and others similarly situated, Janette Scott, on behalf of herself and others similarly situated, Plaintiffs: Michael Joseph Boyle, Jr., MEYER WILSON CO. LPA, Columbus, OH.

For State Farm Mutual Automobile Insurance Company, Defendant: James P Gaughan, Joseph Anthony Cancila, Jr, RILEY SAFER HOLMES & CANCILA LLP, Chicago, IL.

**Judges:** JOE BILLY McDADE, United States Senior District Judge.

**Opinion by:** JOE BILLY McDADE

## Opinion

### ORDER & OPINION

Before the Court is Defendant's Motion to Dismiss. (Doc. 13). Plaintiffs have responded. (Doc. 14). Defendant filed a Reply with the Court's leave. (Doc. 16). This matter is ripe for review. For the following reasons, the Motion is granted.

### BACKGROUND

### I. Legal Background

The Telephone Consumer Protection Act of 1991 (TCPA) regulates the use of telemarketing, that is the marketing of goods or services by telephone. 47 U.S.C. § 227(b). Congress acted after discovering only half of the states were regulating such calls but "[t]he use of the telephone to market goods and services to the home and other businesses" had become excessive and telemarketers could evade state restrictions through interstate operations. In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 (May 9, 2013). For example, "over 30,000 businesses actively telemarket[ed] [*2] goods and services to residential customers," and "[m]ore than 300,000 solicitors call[ed] more than 18,000,000 Americans every day." Id. at 6574-75.

The TCPA authorized the establishment of a National Do-Not-Call (DNC) Registry. The Act makes it unlawful for any person within the United States to call a residential phone line or a phone number listed on the national DNC

registry using an artificial or prerecorded voice without the consent of the called party. *47 U.S.C. §§ 227(b)(1)(B)*, *(c)(3)*. It requires telemarketers to screen for registered numbers and ensure compliance. *§ 227(c)(3)*. Additionally, the TPCA required the FCC to develop regulations; those rules are set out in *47 C.F.R. § 64.1200(d)* and, relevant here, require the establishment of internal procedures for ensuring the phone numbers on the DNC registry are not subject to telemarketing calls. Finally, the TCPA grants private citizens a cause of action to seek damages and injunctive relief if they have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations." *§§ 227(b)(3)*, *(c)(5)*.

Often, entities wishing to sell goods or services use third parties to conduct telemarketing on their behalf. In response, the FCC issued a Declaratory Ruling in **[*3]** May 2013, holding "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles." *In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. at 6578*. Considering Congress's intent to protect individuals under the TCPA, it is recognized that sellers are in the best position to monitor and police their contracted third-party telemarketers' compliance with the TCPA. *Id. at 6581*.

## II. Procedural Background

Plaintiffs are Sherry L. Clemons and Janette Scott; both are citizens of Missouri. (Doc. 10 at 8). Defendant is State Farm Mutual Automobile Insurance Company. (Doc. 10 at 13). Plaintiffs are attempting to bring a class action lawsuit against Defendant, arguing Defendant is vicariously liable for alleged violations of the TCPA. (Doc. 14 at 6-12). Specifically, Plaintiffs allege (1) violation(s) of *47 U.S.C. § 227(c)(5)* for not having or adhering to proper internal procedures to monitor phone numbers on the various DNC registries and (2) violation(s) of *§ 227(c)(5)* for making telemarketing calls to a number(s) on the National DNC Registry. (Doc. 10, 14). Their theory is that Defendant vested actual or apparent authority in various telemarketers to make **[*4]** the phone calls at issue. (Doc. 10 at 14).

The original complaint was filed in the Central District of Illinois on February 3, 2020. (Doc. 1). Defendant moved to dismiss the original complaint for failure to state a claim under *Federal Rule of Civil Procedure 12(b)(6)* (doc. 9); that motion was rendered moot by Plaintiffs' First Amended Complaint (doc. 10). Defendant now moves to dismiss the operative Complaint for want of standing under *Federal Rule of Civil Procedure 12(b)(1)*. (Doc. 13).

## III. Factual Background

Plaintiffs allege Bradford O'Neil, Scott Clayton, and Brennan Sowa, each of whom is a State Farm Agent, made the telemarketing calls central to this lawsuit. (Doc. 10 at 8, 11, 12).

