# **EXHIBIT L**



**User Name:** Elyse Cohen
**Date and Time:** Tuesday, January 21, 2025 2:59:00 PM EST
**Job Number:** 243273195

## Document (1)

1. *Winters v. Grand Caribbean Cruises Inc.*
   **Client/Matter:** 0FIRM0/000PD-
   **Search Terms:**
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | | -None- |



Neutral
As of: January 21, 2025 7:59 PM Z

# Winters v. Grand Caribbean Cruises Inc.

United States District Court for the District of Arizona

August 20, 2021, Decided; August 20, 2021, Filed

No. CV-20-00168-PHX-DWL

**Reporter**
2021 U.S. Dist. LEXIS 158176 *; 2021 WL 3709854

Richard Winters, Jr., et al., Plaintiffs, v. Grand Caribbean Cruises Incorporated, Defendant.

## Core Terms

Telemarketing, allegations, quotation, marks, motion to dismiss, contacts, caller, personal jurisdiction, agency relationship, courts, lack of personal jurisdiction, forum state, manifestations, apparent authority, transferred, conclusory, amend, factual allegations, resides

## Case Summary

### Overview

HOLDINGS: [1]-Plaintiffs' putative class action alleging defendant violated the Telephone Consumer Protection Act, *47 U.S.C.S. § 227*, was dismissed for lack of personal jurisdiction because plaintiffs failed to plead facts that plausibly suggested an agency relationship existed between defendant and the telemarketing agent.

### Outcome
Motion to dismiss granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > In Personam Actions

Governments > Courts > Authority to Adjudicate

Civil Procedure > ... > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions

### *HN1*[⤓] **In Rem & Personal Jurisdiction, In Personam Actions**

Because jurisdiction is a threshold question and because the issue of personal jurisdiction is dispositive, the court begins there. A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category or claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Challenges

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### *HN2*[⤓] **In Personam Actions, Challenges**

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

Elyse Cohen

When doing so, the movant may submit declarations and other evidence. When ruling on a motion to dismiss for lack of personal jurisdiction, the court may not assume the truth of allegations in a pleading which are contradicted by affidavit.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Challenges

Evidence > Burdens of Proof > Allocation

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

### HN3[ ]  In Personam Actions, Challenges

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. Although uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor, a plaintiff may not simply rest on the bare allegations of the complaint if those allegations are properly controverted.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

### HN4[ ]  In Personam Actions, Minimum Contacts

Mere bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > Constitutional Limits

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Due Process

### HN5[ ]  In Rem & Personal Jurisdiction, Constitutional Limits

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution. Ariz. R. Civ. P. 4.2(a). Accordingly, whether a federal court has personal jurisdiction over the defendant is subject to the terms of the Due Process Clause of the Fourteenth Amendment.

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > Constitutional Limits

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

Civil Procedure > ... > In Rem & Personal

Jurisdiction > In Personam Actions > Due Process

**HN6**[ ] **In Rem & Personal Jurisdiction, Constitutional Limits**

Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Minimum contacts exist if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction).

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

**HN7**[ ] **In Personam Actions, Minimum Contacts**

Under the Ninth Circuit's three-part test to determine if a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

**HN8**[ ] **In Personam Actions, Purposeful Availment**

Courts use the purposeful availment test for claims arising from contract and the purposeful direction test for claims arising from tort. Under this test, the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

**HN9**[ ] **In Personam Actions, Minimum Contacts**

Actions may be directed at the forum state even if they occurred elsewhere, but random, fortuitous, or attenuated contacts are insufficient to create the requisite connection with the forum. The court must focus on the relationship among the defendant, the forum, and the litigation. Importantly, the relationship must arise out of contacts that the defendant himself creates with the forum State. Courts look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. The proper question is not where the plaintiff experienced a particular injury or effect but whether the

defendant's conduct connects him to the forum in a meaningful way.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Evidence > Types of Evidence > Documentary Evidence > Affidavits

**HN10**[ ] **Defenses, Demurrers & Objections, Motions to Dismiss**

Although uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor, a plaintiff may not simply rest on the bare allegations of the complaint if those allegations are properly controverted.

Business & Corporate Law > ... > Establishment > Elements > Application of Agency Law Principles

Business & Corporate Law > ... > Establishment > Elements > Manifestation by Principal

Business & Corporate Law > Agency Relationships > Establishment > Consent

Business & Corporate Law > Agency Relationships > Establishment > Definitions

Business & Corporate Law > ... > Establishment > Elements > Right to Control by Principal

**HN11**[ ] **Elements, Application of Agency Law Principles**

Agency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to so act. A fundamental tenet of an agency relationship is that the principal had the right to substantially control its agent's activities. In determining whether vicarious liability may be imposed, the extent of control exercised by the principal is the essential ingredient. For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the person represented must have a right to control the actions of the agent.

