2023 WL 6622415

2023 WL 6622415
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington, at Seattle.

Douglas Lee BLAIR, Plaintiff,
v.
ASSURANCE IQ LLC, Defendant.

CASE NO. C23-0016-KKE
|
Signed October 11, 2023

**Attorneys and Law Firms**

Avi R. Kaufman, Pro Hac Vice, Kaufman PA, Miami, FL, Eric R. Draluck, Eric R. Draluck Attorney, Bainbridge Island, WA, for Plaintiff.

Mark A. Silver, Pro Hac Vice, Nathan L. Garroway, Pro Hac Vice, Dentons U.S. LLP, Atlanta, GA, John David Du Wors, Du Wors Law Group, San Francisco, CA, Keith P. Scully, Nathaniel Eli Durrance, Newman Du Wors LLP, Seattle, WA, for Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STAY OR BIFURCATE DISCOVERY

Kymberly K. Evanson, United States District Judge

 **\*1**  This matter comes before the Court on Defendant Assurance IQ, LLC's Motion to Stay Discovery or, in the Alternative, to Bifurcate Discovery, Dkt. No. 19, and Motion to Dismiss Amended Complaint, Dkt. No. 20. The Court GRANTS IN PART and DENIES IN PART the motion to dismiss with leave to amend. The Court DENIES Assurance IQ's motion to stay or bifurcate discovery.

**I. BACKGROUND**

In January 2023, Plaintiff Douglas Blair filed this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that he received unlawful prerecorded telemarketing calls from CarInsurance.net—an entity owned and operated by Assurance IQ, LLC. *See generally* Dkt. No. 1. Blair filed an amended complaint (the operative complaint) in late March 2023. Dkt. No. 18. The relevant facts are as follows.

Blair registered his cell phone number on the National Do Not Call Registry (the "DNC List") on November 19, 2022. Dkt. No. 18 at 7. Over 31 days later, on December 23rd, he received six calls from CarInsurance.net. *Id.*; *see also id.* at 8 (image depicting call log). Blair did not answer these calls. *Id.* at 7. And he ignored two more calls from CarInsurance.net three days later. *Id.* at 8. On the evening of December 26th, however, Blair answered one of the calls. *Id.* He claims that a prerecorded voice message identified the caller as CarInsurance.net and solicited the sale of car insurance. *Id.* Blair believes the call was prerecorded "because of the tone, cadence, and timing of the speaker, which sounded unnaturally perfect." *Id.* at 9.

He received another call the following day. *Id.* Although Blair did not answer this call, "a pre-recorded voice message was left identifying the company name as CarInsurance.net [and] soliciting the sale of automotive insurance." *Id.* He thereafter continued to receive unsolicited calls from CarInsurance.net over the next few days—none of which he answered. *Id.* at 10–11. However, two more allegedly prerecorded voicemails were left on his phone on December 28th and 30th. *Id.* These messages again identified the caller as CarInsurance.net and solicited the sale of car insurance. *Id.* Blair asserts that the December 27th, 28th, and 30th voice messages are "identical," a fact he contends suggests that "all three were pre-recorded." *Id.* at 11.

Blair brings two TCPA claims against Assurance IQ. In Count 1, he alleges that it placed unsolicited prerecorded phone calls to his residential cell phone without his prior express consent. *Id.* at 14; *see* 47 U.S.C. § 227(b)(1)(A)(iii), (b)(1)(B). In Count 2, he accuses the company of initiating telephone solicitations to his residential cell phone even though he had registered that number on the DNC List. Dkt. No. 18 at 14–15; *see* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Blair asks the Court to award statutory damages, treble damages "[t]o the extent [Assurance IQ]'s misconduct is determined to be willful and knowing," and further requests injunctive relief prohibiting Assurance IQ's "unsolicited calling activity[.]" Dkt. No. 18 at 14–16; *see also id.* at 7 ("Blair brings forward this case seeking injunctive relief requiring [Assurance IQ] to cease from violating the TCPA[.]").