Plaintiff Clemons alleges she placed her cell phone number on the National DNC Registry in 2005 and on the Missouri DNC Registry in 2012. (Doc. 10 at 8). In January 2019, she began receiving phone calls from O'Neil. (Doc. 10 at 8). Plaintiff Clemons claims she asked him to cease calling her, but the calls nevertheless continued. (Doc. 10 at 9). In late January 2019, Plaintiff called O'Neil and asked to be placed on State Farm's DNC list, but two calls followed in February and October of 2019. (Doc. 10 at 9).

Plaintiff Scott similarly alleges she placed her cell phone number on the **[*5]** National and

Missouri DNC Registries in 2012. (Doc. 10 at 10). In February 2019, she received a phone call from Clayton, and Plaintiff Scott asked him to cease calling her. (Doc. 10 at 11). Despite asking Clayton to stop calling her, Plaintiff Scott allegedly received at least four more calls from him and from Sowa. (Doc. 10 at 12).

## LEGAL STANDARD

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)* (internal quotation marks omitted). An element of the case-or-controversy requirement is the party bringing suit "must establish that they have standing." *Raines v. Byrd, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)* (quoting *Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*. In order to meet the standing requirement, "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Sanner v. Bd. of Trade of City of Chicago, 62 F.3d 918, 922 (7th Cir. 1995)* (quoting *Valley Forge Christian Coll., 454 U.S. at 472*). To satisfy the second element of standing, the injury and its cause must be fairly traceable to the named "defendant[ ] and not solely to some third party." *Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 27, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)*. The plaintiff bears the burden of establishing these elements. *Lujan, 504 U.S. at 561*.

When evaluating **[*6]** a *Rule 12(b)(1)* challenge, the Court must first determine whether the challenge is facial or factual. A facial challenge argues the plaintiff has not sufficiently alleged a "basis of subject matter jurisdiction." *Apex Dig., Inc., v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009)*. This challenge requires the Court to accept all "well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc., 807 F.3d 169, 173 (7th Cir. 2015)* (citing *Apex, 572 F.3d at 443*). On the other hand, "a factual challenge lies where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction.' " *Apex, 572 F.3d at 444* (quoting *United Phosphorus, Ltd. v. Angus Chem. Co., 322 F.3d 942, 946 (7th Cir. 2003))* (emphasis in original). When evaluating a factual challenge, the Court may view any evidence submitted, not just the pleadings, to determine whether subject matter jurisdiction lies. *Silha, 807 F.3d at 173*. In such cases, a court may find standing lacking where, although the complaint contains sufficient allegations to establish standing, external facts rebut those allegations and call the court's jurisdiction into question.

## DISCUSSION

The central issue presently before the Court is whether Plaintiffs have properly alleged an injury that is fairly traceable to Defendant. Defendant asserts a facial challenge and, in the alternative, a factual challenge to Plaintiffs' allegations **[*7]** of standing. Specifically, Defendant argues State Farm Agents are independent contractors, and Defendant is not liable for their actions unless Plaintiffs can allege vicarious liability via actual or apparent authority. See *Cordova v. State Farm Ins. Cos., 124 F.3d 1145, 1147 n.1 (9th Cir. 1997)* ("[State Farm] Agents are self-employed independent contractors who own, and develop equity in, their own businesses."). The Court will address each theory of authority in

turn; because it finds the First Amended Complaint does not survive the facial challenge, the factual challenge is not discussed.

## I. Actual Authority

Actual, or express, authority "exists when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control." *Warciak v. Subway Rests., Inc., 949 F.3d 354, 357 (7th Cir. 2020)*.

> An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act.

*Restatement (Third) of Agency § 2.01* (2006). To allege actual authority, the plaintiff must assert sufficient facts demonstrating the defendant controlled, or had the right to control, the agent(s) and the manner and/or means of their actions. *Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1085 (9th Cir. 2012)*, see also *Paldo Sign & Display Co. v. Wagener Equities, Inc., 825 F.3d 793 (7th Cir. 2016)* (holding **[*8]** vicarious liability cannot be established where the challenged action was in contrast to the principal's orders); *Bridgeview Health Care Ctr., Ltd. v. Clark, 816 F.3d 935, 939 (7th Cir. 2016)* (finding no express authority where the agent's action contradicted the principal's directions).