Business & Corporate Law > ... > Corporate Existence, Powers & Purpose > Existence > Distinct & Separate Legal Entity

Torts > Vicarious Liability > Corporations > Subsidiary Corporations

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Business & Corporate Law > ... > Shareholder Duties & Liabilities > Piercing the Corporate Veil > Single Business Enterprise

**HN12**[ ] **Existence, Distinct & Separate Legal Entity**

There is no specific personal jurisdiction over a parent corporation for actions taken by a subsidiary when there are no allegations that the parent had the right to control the subsidiary's activities in any manner at all. The allegation that the defendants are the agents or employees of each other and are legally

responsible because of their relationship with their codefendants is insufficient to survive a challenge under Fed. R. Civ. P. 12(b)(2) because it is a conclusory legal statement unsupported by any factual assertion regarding the parent's control over the subsidiary (or regarding any other aspect of the parent-subsidiary relationship).

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Elements

Torts > Vicarious Liability > Agency Relationships > Apparent Authority

Business & Corporate Law > ... > Establishment > Elements > Manifestation by Principal

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Proof

*HN13*[ ] **Apparent Authority, Elements**

Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal. Manifestations made by the caller are thus insufficient to establish an agency relationship premised on apparent authority.

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Conduct of Parties

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Elements

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Third Party Knowledge

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Proof

Business & Corporate Law > ... > Establishment > Elements > Manifestation by Principal

*HN14*[ ] **Apparent Authority, Conduct of Parties**

An agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal. Apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation. Apparent authority arises by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN15*[ ] **Judges, Discretionary Powers**

Although courts generally grant leave to amend with extreme liberality, a district court may dismiss without leave where amendment would be futile. Additionally, the district court's discretion to deny leave to amend is particularly broad where, as here, plaintiff has previously amended the complaint.

**Counsel:** [*1] For Richard Winters, Jr., individually and on behalf of all others similarly situated, Joseph Brem, individually and on

behalf of all others similarly situated, David James, individually and on behalf of all others similarly situated, Plaintiffs: David James McGlothlin, LEAD ATTORNEY, Kazerouni Law Group APC, Phoenix, AZ; Ryan Lee McBride, LEAD ATTORNEY, Kazerouni Law Group, Phoenix, AZ.

For Grand Caribbean Cruises Incorporated, Defendant: Jeffrey Aaron Backman, Roy Taub, LEAD ATTORNEYS, PRO HAC VICE, Greenspoon Marder PA, Ft Lauderdale, FL; Sharon Alice Urias, LEAD ATTORNEY, Greenspoon Marder LLP - Scottsdale, AZ, Scottsdale, AZ.

**Judges:** Dominic W. Lanza, United States District Judge.

**Opinion by:** Dominic W. Lanza

# Opinion

**WO**

# ORDER

This is a putative class action brought by Plaintiffs Richard Winters, Jr. ("Winters"), Joseph Brem ("Brem"), and David James ("James") (collectively, "Plaintiffs") against Defendant Grand Caribbean Cruises Incorporated ("Grand Caribbean") for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In February 2021, the Court granted Grand Caribbean's motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") because Plaintiffs failed to allege facts that would support the exercise of personal jurisdiction over [*2] Grand Caribbean in Arizona. (Doc. 30.) The Court granted Plaintiffs leave to amend, and Plaintiffs filed a Third Amended Complaint ("TAC"). (Doc. 32.) Now pending before the Court is Grand Caribbean's motion to dismiss the TAC for lack of personal jurisdiction and for failure to state a claim under Rule 12(b)(6). (Doc. 33.) For the following reasons, the motion is granted and this action is terminated.

# BACKGROUND

I. Factual Background

The following facts are derived from the TAC. (Doc. 32.)

A. **Winters**

Winters resides in Mesa, Arizona. (*Id.* ¶ 5.) In approximately July 2019, a "Telemarketing Agent contracted by" Grand Caribbean began calling Winters's cell phone, without his prior consent, "in an attempt to solicit Winters to purchase [Grand Caribbean's] services." (*Id.* ¶¶ 9, 22.) Winters has been on the National Do-Not-Call Registry (the "Registry") since "at least June 2019." (*Id.* ¶ 23.) "During most if not all of the calls," Winters "either heard a beep or a pause before a representative of the Telemarketing Agent came on the phone line." (*Id.* ¶ 24.)