**\*2** In addition to his individual TCPA claims, Blair's complaint levels several class allegations. *See id.* at 11–14. He asserts that "[o]ther consumers have ... complained on robocall websites regarding the identical pre-recorded voice message that [he] received, from the same telephone number ..., around the exact ... same time [he] received it[.]" *Id.* at 9; *see also id.* at 4–6. Blair accordingly seeks to represent two nationwide classes. The first proposed class is the "Pre-Recorded No Consent Class." *Id.* at 11. It includes all persons in the United States who, within the preceding four years, received from Assurance IQ a prerecorded voice telemarketing call on their cellular or residential landline number soliciting car insurance quotes on behalf of CarInsurance.net. *Id.* The second proposed class is the "Do Not Call Registry Class." *Id.* at 12. It includes all persons in the United States who, within the preceding four years, received from Assurance IQ more than one telemarketing call during any 12-month period soliciting car insurance quotes on behalf of CarInsurance.net when that person's residential number had been listed on the DNC List for at least 30 days. *Id.*

Assurance IQ moved to dismiss Blair's amended complaint. Dkt. No. 20. It also wants the Court to stay discovery pending resolution of the motion to dismiss or, alternatively, bifurcate discovery into an "individual claims" phase followed by (if necessary) a "class claims" phase. Dkt. No. 19 at 2.

## II. DISCUSSION

The Court addresses the motion to dismiss before turning to the motion to stay or bifurcate discovery.

### A. Motion to Dismiss

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021), *rev'd on other grounds by Gonzalez v. Google LLC*, 143 S. Ct. 1191 (2023) (per curiam). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Assurance IQ moves the Court to dismiss Blair's amended complaint "in its entirety with prejudice" because he (1) fails to sufficiently allege that the calls he received involved prerecorded messages; (2) fails to sufficiently allege that Assurance IQ willfully or knowingly violated the TCPA or its accompanying regulations, which is required for treble damages; and (3) fails to demonstrate the real and immediate threat of future injury necessary to obtain injunctive relief. Dkt. No. 20 at 2. The Court addresses these arguments in turn.

1. Sufficiency of TCPA Allegations – Count 1

As relevant here, the TCPA forbids any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The statute similarly prohibits any person from initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]" *Id.* § 227(b)(1)(B). "In plain English, the TCPA prohibit[s] almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020).

If a telemarketer violates the TCPA, the recipient of the call may bring an action "to enjoin such violation"; "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater"; or both. 47 U.S.C. § 227(b)(3); *see Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated."). To plead a TCPA claim under Section 227(b)(1)(A)(iii) and (b)(1)(B), Blair must allege the following three elements: (1) the defendant called his cellular or residential phone number (2) using an artificial or prerecorded voice (3) without his prior express consent. *Rogers v. Assurance IQ, LLC*, No. 2:21-CV-00823-TL, 2023 WL 2646468, at \*3 (W.D. Wash. Mar.

27, 2023) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).

**\*3** Assurance IQ targets the second element, arguing that Blair's amended complaint "does not provide any basis for this Court to reasonably infer that the 'voice' [he] allegedly heard was prerecorded as opposed to live." Dkt. No. 20 at 6. Although the amended complaint contains allegations about the tone, cadence, and timing of the speaker, Assurance IQ argues that Blair fails to specify "*what about* the tone, cadence, and timing indicated that the call was pre-recorded." *Id.* (emphasis original); *see id.* ("Plaintiff has fallen short here by parroting conclusory language."). The Court disagrees.

When, as here, a fact is an element of the claim (i.e., whether the defendant made the call using an artificial or prerecorded voice), it is insufficient for the plaintiff to merely recite that fact verbatim without other supporting details. *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW(AGRX), 2014 WL 12614468, at \*2 (C.D. Cal. July 31, 2014); *Forney v. Hair Club for Men Ltd., Inc.,* No. CV-16-9640-R, 2017 WL 4685549, at \*2 (C.D. Cal. June 26, 2017) (a plaintiff must do more than plead statutory language from the TCPA). District courts in the Ninth Circuit generally require plaintiffs to plead circumstances sufficient to support an inference that the calls were placed with an artificial or prerecorded voice. *Rogers*, 2023 WL 2646468, at \*3 (collecting cases). For example, a plaintiff should be able to allege facts about the "tenor, nature, or circumstances of the alleged calls" or "otherwise demonstrate that a live human was not speaking during the calls." *Id.* at \*4 (internal quotation marks omitted) (quoting *Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522 (FLW) (LHG), 2020 WL 1975834, at \*2 (D.N.J. Jan. 10, 2020)); *see also, e.g.*, *Greene v. Select Funding, LLC,* No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at \*4 (C.D. Cal. Feb. 5, 2021) (finding that plaintiff adequately stated a TCPA claim where he alleged that he knew the caller was a prerecorded message "based on the speaker's content, tone, and inflection; the generic content of the voice message, and the speaker's cadence" (cleaned up)); *Forney*, 2017 WL 4685549, at \*2 ("Successful TCPA complaints allege that the message[s] they received were scripted or impersonal, from an obviously automated number, formatted in code, or similar[ ] factual details."); *Johansen v. Vivant, Inc.*, No. 12-C-7159, 2012 WL 6590551, at \*3 (N.D. Ill. Dec. 8, 2012) ("[A] TCPA plaintiff could describe the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the 'person' calling him, [or] the generic content of the message he received[.]").