Without actually citing any facts in their Amended Complaint, Plaintiffs maintain the facts asserted therein are sufficient to allege either actual or apparent authority. (Doc. 14 at 8-12). The Amended Complaint states Defendant contracted with telemarketers to contact customers for the purpose of selling State Farm products. (Doc. 10 at 13). In doing so, the telemarketers utilized Defendant's "trade name, trademark and service mark[s]." (Doc. 10 at 13). Plaintiffs argue the question whether the telemarketers[1] reasonably believed Defendant wanted them to place the alleged calls is a factual issue for which discovery is necessary. (Doc. 14 at 7-8). Plaintiffs, however, have long been aware standing would be challenged by Defendant and yet have failed to request permission to conduct discovery to support their position on standing.

Plaintiffs' position relies heavily on a 2013 FCC Declaratory Ruling. However, in *Dish Network, L.L.C. v. Fed. Commc'ns Comm'n, 552 Fed. App'x 1, 2 (D.C. Cir. 2014)*, the D.C. Circuit concluded the "guidance" on which Plaintiffs rely **[*9]** "has no binding effect on courts, that it is not entitled to deference under *Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 . . . (1984)*, and that its force is dependent entirely on its power to persuade." (internal quotation marks omitted). Indeed, the FCC agreed its guidance was nonbinding. *Id.* As such, the Court will rely on standing and agency jurisprudence to resolve the instant question.

The allegations in the Complaint present a stark contrast to those alleged in *Smith v. State Farm Mut. Auto. Ins. Co., 30 F. Supp. 3d 765, 775-77 (N.D. Ill. 2014)*, where the allegations were deemed sufficient to allege actual authority. In *Smith*, the pleadings alleged State Farm encouraged State Farm Agents to hire a specific third-party agency to conduct telemarketing; over forty State Farm Agents in Illinois hired the agency on State Farm's recommendation. *Id. at 776*. The pleadings further explained the level of control

---

[1] The Amended Complaint does not make clear that the alleged telemarketers are the identified State Farm Agents or another third party. (Doc. 10 at 13).

exhibited by the State Farm Agents over the third-party agency, which included directions as to the quality, timing, and volume of telemarketing calls. *Id.* at 775-77.

Here, Plaintiffs' sole allegations relevant to actual authority are (1) on "information and belief, State Farm has contracted with a telemarketer or telemarketers to contact customers" and (2) the callers invoked the State Farm brand. (Doc. 10 at 13). Plaintiffs' conclusory allegations **[*10]** do not state whether or to what extent Defendant permitted the alleged telemarketers to use its brand; indeed, the Amended Complaint fails to describe any such contract, its terms, or even indicate with whom State Farm is alleged to have contracted with. Plaintiffs also fail to explain how Defendant controlled any aspect of the telemarketing calls, such as their time, volume, or quality. Without any allegation demonstrating Defendant's control over the alleged telemarketers as to the calls at issue, it cannot be inferred such telemarketers possessed a reasonable belief they were acting pursuant to Defendant's direction and control.

Similar logic was applied in two cases from California: *Meeks v. Buffalo Wild Wings, Inc., No. 17-CV-07129, 2018 U.S. Dist. LEXIS 52328, 2018 WL 1524067, at *6 (N.D. Cal. Mar. 28, 2018)*, and *Abante Rooter & Plumbing v. Farmers Grp., Inc., No. 17-CV-03315, 2018 U.S. Dist. LEXIS 2414, 2018 WL 288055, at *5 (N.D. Cal. Jan. 4, 2018)*. In *Meeks*, the court dismissed the complaint because the lack of factual allegations indicating the defendant controlled "whether, when, and to whom to send the text messages, along with their content" meant the plaintiff had failed to adequately allege standing on a vicarious liability theory. *2018 U.S. Dist. LEXIS 52328, 2018 WL 1524067 at *6*. Likewise, in *Abante*, the court dismissed the complaint because it was "devoid of factual allegations from which the court could infer defendant controlled or could control" the telemarketers, despite **[*11]** the fact the telemarketers used the defendant's trade name and mark. *2018 U.S. Dist. LEXIS 2414, 2018 WL 288055 at *5-*6*.