B. **Brem**

Brem resides in Casa Grande, Arizona. (*Id.* ¶ 6.) In August 2019, the same "Telemarketing Agent contacted Brem on [his] cellular telephone number, [*3] in an attempt to solicit Brem to purchase [Grand Caribbean's] services," without Brem's prior consent. (*Id.* ¶¶ 29, 44.) The "Telemarketing Agent . . . used a prerecorded voice to ask Brem several qualifying questions and then transferred Brem" to a "live agent," who identified herself and stated, "welcome to Grand Caribbean Cruises." (*Id.* ¶¶ 30-31.) Brem has been on the Registry since "at least October 2017." (*Id.* ¶ 45.)

C. **James**

James resides in Buena Park, California. (*Id.* ¶ 7.) In approximately February 2020, "the Telemarketing Agent contacted James approximately 6-7 times on James's landline telephone number . . . in an attempt to solicit James to purchase [Grand Caribbean's] services," without James's prior consent. (*Id.* ¶¶ 51, 66.) "After about the seventh call, James answered . . . and responded to questions asked by [a] prerecorded voice" and was transferred to a live agent "that identified themselves as 'Grand Caribbean Cruises.'" (*Id.* ¶ 52.) James told the representative to stop calling him and requested that he be added to the "Do Not Call" list. (*Id.*) Subsequently, on February 18, 2020, "the Telemarketing Agent calling on behalf of [Grand Caribbean] subsequently called James **[*4]** again" and "James was again transferred to a live agent of [Grand Caribbean's] who attempted to sell James a cruise." (*Id.* ¶ 53.) Once transferred, James confirmed that Grand Caribbean was calling him and that its address was in Fort Lauderdale, Florida. (*Id.*) James received at least two more calls, one from the Telemarketing Agent and another from a "vacation specialist" of "Grand Caribbean directly." (*Id.* ¶¶ 54-55.) In the latter phone call, James again told the representative to stop calling him and to add him to the "Do Not Call" list. (*Id.* ¶ 55.) James has been on the Registry since "at least 2006." (*Id.* ¶ 67.)

D. **The Telemarketing Agent**

The TAC alleges a new participant not mentioned in previous iterations of the complaint: the "Telemarketing Agent" who called Plaintiffs. The following allegations are common to all three Plaintiffs:

• The Telemarketing Agent "was operating pursuant to a contract between [Grand Caribbean] and the Telemarketing Agent to place telemarketing calls on behalf of [Grand Caribbean]" (*id.* ¶¶ 10, 32, 56);

• The calls Plaintiffs received were "placed directly [by the Telemarketing Agent] pursuant to this contract . . . and the Telemarketing Agent was acting **[*5]** within the express authority of [Grand Caribbean] in placing such call[s]" (*id.* ¶¶ 12, 34, 58);

• "Pursuant to the contract, [Grand Caribbean] maintained the right to substantially control the Telemarketing Agent's actions, including by specifying the nature and type of the calls to be placed, the means by which such calls were to be placed, the content of such calls, and by retaining the right to terminate the contract unilaterally to enforce its control over the Telemarketing Agent" (*id.* ¶¶ 14, 36, 59);

• Grand Caribbean "had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with [Grand Caribbean] and [Grand Caribbean] therefore ratified the act" (*id.* ¶¶ 15, 37, 60);

• "Despite being on notice [from transferred consumers] that the Telemarketing Agent is placing calls in violation of the TCPA, [Grand Caribbean] has not taken steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus ratifies its conduct" (*id.* ¶¶ 16, 38, 61).

II. Procedural History

On January 22, 2020, Plaintiffs initiated this action by filing a complaint. (Doc. 1.)

On March 9, 2020, before Grand Caribbean responded to **[*6]** the initial complaint, Plaintiffs filed a First Amended Complaint. (Doc. 10.)

On August 12, 2020, with Grand Caribbean's consent, Plaintiffs filed the SAC. (Doc. 18.)

On August 26, 2020, Grand Caribbean filed a motion to dismiss the SAC for lack of personal jurisdiction and for failure to state a claim. (Doc. 19.)

On November 5, 2020, Grand Caribbean filed a motion to dismiss Counts One and Two of the SAC for lack of subject matter jurisdiction. (Doc. 24.)