Blair sufficiently alleges that the calls received on December 26, 2022 (7:52 PM), December 27, 2022 (10:02 AM), December 28, 2022 (10:02 AM), and December 30, 2022 (10:02 AM) involved a prerecorded voice message in violation of Section 227(b)(1)(A)(iii) and (b)(1)(B). With respect to the December 26th call, Blair contends the call involved a prerecorded voice "because of the tone, cadence, and timing of the speaker, which sounded unnaturally perfect." Dkt. No. 18 at 9. The voice's "unnaturally perfect" sound is enough at this stage for the Court to infer that it was artificial or prerecorded. The Court similarly concludes that Blair has alleged facts sufficient to infer that the December 27th, 28th, and 30th calls involved artificial or prerecorded voices. Blair received all three calls at the same time (10:02 AM) and resulted in "identical" voicemails delivering a generic sales pitch. *See id.* at 9–11. To be sure, Blair could have expounded more on how these voicemails were identical (e.g., the tone and cadence of the voice). At the dismissal stage, however, the Court views the facts in the light most favorable to Blair. And assuming—as the Court must—the truth of the facts asserted, Blair has identified suspicious timing (three calls placed at the exact same time on three separate days) and generic content (identical, nonspecific sales pitches) sufficient for the Court to reasonably infer that the speaker on the calls at issue was an artificial or prerecorded voice. Assurance IQ's motion to dismiss is denied with respect to Count 1.[1]

2. "Willful" or "Knowing" TCPA Violations: Treble Damages

**\*4** The TCPA vests district courts with discretion to award treble damages for willful or knowing violations of the statute or its regulations. 47 U.S.C. § 227(b)(3), (c)(5); *see Barr*, 140 S. Ct. at 2345. Blair appears to seek treble damages under Count I and Count II of his amended complaint. Dkt. No. 18 at 14–15 (Count I seeks "a minimum of $500 in damages, and up to $1,500 in damage" per violation, whereas Count II expressly demands "treble damages"). Assurance IQ argues that Blair's amended complaint "makes no allegation that [its] alleged conduct was willful and knowing." Dkt. No. 20 at 7 (emphasis omitted). At this juncture, the Court agrees. Nowhere does Blair allege that Assurance IQ's statutory violations were willful or knowing. He instead claims that, "[t]o the extent [Assurance IQ]'s misconduct is determined to be willful and knowing, the Court should ... treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class." Dkt. No. 18 at 15–16. This

is insufficient. The Court therefore dismisses Blair's claim for treble damages.

3. Standing to Seek Injunctive Relief

The TCPA permits a plaintiff to bring "an action based on a violation of th[e statute] or the regulations prescribed under th[e statute] to enjoin such violation[.]" 47 U.S.C. § 227(b)(3)(A). Assurance IQ's argument under Federal Rule of Civil Procedure 12(b)(1) contends, however, that Blair lacks Article III standing to seek injunctive relief because he "does not allege any threat of future injury[.]" Dkt. No. 20 at 8–9; *see also* Dkt. No. 24 at 5 ("The allegations belie any plausible inference of [future injury] given that the last alleged call was over four months ago."). While Assurance IQ does not specify whether it intends to mount a facial or factual attack, the substance of its motion indicates that it believes Blair's allegations are insufficient to invoke the Court's jurisdiction with respect to injunctive relief, i.e., it brings a facial challenge. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."). Blair counters that he need not allege a threat of future injury to obtain injunctive relief under the TCPA: "For a statutory injunction, like under the TCPA, if the 'plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint.' " Dkt. No. 23 at 7 (quoting *Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019)). The Court disagrees.

Standing is a threshold issue central to the Court's subject matter jurisdiction. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc). And the Supreme Court has repeatedly made clear that "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (cleaned up). The fact that a statute—here, the TCPA—provides for injunctive relief does not automatically convey standing to seek such relief. *Cf. Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119–20 (9th Cir. 2020) (assessing whether plaintiffs established standing for injunctive relief under the ECPA, 18 U.S.C. § 2520, even though the statute provides for preliminary and other equitable relief); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (standing requirements are not automatically met "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Rather, a plaintiff must still show that his injury is concrete and likely to be redressed by the relief he seeks. *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1036–37 (9th Cir. 2006).