Both cases are analogous to the instant matter; Plaintiffs have not alleged sufficient facts demonstrating Defendant's control over the calls at issue, such as affirmative requests, commands, or instructions. *Abante* is particularly on point. Similar to this case, the complaint there stood on only the conclusory allegation of control and the factual allegation the telemarketers used the defendant's trade name during the call and displayed the defendant's mark on a website. However, as that court reasoned:

> It is not enough that each representative identified him or herself as acting on behalf of Farmers Insurance. Such allegations say nothing about whether defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, defendant purportedly exercised over the representatives.

*2018 U.S. Dist. LEXIS 2414, [WL] at *5*. And while use of the defendant's mark can create the inference of a relationship, it fails to give rise to any reasonable inference of control. *2018 U.S. Dist. LEXIS 2414, [WL] at *6*. The Court agrees with and accepts the reasoning in *Abante*; Plaintiffs' allegations fall short.

In sum, Plaintiffs have failed **[*12]** to allege sufficient facts to demonstrate Defendant vested the alleged telemarketers with actual authority to place the calls at issue. Plaintiffs allege no facts demonstrating Defendant had any control over the calls. While Plaintiffs are entitled to reasonable inferences, "the court is neither required to nor allowed to layer inference upon inference to make [Plaintiffs']

claim for" them. *2018 U.S. Dist. LEXIS 2414, [WL] at \*5*.

## II. Apparent Authority

Vicarious liability may also be demonstrated through the doctrine of apparent authority, which "exists when a third[ ]party reasonably relies on the principal's manifestation of authority to an agent." *Warciak, 949 F.3d at 357* (citing *Am. Soc'y of Mech. Eng'rs v. Hydrolevel Corp., 456 U.S. 556, 565-74, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982))*.

> Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.

*Restatement (Third) of Agency § 2.03* (2006). "[T]here must be some form of communication, direct or indirect, by the principal, which instills a reasonable belief." *Leon v. Caterpillar Indus., Inc., 69 F.3d 1326, 1336-37 (7th Cir. 1995)* (citation omitted). Apparent authority can be inferred through written agreements or implied by conduct. *N. Assur. Co. of Am. v. Lark, 845 F. Supp. 1301, 1308 (S.D. Ind. 1993)*. "[S]tatements by an agent are insufficient to create **[\*13]** apparent authority without also tracing the statements to a principal's manifestations or control." *Warciak, 949 F.3d at 357*.

Plaintiffs' Amended Complaint makes no distinction between the factual allegations purporting to allege apparent authority and those purporting to allege actual authority. As stated, the only relevant allegations are (1) Defendant contracted telemarketers and (2) the telemarketers invoked the State Farm brand. (Doc. 10 at 13). And rather than direct the Court's attention to any allegations in the Amended Complaint to support their standing argument, Plaintiffs simply argue a reasonable customer would believe Defendant authorized the State Farm Agents to make the calls at issue and make sweeping allegations such as Defendant "deputized the agents to sell its insurance products" (doc. 14 at 11) and Defendant "retains agents to sell and market its insurance products" (doc. 14 at 12).[2] The crux of their argument is: because the callers invoked the State Farm brand, it was reasonable to assume State Farm authorized the call. This, however, does not suffice because the assumption of authority is based on the third party's—the alleged telemarketers—manifestations, not Defendant's.

The mere existence **[\*14]** of a relationship between the telemarketers and/or the State Farm Agents and Defendant does not automatically give rise to apparent authority to perform a specific act. The Seventh Circuit recently held as much in *Warciak. 949 F.3d at 357*; see also *Abante, 2018 U.S. Dist. LEXIS 2414, 2018 WL 288055 at \*6* ("[T]he bare existence of a relationship does not indicate that [agent] was authorized to act on defendant's behalf or speak to the scope of that purported authorization. Nor does it give rise to a reasonable belief that [agent] is authorized to act on defendant's behalf for all purposes."). In *Warciak*, the plaintiffs alleged Subway violated the TCPA through a promotional text message sent by T-Mobile which featured a deal from *Subway. 949 F.3d at 356-57*. The Seventh Circuit found the complaint lacking as to its allegations of apparent authority because "[t]he only conduct