On February 11, 2020, the Court issued an order granting Grand Caribbean's initial motion to dismiss because Plaintiffs "failed to meet their burden of establishing specific personal jurisdiction" under either a direct contact or agency theory. (Doc. 30.) The Court noted that the complaint was ambiguous as to the precise identity of the alleged "Defendant," which made it "difficult to discern who, exactly, [was] the alleged culprit" for purposes of analyzing direct contact. (*Id.* at 6-7.) Further, the Court noted that Plaintiffs failed to controvert Grand Caribbean's declaration that it had not made any calls to Plaintiffs. (*Id.* at 7-8.) The Court also held that Plaintiffs failed to establish an agency relationship that could impute the **[*7]** caller's conduct to Grand Caribbean, because (1) Plaintiffs didn't "distinguish between entities when setting out the challenged conduct, instead using the [ambiguously defined] term 'Defendant' as shorthand," (2) Plaintiffs didn't allege any facts concerning Grand Caribbean's control over the caller's activities, and (3) all other allegations directed toward establishing an agency relationship were conclusory or "formulaic recitations of the elements of an agency claim devoid of specific facts." (*Id.* at 8-13.) The Court thus granted Grand Caribbean's motion to dismiss for lack of personal jurisdiction and, "because the SAC [was] dismissed in its entirety based on a lack of personal jurisdiction," denied without prejudice Grand Caribbean's motion to dismiss for lack of subject matter jurisdiction. (*Id.* at 13.) Finally, the Court granted Plaintiffs' request for leave to amend their complaint in an attempt to cure the deficiencies identified in the order. (*Id.*)

On March 15, 2021, Plaintiffs filed the TAC. (Doc. 32; Doc. 31-1 [redlines].)

On March 29, 2021, Grand Caribbean filed the pending motion to dismiss. (Doc. 33.)

On April 28, 2021, Plaintiffs filed a response. (Doc. 34.)

On May 13, **[*8]** 2021, Grand Caribbean filed a reply. (Doc. 35.) Neither party requested oral argument.

## DISCUSSION

Grand Caribbean moves to dismiss the TAC in its entirety for lack of personal jurisdiction and for failure to state a claim. *HN1*[↑] Because jurisdiction is a threshold question and because the issue of personal jurisdiction is dispositive, the Court begins there. *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)* ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category or claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

I. Legal Standard

*HN2*[↑] A defendant may move to dismiss for lack of personal jurisdiction. *Fed. R. Civ. P. 12(b)(2)*. When doing so, the movant may submit declarations and other evidence. *CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011)* (when ruling on a motion to dismiss for lack of personal jurisdiction, "[w]e may not assume the truth of allegations in a pleading which are contradicted by affidavit") (internal quotation marks omitted).

*HN3*[] "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015)* (internal quotation marks omitted). Although "uncontroverted allegations must be taken as [*9] true, and [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," a "plaintiff may not simply rest on the bare allegations of [the] complaint" if those allegations are properly controverted. *Id.* (first alteration in original) (internal quotation marks omitted). *HN4*[] "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007)*.

*HN5*[] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1141 (9th Cir. 2017)* (quoting *Daimler AG v. Bauman, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)*). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing *Ariz. R. Civ. P. 4.2(a)*). Accordingly, whether this Court has "personal jurisdiction over [Grand Caribbean] is subject to the terms of the *Due Process Clause of the Fourteenth Amendment*." *Id.*

*HN6*[] "Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted). Minimum contacts exist "if the defendant has continuous and systematic [*10] general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id. at 1142* (internal quotation marks omitted).

Here, Plaintiffs concede that Grand Caribbean, a Florida company, is not subject to general jurisdiction in Arizona. (Doc. 34 at 5 n.4.) Thus, the Court must apply *HN7*[] the Ninth Circuit's three-part test to determine if Grand Caribbean has sufficient contacts with Arizona to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Morrill, 873 F.3d at 1142*. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (internal [*11] quotation marks omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (internal quotation marks omitted).

*HN8*[] Courts use the "purposeful availment" test for claims arising from contract and the "purposeful direction" test for claims arising from tort. *Id.* Here, all of Plaintiffs' claims arise from tort, so the "purposeful direction" test applies. *Born v. Celtic Mktg. LLC, 2020 U.S. Dist. LEXIS 89220, 2020 WL 3883273, *3 (C.D. Cal. 2020)* ("Claims for violation of the

TCPA sound squarely in tort and require application of the purposeful direction analysis."). Under this test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 803 (9th Cir. 2004)* (internal quotation marks omitted).

**HN9**[ ] "Actions may be directed at the forum state even if they occurred elsewhere," but "'random, fortuitous, or attenuated contacts' are insufficient to create the requisite connection with the forum." *Morrill, 873 F.3d at 1142* (quoting *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)*). The Court must focus on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore, 571 U.S. 277, 291, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)* (internal quotation marks **[*12]** omitted). Importantly, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id. at 284* (internal quotation marks omitted). Courts "look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id. at 285*. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id. at 290*.