In terms of injunctive relief, then, Blair "must allege either continuing, present adverse effects" due to his exposure to Assurance IQ's past illegal conduct "or a sufficient likelihood that [he] will again be wronged in a similar way." *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (cleaned up); *accord Rogers*, 2023 WL 2646468, at *7. The threat of injury "must be actual and imminent" rather than merely hypothetical. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (cleaned up). And last, "[a]llegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class." *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *15 (N.D. Cal. Sept. 23, 2016) (citing *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999) (en banc)); *see also Villa*, 865 F.3d at 1229 (class representative could not seek injunctive relief on behalf of class because she lacked standing to pursue that relief).

*5 A district court resolves a facial jurisdictional attack as it would a Rule 12(b)(6) motion: accepting Blair's allegations as true and drawing all reasonable inferences in his favor, the Court determines whether the allegations are sufficient to invoke its jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "When evaluating whether the standing elements are present, [the district court] must look at the facts as they exist at the time the complaint was filed." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) (cleaned up). Blair filed his amended complaint on March 28, 2023. At that point, it had been three months since the last alleged call. *See* Dkt. No. 18 at 11 (last call occurred December 30, 2022). And Blair does not allege continuing, present adverse effects due to his exposure to Assurance IQ's calls. He instead frames his injury in the past tense: "The unauthorized solicitation telephone calls ... harmed Plaintiff Blair in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use of and enjoyment of his phone." *Id.* at 11. Past exposure to unlawful conduct is insufficient to confer standing to seek injunctive relief unless the plaintiff continues to suffer adverse effects. *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010); *see also Davidson*, 889 F.3d at 967 (past harms may bear on whether a real and immediate threat of repeated injury exists, but they are insufficient by themselves to grant standing); *Campbell*, 951 F.3d at 1120 (finding "combination of continuing harm plus likelihood of

future harm" sufficient to confer standing to seek injunctive relief).

Nor does Blair allege a sufficient threat of future harm— let alone "actual and imminent" or "certainly impending" harm. Indeed, he does not even mention the possibility of future calls. And according to the amended complaint, he only received calls over a period of seven days. *See* Dkt. No. 18 at 7–11 (cataloguing calls); *Miller v. Time Warner Cable Inc.*, No. 8:16-CV-00329-CAS (ASX), 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (risk that defendant would continue to make unsolicited calls to plaintiff's phone was "too speculative" to establish a real and immediate threat of injury because plaintiff had not received an unsolicited call in eight months at the time of filing her complaint). Because Blair does not allege ongoing harm from past conduct or establish a sufficient likelihood of future harm, he lacks standing to seek injunctive relief on his or the class's behalf. *See Villa*, 865 F.3d at 1229. The Court accordingly dismisses Blair's claim for injunctive relief.

4. Leave to Amend

The Court will permit Blair leave to file a second amended complaint curing the deficiencies identified above. Federal Rule of Civil Procedure 15(a)(2) directs district courts to "freely give leave when justice so requires." As the language of the rule suggests, the standard for leave to amend is "very liberal," *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006), because "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A district court should therefore grant leave to amend even when, as here, no request to amend the pleading was made, "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (cleaned up). A court may deny leave to amend "only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment[.]" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (cleaned up). Beyond merely requesting dismissal with prejudice, Assurance IQ does not contend any of these factors are present.

**B. Motion to Stay or, Alternatively, Bifurcate Discovery**

Assurance IQ next urges the Court to stay discovery pending resolution of its motion to dismiss. Dkt. No. 19 at 3–6. The Court denies this request as moot because it has now ruled on the motion.

Alternatively, Assurance IQ argues that the Court should modify its March 15, 2023 Scheduling Order Regarding Class Certification Motion and bifurcate discovery into two phases: an initial 90-day merits phase limited to Blair's individual claims, followed by a conditional class-based phase (should Blair succeed on his claims). *Id.* at 2, 6–10; *see* Dkt. No. 17 (Mar. 15, 2023 Scheduling Order). Assurance IQ wants the opportunity to move for summary judgment on Blair's individual claims at the close of the merits phase in hopes of avoiding "costly and burdensome [class] discovery that may be moot[.]" *Id.* at 8. The Court declines Assurance IQ's request to bifurcate discovery for the reasons set forth below.