---

[2] As such allegations are not included in the Amended Complaint, inclusion of them in the Response to the Motion to Dismiss borders the impermissible. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 448 (7th Cir. 2011)* ("[A] plaintiff may not amend his complaint in his response brief.").

by Subway alleged in the complaint is engaging in a contractual relationship with T-Mobile." *Id. at 357*. Similarly, the only conduct by Defendant alleged in the Amended Complaint is engaging in a contract with telemarketers.

The few factual allegations here are likewise similar to those in *Cunningham v. Health Plan Intermediaries Holdings, LLC, No. 17-CV-1216, 2018 U.S. Dist. LEXIS 22921, 2018 WL 835222, at \*6 (N.D. Ill. Feb. 13, 2018)*, where the plaintiff alleged the defendants had apparent authority "simply because they mentioned [the defendants'] products on their calls **[\*15]** and sent [the plaintiff] paperwork featuring [the defendants'] names." The court rejected the apparent authority argument there because those facts did not demonstrate any manifestation by the alleged principal conferring any authority to the alleged agent. *Id.* That analysis is mirrored in *Smith*, where the plaintiffs similarly failed to trace their apparent authority theory to a manifestation by the alleged principal rather than the alleged agent. *See Smith, 30 F. Supp. 3d at 778* ("[F]or apparent authority to exist, the principal 'must communicate either directly or indirectly with the third party' or take some action that instills in the third party a reasonable belief that the actor had authority to act as the principal's agent." (citation omitted)).

Plaintiffs attempt to distinguish *Warciak* by suggesting an average consumer would know the difference between Subway and T-Mobile, but the same cannot be said about the State Farm Agents and Defendant. While the difference between Subway and T-Mobile is certainly more obvious to consumers than the difference between the State Farm Agents and Defendant, this argument misses the mark. The issue is that the Amended Complaint contains no facts beyond an alleged contractual **[\*16]** relationship and the callers' use of the State Farm brand to support the perception of authority; a contractual relationship by itself is insufficient to plead apparent authority to do a specific act (*Warciak*), and that the agent invoked the principal's brand is similarly insufficient (*Cunningham, Smith, Abante*). In sum, absent allegations of some manifestation by Defendant cloaking the telemarketers with authority to make the calls at issue, Plaintiffs' apparent authority argument fails.

Plaintiffs additionally fail to allege any facts explaining how they reasonably relied, to their detriment, on any manifestation by Defendant vesting the telemarketers with authority. In *Warciak*, the Seventh Circuit concluded the complaint was deficient also because the plaintiffs failed to allege any facts demonstrating reasonable reliance on the promotional text and, importantly, failed to show such reliance was detrimental. *949 F.3d at 357*. The same is true here.

In sum, Plaintiffs' scant allegations in the Amended Complaint and sweeping, conclusory arguments in their Response fail to adequately allege standing on an apparent authority theory. Without a sufficient factual basis for either Defendant's manifestation **[\*17]** of intent to vest the telemarketers with authority to make the calls at issue or Plaintiffs' reasonable, detrimental reliance on such a manifestation, Defendant's facial standing challenge prevails.

### III. Summation

Plaintiffs have failed to establish standing. The Court is cognizant of the fact this is Plaintiffs' second bite at the apple where Defendant's authority arguments are concerned. It will nevertheless permit Plaintiffs one more bite. Plaintiffs may file an amended complaint, so long as they are able to cure the factual deficiencies identified herein in a manner

consistent with their obligations under *Federal Rule of Civil Procedure 11*.

**CONCLUSION**

Defendant's Motion to Dismiss (Doc. 13) is GRANTED. Plaintiffs' First Amended Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiffs may, within fourteen (14) days of the date of this Order, file an amended complaint if they are able to cure the factual deficiencies identified herein.

SO ORDERED.

Entered this 21st day of July 2020.

/s/ Joe B. McDade

JOE BILLY McDADE

United States Senior District Judge

---

**End of Document**