II. Analysis

The TAC alleges that Grand Caribbean is subject to personal jurisdiction in Arizona by virtue of its agency relationship with the Telemarketing Agent. (Doc. 32 ¶¶ 17, 39, 62.)[1]

Grand Caribbean disagrees, arguing that the new factual allegations added to the TAC are conclusory and remain insufficient to plausibly establish the existence of an agency relationship. (Doc. 33 at 6-14.) In response, Plaintiffs defend the sufficiency of their new allegations. (Doc. 34 at 9-14.) Plaintiffs also argue that "[a]gency is an incredibly fact intensive inquiry that is not suitable for full adjudication on a Motion to Dismiss." (*Id.* at 9 n.7.) Grand Caribbean replies that Plaintiffs' new allegations fail to establish the **[*13]** element of control and contain only "buzz words" and "unsupported and implausible allegations about an imagined contract with an imagined 'Telemarketing Agent.'" (Doc. 35 at 5-9.)

**HN11**[ ] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's

---

[1] Although it is possible to construe one paragraph of the complaint as alleging that Grand Caribbean directly placed one of the challenged phone calls (Doc. 32 ¶ 55 ["On February 19, 2020, James received another call from a 'vacation specialist' of Defendant directly"]), Plaintiffs clarify elsewhere that Grand Caribbean did not directly make any of the calls. (*Id.* ¶ 4 ["Plaintiff[s] [are] informed and believe[] [Grand Caribbean] knew that the leads pursued by the Telemarketing Agent would be located in Arizona before, during and after the calls being placed on [Grand Caribbean's] behalf, therefore [Grand Caribbean] purposefully availed themselves of this jurisdiction."]; *id.* ¶¶ 13, 35 ["By contracting with its Telemarketing Agent to place calls to consumers across the United States . . . [Grand Caribbean] purposefully availed itself of the state of Arizona and this forum through the Telemarketing Agent's expressly authorized actions."]; *id.* ¶¶ 17, 39, 62 ["[Grand Caribbean] is vicariously liable . . . through an agency-principle [sic] relationship, as well as through apparent authority and ratification."]. At any rate, Grand Caribbean has submitted competent evidence, in the form of a declaration from Jennifer Poole, its president, avowing that "Grand Caribbean has never placed or initiated a telephone call to any of the Plaintiffs in this action" (Doc. 33-1 ¶ 15) and Plaintiffs have not submitted any controverting evidence—they rely solely on the allegations in the TAC. **HN10**[ ] And as discussed above, although "uncontroverted allegations must be taken as true, and [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," a "plaintiff may not simply rest on the bare allegations of [the] complaint" if those allegations are properly controverted. *Ranza, 793 F.3d at 1068* (cleaned up).

control, and the agent manifests assent or otherwise consents to so act." *Jones v. Royal Admin. Servs., 887 F.3d 443, 448 (9th Cir. 2008)* (internal quotation marks omitted). As the Court explained in its previous order (Doc. 30), a fundamental tenet of an agency relationship is that the principal had "the right to substantially control its [agent's] activities." *Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024-25 (9th Cir. 2017)*. See also *Jones, 887 F.3d at 450* ("In determining whether vicarious liability may be imposed, the extent of control exercised by the [principal] is the essential ingredient.") (alteration in original) (internal quotation marks omitted); *Mavrix Photographs, LLC v. LiveJournal, Inc., 873 F.3d 1045, 1054 (9th Cir. 2017)* ("For an agency relationship to exist, an agent must have authority to act on behalf of the principal and [t]he person represented [must have] a right to control the actions of the agent.") (alterations in original) (internal quotation marks omitted).

In *Williams*, the Ninth Circuit [*14] held HN12[⬆] there was no specific personal jurisdiction over a parent corporation for actions taken by a subsidiary because there were no allegations that the parent "had the right to control [the subsidiary's] activities in any manner at all." *851 F.3d at 1025*. The court determined that the following allegation—"Defendants . . . were the agents or employees of each other . . . and are legally responsible because of their relationship with their co-Defendants"—was insufficient to survive a challenge under *Rule 12(b)(2)* because it was a "conclusory legal statement unsupported by any factual assertion regarding [the parent's] control over [the subsidiary] (or regarding any other aspect of the parent-subsidiary relationship)." *Id. at 1025 n.5* (ellipses in original). The court thus concluded that, "even assuming . . . that a subsidiary's contacts *could* be attributed to its parent" for purposes of establishing specific personal jurisdiction, the plaintiff had "failed to establish specific jurisdiction over [the parent]." *Id. at 1025*.