*6 "A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803–04 (Fed. Cir. 1999); *see also Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) (the district court has broad discretion to control the class certification process, including class-related discovery). As part of this power, the district court also has broad discretion to determine whether to bifurcate discovery prior to certification. *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-MAT, 2020 WL 5759782, at *1 (W.D. Wash. Sept. 28, 2020); *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-CV-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015). The Court may consider the following factors in deciding whether bifurcation is appropriate: (1) the overlap between individual and class discovery; (2) whether bifurcation promotes Rule 23(c)(1)(A)'s requirement that certification be decided "[a]t an early practicable time"; (3) judicial economy; and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery. *Hunichen*, 2020 WL 5759782, at *1.[2] The Court addresses these factors in turn.

1. Overlap Between Individual and Class Discovery

The first factor weighs against bifurcation. "Generally at the pre-class certification stage, discovery in a putative class

action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014). The Supreme Court has, however, repeatedly emphasized that the class certification decision requires "a rigorous analysis" of Rule 23(a)'s prerequisites, and "[s]uch an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013) (cleaned up). This is because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 34 (cleaned up). Thus, the distinction between merits discovery and class discovery "is not always clear," and "[m]any courts are, for this reason, reluctant to bifurcate class and merits discovery." *Hunichen*, 2020 WL 5759782, at *1; *see also, e.g.*, *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. ED-CV-15-2057-FMO-(SPX), 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Here, too, there is overlap between the class determination inquiry and the merits of Blair's underlying claims. This overlap includes the existence of common questions of law or fact and predominance under Rule 23(a)(2) and (b)(3). See *Hunichen*, 2020 WL 5759782, at *2. "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (cleaned up). And Blair's two proposed classes track his underlying causes of action verbatim. *Compare* Dkt. No. 18 at 11–12 (proposed classes), *with id.* at 14–15 (individual claims). Assurance IQ appears to concede the presence of at least some overlap in this case, but protests this factor is outweighed by the others. *See* Dkt. No. 19 at 7. As none of the factors favor bifurcation, this argument is irrelevant.

2. Promotion of Rule 23(c)(1)(A)

*7  The second factor likewise counsels against bifurcation. Federal Rule of Civil Procedure 23(c)(1)(A) directs district courts to determine whether an action should be certified as a class action "[a]t an early practicable time[.]" The Advisory Committee Notes to the 2003 amendment recognize that in some cases the defendant "may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified." However, the Notes also caution against "forcing an artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.' "

Assurance IQ initially contends that "any extension owing to bifurcation would not jeopardize class certification motions in this case." Dkt. No. 19 at 8. But it immediately contradicts this representation by admitting that this is precisely what would happen: "Assurance only requests 90 days to complete discovery as to Plaintiff's individual claims.... At most, class certification would be extended only three months from this Court's current deadline[.]" *Id.* Assurance IQ suggests, however, that such a delay is acceptable. Relying on *True Health*, it argues that bifurcation does not offend Rule 23(c)(1)(A)'s directive so long as class certification occurs within two years of a case's filing. *Id.* at 7. And because Blair initiated this suit in January 2023, moving the certification motion deadline (currently set for January 2024) back three months still ensures that will occur within two years. *Id.* at 8.

To the extent Assurance IQ touts *True Health* as establishing a bright-line rule for acceptable delay, the Court disagrees. The district court in *True Health* confronted a delay between the filing of the plaintiff's complaint and the extended certification deadline that was longer than the prospective delay here. But the case does not stand for the proposition that bifurcation is always appropriate so long as certification occurs within two years of the action's commencement. And more importantly, the concerns the court noted in *True Health* are present in this case. There the court rejected the bifurcation request involving an initial 45-day "individual issues" phase (as opposed to a 90-day initial phase) because of the *additional* delay associated with a separate motion for summary judgment:

> If the Court bifurcates discovery and grants Defendants forty-five days to conduct discovery solely as to individual issues, that discovery will likely not be complete until late March. Defendants would then have to prepare and file a motion for summary judgment; assuming this would require approximately a month, the motion would be filed in late April, and heard in early June. The Court would then have to issue an order on summary judgment, and only then —assuming [the proposed class representatives] remained in the case—could class discovery even *begin.* A motion for class certification would not be ready for hearing until class discovery was complete.