Although the TAC addresses some of the shortcomings identified in the previous dismissal order, it remains deficient. The "Telemarketing Agent" is unidentified and the TAC offers only conclusory allegations concerning [*15] its relationship with Grand Caribbean. Although Plaintiffs allege there is *some* contractual relationship between the Telemarketing Agent and Grand Caribbean, and the Telemarketing Agent acted pursuant to the contract, this does not automatically mean the Telemarketing Agent is an agent for jurisdictional purposes. *See, e.g.,Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 U.S. Dist. LEXIS 2414, 2018 WL 288055, *5 (N.D. Cal. 2018) ("[T]he court can infer that there is some relationship between the purported representatives and defendant. But that inference is not enough because it still does not allow the court to infer that defendant exercises control over the representatives."). The TAC is devoid of any specific, non-conclusory factual allegations outlining the nature of the contractual relationship between the Telemarketing Agent and Grand Caribbean, such whether and to what extent Grand Caribbean supervises or controls the Telemarketing Agent's activities and what authority Grand Caribbean has conferred upon the Telemarketing Agent in conducting activities on its behalf. It is not enough to allege (as the TAC does, *see* Doc. 32 ¶¶ 14, 36, 59) that Grand Caribbean "maintained the right" to control certain aspects of the Telemarking Agent's conduct because this is a conclusion, not a fact. [*16] Courts have not hesitated to dismiss TCPA claims under analogous[2] circumstances.

---

[2] *Clemons v. State Farm Mut. Auto. Ins. Co., 2020 U.S. Dist. LEXIS 128155, 2020 WL 4193997, *4 (C.D. Ill. 2020)* ("Plaintiffs' conclusory allegations do not state whether or to what extent Defendant permitted the alleged telemarketers to use its brand; indeed, the Amended Complaint fails to

Case 3:24-cv-01866-JKM   Document 32-12   Filed 01/21/25   Page 14 of 17

Page 12 of 15
2021 U.S. Dist. LEXIS 158176, *16

Plaintiffs' allegations of apparent authority are also insufficient. Plaintiffs allege that "a reasonable consumer similarly situated to [Plaintiffs] would have believed that the robocall was placed by an agent of [Grand Caribbean] with its express authority, given that the robocall was transferred to a representative who identified [Grand Caribbean] by name and the call was clearly made for the benefit of [Grand Caribbean]." (Doc. 32 ¶¶ 15, 37, 60.) Similarly, in their declarations, Plaintiffs assert that they believed the initial caller was an agent of Grand Caribbean. (Doc. 34-1 ¶ 6; Doc. 34-2 ¶ 8; Doc. 34-3 ¶ 5.) But Plaintiffs do not allege their belief was based on manifestations made by Grand Caribbean. HN13[↑] "Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable *and is traceable to a manifestation of the principal*." *Restatement (Third) of Agency § 2.03 cmt. c* (emphasis added). Manifestations made by the caller are thus insufficient to establish an agency relationship premised on apparent authority. *Rogers, 2020 U.S. Dist. LEXIS 121831, 2020 WL 3869191 at \*6* ("Apparent authority here would need **[\*17]** to be established by alleging that *Postmates* said or did something upon which Rogers relied. . . . Thus, the 'principal's manifestations' are lacking."); *TranzVia, 2017 U.S. Dist. LEXIS 199131, 2017 WL 5992123 at \*12* ("Plaintiff alleges no facts showing that Rose reasonably believed, based on manifestations by TranzVia, that he had the authority to act on behalf of TranzVia in making the calls at issue.").[3]

---

describe any . . . contract, its terms, or even indicate with whom State Farm is alleged to have contracted with. Plaintiffs also fail to explain how Defendant controlled any aspect of the telemarketing calls, such as their time, volume, or quality."); *Rogers v. Postmates Inc., 2020 U.S. Dist. LEXIS 121831, 2020 WL 3869191, \*4 (N.D. Cal. 2020)* ("Absent from the SAC are allegations that Postmates exercised any control over the 'manner and means' in which Bird Dog executed the campaign on its behalf. . . . The most substantive allegation concerning the contours of the relationship between Postmates and Bird Dog is the allegation that Postmates contracted with Bird Dog, but [a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency.") (alteration in original) (internal quotation marks omitted); *Abante Rooter*, 2018 U.S. Dist. LEXIS 2414, 2018 WL 288055 at \*5-6 ("[T]he bare existence of a relationship does not indicate that Williams was authorized to act on defendant's behalf or speak to the scope of that purported authorization. Nor does it give rise to a reasonable belief that Williams is authorized to act on defendant's behalf for all purposes."); *Naiman v. TranzVia LLC, 2017 U.S. Dist. LEXIS 199131, 2017 WL 5992123, \*10-13 (N.D. Cal. 2017)* (granting 12(b)(2) motion to dismiss where the complaint did "not allege any facts showing that TranzVia had any control, or any express or actual authority, over Rose or any associated entity that made the phone calls" and noting that a "plaintiff must allege facts, not conclusions, and the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory allegations cast in the form of factual allegations"); *Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015)* ("[T]he existence of a contract between CCL and Adsource—even one that imposes certain constraints on Adsource—does not necessarily mean that CCL had the power to give 'interim instructions' to Adsource, the hallmark of an agency relationship."); *Melito v. Am. Eagle Outfitters, Inc.*, 2015 U.S. Dist. LEXIS 160349, 2015 WL 7736547, \*7 (S.D.N.Y. 2015) ("Significantly absent from Plaintiffs' allegations . . . is any factual content regarding the relationship between Experian and Archer. . . . [T]o plead vicarious liability under the TCPA in accordance with traditional tort principles, Plaintiffs must allege *some* facts regarding the relationship between an alleged principal and agent . . . and cannot simply allege general control in a vacuum. Mere conclusory allegations that Archer was Experian's agent or that Experian had the right to control the sending of the texts, without more, fails to plead an agency relationship . . . .") (citation omitted).