*True Health*, 2015 WL 273188, at *2 (emphasis original). This reasoning is equally applicable here. Bifurcation would delay rather than advance the class certification determination

and would not promote Rule 23(c)(1)(A)'s requirement that certification occur "[a]t an early practicable time[.]"

### 3. Judicial Economy

Nor does the third factor favor bifurcation. The Court acknowledges that initially limiting discovery to Blair's individual claims could facilitate a more efficient resolution of this action and obviate the need for costly class-related discovery. Dkt. No. 19 at 8; *see, e.g.*, *Young v. Mophie, Inc.*, No. SACV-19-827 JVS (DFMX), 2020 WL 1000578, at *3 (C.D. Cal. Jan. 7, 2020); *Deleon v. Time Warner Cable LLC*, No. CV-09-2438-AG (RNBX), 2009 WL 10674767, at *2 (C.D. Cal. Nov. 2, 2009). It concludes, however, that the risks of bifurcation outweigh the potential benefits in this case. Just as the district court observed in *True Health*, bifurcation poses a substantial risk of complicating this litigation with a slew of disputes over whether certain discovery relates to class issues or Blair's individual claims. 2015 WL 273188, at *2; *see also, e.g.*, *Ahmed*, 2018 WL 501413, at *3 ("[B]ifurcation often creates unnecessary gaps in the evidence as a defendant has a strong incentive to withhold evidence[.]"); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, No. 8:10-CV-2008-T-33TGW, 2011 WL 486123, at *2 (M.D. Fla. Feb. 7, 2011) (questioning whether, given the "murky" distinction between merits and class issues, parties with an incentive to withhold damaging evidence can properly draw the line between the two categories during phased discovery); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) ("Bifurcated discovery fails to promote judicial economy when it requires ongoing supervision of discovery. If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as 'merits' or 'certification' discovery." (cleaned up)).

**\*8** Additionally, the Court must weigh the possibility that discovery will validate Blair's claims and, should those claims survive (or win) summary judgment, demonstrate that he is an adequate class representative. If that proves to be the case, the Court and the parties will needlessly duplicate at least two lengthy steps in this litigation: discovery and dispositive motions practice. *True Health*, 2015 WL 273188, at *3; *see also Hartley-Culp v. Credit Mgmt. Co.*, No. 3:CV-14-0282, 2014 WL 4630852, at *4 (M.D. Pa. Sept. 15, 2014) ("[B]ifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions."). Dkt. No. 21 at 4 (detailing duplicated efforts).

### 4. Prejudice

The fourth and final factor is neutral. "The potential for prejudice resulting from granting or denying the motion to bifurcate runs both ways." *True Health*, 2015 WL 273188, at *3. On the one hand, bifurcation would delay production of class-related discovery and therefore temporarily deprive Blair of information necessary to support the proposed classes' claims. On the other, Assurance IQ could needlessly incur serious expenses in responding to Blair's class-related discovery requests should Blair's individual claims prove unsubstantiated or unsuccessful. *Id.*; Dkt. No. 19 at 9 (documenting several class-related interrogatories and requests for production); *but see Hunichen*, 2020 WL 5759782, at *2 (finding prejudice to defendants "minimized by the unavoidable overlap with merits discovery, the ongoing relevance of merits discovery beyond class certification, and the avoidance of disputes over what does and does not constitute solely class-based discovery.").

Three factors weigh against bifurcation while one is neutral. The Court accordingly finds bifurcation inappropriate in this case and denies this aspect of Assurance IQ's motion.

### III. CONCLUSION

The Court DENIES Assurance IQ's Motion to Stay Discovery or, in the Alternative, to Bifurcate Discovery, Dkt. No. 19, and GRANTS IN PART and DENIES IN PART its Motion to Dismiss Amended Complaint, Dkt. No. 20.

Should Blair wish to file an amended complaint curing the deficiencies identified above, he must do so within 14 days of the date of this Order.

**All Citations**

Slip Copy, 2023 WL 6622415

Footnotes

1      Assurance IQ does not challenge the sufficiency of Count 2. *See generally* Dkt. No. 20.

2  Assurance IQ's request to bifurcate discovery also implicates Federal Rule of Civil Procedure 16(b)(4). That is, it must demonstrate "good cause" to modify the Court's existing case schedule. For the purposes of this motion, the Court considers this inquiry subsumed by the four-factor bifurcation analysis. Assurance IQ frames its arguments under that test, and it does not otherwise attempt to articulate good cause for amending the case schedule.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.