[3] Plaintiffs do not appear to rely, for purposes of their "apparent authority" argument, on the statements by the Grand Caribbean representative who appeared on the line after being transferred from the Telemarketing Agent. At any rate, those statements do not support Plaintiffs' position. The TAC alleges that the representative said "welcome to Grand Caribbean Cruises" and then attempted to sell a cruise. There is no allegation that the representative made any statements about the Telemarketing Agent's role or authority. Indeed, the TAC does not allege that the Grand Caribbean representative made any statements about the Telemarketing Agent at all. *Restatement (Third) of Agency § 3.03 cmt. b* ("HN14[↑] [A]n agent's apparent authority originates with expressive conduct by the principal toward a third party through which the principal manifests assent to action by the agent with legal consequences for the principal. Apparent authority is present only when a third party's belief is traceable to manifestations of

Case 3:24-cv-01866-JKM   Document 32-12   Filed 01/21/25   Page 15 of 17

Page 13 of 15
2021 U.S. Dist. LEXIS 158176, *17

Finally, as with the SAC, Plaintiffs' "other allegations related to the concept of agency fare no better—they are formulaic recitations of the elements of an agency claim devoid of any specific facts." (Doc. 30 at 11.) For example, in paragraphs 12, 34, and 58, the TAC alleges that the calls received by Plaintiffs were "placed directly [by the Telemarketing Agent] pursuant to this contract . . . and the Telemarketing Agent was acting within the express authority of [Grand Caribbean] in placing such call[s]." But these are conclusions, not assertions of fact. Similarly, in paragraphs 15, 37, and 60, the TAC alleges that Grand Caribbean "had actual knowledge of the conduct of the Telemarketing Agent who was acting specifically pursuant to its contract with [Grand Caribbean] and [Grand Caribbean] therefore **[*18]** ratified the act." But how did Grand Caribbean obtain knowledge of such conduct? The TAC alleges no non-conclusory facts that would support this conclusion. And again, in paragraphs 16, 38, and 61, the TAC alleges that, "[d]espite being on notice that the Telemarketing Agent is placing calls in violation of the TCPA, [Grand Caribbean] has not taken steps to cease such actions as permitted through its contract with the Telemarketing Agent and thus ratifies its conduct." There are no facts to support this conclusory assertion.

Plaintiffs' cited authority does not compel a different conclusion. In *Mey v. Monitronics International, Inc., 959 F. Supp. 2d 927 (N.D. W. Va. 2013)*, the court denied summary judgment as to whether a caller acted "on behalf of" the defendants such that the defendants could be vicariously liable under the TCPA. *Id. at 932-33*. When interpreting the term "on behalf of," the court relied on a Federal Communications Commission ("FCC") declaratory ruling, determined that a formal agency relationship was not required, and concluded that, consistent with common-law tort principles, vicarious liability could also be established through "ratification and apparent authority." *Id.* Many courts have expressed disagreement with *Mey's* analysis of these issues,[4] and **[*19]** *Mey* is, at any rate, factually distinguishable from this case. There, the caller had "agreements . . . that enable[d] [the caller] to hold itself out as an 'authorized dealer,'" which the court found "could lead a reasonable finder of fact to conclude" that the caller had apparent authority, *id.*, but here the allegations concerning the agreement between Grand Caribbean and the Telemarketing Agent are non-specific and conclusory.

Plaintiffs also cite a portion of the FCC ruling addressed in *Mey* (Doc. 34 at 11, citing FCC ruling ¶ 46), but courts have since deemed this provision non-binding, not entitled to deference, and unpersuasive. *See, e.g., Dish Network, L.L.C. v. FCC, 552 F. App'x 1, 1-2 (D.C. Cir. 2014)* ("The FCC agrees that the 'guidance' in question has no binding effect on courts, that it is not entitled to deference . . . , and that its force is dependent entirely on its power to persuade.") (internal quotation marks omitted); *Clemons, 2020 U.S. Dist. LEXIS 128155, 2020 WL 4193997 at \*3* ("[T]he FCC agreed its guidance was nonbinding. As such,

---

the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation."); *Mavrix Photographs, 873 F.3d at 1055* ("Apparent authority arises by a person's *manifestation that another has authority to act* with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.") (emphasis added) (internal quotation marks omitted).

[4] *See, e.g., In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 223 F. Supp. 3d 514, 527 (N.D.W. Va. 2016)* ("[T]he fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient to hold the moving defendants in this case liable. This Court is well aware that in so ruling, I am rejecting the prior decision . . . [i]n *Mey* . . . ."); *Knapp v. Sage Payment Solutions, Inc., 2018 U.S. Dist. LEXIS 17774, 2018 WL 659016, \*6 n.4 (N.D. Cal. 2018)*; *Makaron v. GE Sec. Mfg., 2015 U.S. Dist. LEXIS 75240, 2015 WL 3526253, \*10 (C.D. Cal. 2015)*.

the Court will rely on standing and agency jurisprudence to resolve the instant question.") (citation omitted).[5]

At bottom, Plaintiffs have failed to plead facts that plausibly suggest an agency relationship exists between Grand Caribbean [*20] and the caller. Although Plaintiffs argue that agency is a fact-intensive inquiry that should not resolved at the motion-to-dismiss stage, courts routinely do so. Nor have Plaintiffs requested jurisdictional discovery (which would seem to be the way to obtain more information about the contours of Grand Caribbean's alleged relationship with the Telemarketing Agent). The Court thus grants Grand Caribbean's motion to dismiss the TAC.

Plaintiffs request leave to amend their complaint in the event of dismissal. (Doc. 34 at 17.) HN15[↑] Although courts generally grant leave to amend with "extreme liberality," *Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)* (internal quotation marks omitted), "a district court may dismiss without leave where . . . amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011)*. Additionally, "[t]he district court's discretion to deny leave to amend is particularly broad where," as here, "plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil. Co., 866 F.2d 1149, 1160 (9th Cir. 1989)*. Applying these standards, Plaintiffs' amendment request is denied. The Court made clear in its previous order that Plaintiffs needed to provide specific, non-conclusory factual allegations concerning Grand Caribbean's right to control the alleged agent. The Court also made clear that boilerplate, formulaic allegations [*21] of agency wouldn't be enough to survive dismissal. The Court even identified judicial decisions discussing the types of factual allegations that would be sufficient on this issue. (Doc. 30 at 12 ["This is not . . . some insurmountable pleading hurdle. Other plaintiffs in TCPA cases have avoided dismissal by providing specific, non-conclusory allegations concerning the nature of the agency relationship between the defendant and the caller and the defendant's control over the caller's activities."].) The absence of such facts in the TAC, coupled with the absence of a request for jurisdictional discovery, suggests that Plaintiffs simply lack them. *Cf. Collett v. Olympus Corp.*, 2019 U.S. Dist. LEXIS 66913, 2019 WL 1756291, *4 (M.D. Ga. 2019) ("[T]he proposed amendment with regard to Olympus Corporation would be futile because Plaintiffs did not meet their burden of producing evidence supporting jurisdiction over Olympus Corporation, and they did not request jurisdictional discovery to explore Olympus Corporation's contacts with Georgia. Plaintiffs may not amend their Complaint to revive the claims against Olympus Corporation that have been dismissed.").

Accordingly,

**IT IS ORDERED** that Grand Caribbean's motion to dismiss (Doc. 33) is **granted**. The Clerk of Court shall enter judgment [*22] accordingly and terminate this action.

---

[5] Courts have held that other portions of the FCC ruling are subject to deference. *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 878 (9th Cir. 2014)* ("More recently, the FCC has clarified that vicarious liability is imposed 'under federal common law principles of agency for violations of either *section 227(b)* or *section 227(c)* that are committed by third-party telemarketers.' Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded *Chevron* deference.") (citation and internal quotation marks omitted); *Smith v. State Farm Mut. Auto. Ins. Co., 30 F. Supp. 3d 765, 774 (N.D. Ill. 2014)* ("[T]he D.C. Circuit's decision . . . dealt only with paragraphs 46 and 47 of the FCC Ruling, which provide 'guidance' to the courts on how common-law agency principles might apply to TCPA cases. Neither the FCC nor the D.C. Circuit stated that the FCC 's determination that *section 227(b) of the TCPA* incorporates common-law agency principles is not entitled to deference.") (internal quotation marks omitted).

Dated this 20th day of August, 2021.

/s/ Dominic W. Lanza

Dominic W. Lanza

United States District Judge

---

**End of Document**