2007 WL 3169078

🚩 **KeyCite Yellow Flag - Negative Treatment**
Disagreed With by [A Fast Sign Co., Inc. v. American Home Services, Inc.,](#)
Ga., November 5, 2012

2007 WL 3169078
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Bruce LEVITT, et al.

v.

FAX.COM, et al.

Civil No. WMN–05–949.
|
May 25, 2007.

**Attorneys and Law Firms**

[Michael Craig Worsham](#), Law Office of Michael Craig Worsham, Forest Hill, MD, [Stephen Howard Ring](#), Stephen H. Ring PC, Germantown, MD, for Bruce Levitt, et al.

[Rodney E. Gould](#), Rubin Hay and Gould PC, Framingham, MA, [Thomas S. Hood](#), Hood and Scholnick PA, Towson, MD, for Fax.Com, et al.

*MEMORANDUM*

[WILLIAM M. NICKERSON](#), United States Senior District Judge.

**\*1** This suit arises out of three facsimile transmissions sent to Plaintiff Bruce Levitt in January and February of 2001. These transmissions advertised vacation packages offered by Defendant JD & T Enterprises, Inc. d/b/a Travel to Go (JD & T) and it is alleged that identical transmissions were sent, unsolicited, to thousands of Maryland residents. It is undisputed that the fax transmissions were actually sent by Defendant Fax.com. Furthermore, it is also undisputed that Fax.com was hired to send the faxes, not by JD & T directly, but by Creative Marketing Concepts (CMC), an independent marketing company hired by Defendant JD & T to market its vacation packages.

Plaintiff filed this action in the Circuit Court for Baltimore City on May 7, 2001, alleging violations of the Telephone Consumer Protection Act, [47 U.S.C. § 227 (TCPA)](#). The TCPA makes it generally unlawful "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." [42 U.S.C. § 227(b)(1)(C)](#). Plaintiff initially named only Fax.com and JD & T as defendants.

On December 24, 2002, Judge Marcella Holland of the Baltimore City Circuit Court certified this suit as a class action. The class of plaintiffs was defined as:

> All persons, including business entities of any form, in Maryland, who received unsolicited advertisements transmitted by Fax .com, Inc, via facsimile promoting products and services offered for sale by or through JD & T Enterprises, Inc.

Order dated Dec. 24, 2002. Shortly thereafter, the Baltimore City Circuit Court granted a motion for summary judgment in favor of all defendants and dismissed the case. This dismissal was subsequently reversed by the Maryland Court of Appeals. *[Levitt v. Fax.com, Inc ., 857 A.2d 1089 (Md.2004)](#).* After the case was remanded to the Circuit Court, Plaintiff filed a "Second Amended Class Action Complaint" on February 23, 2005. This pleading added new defendants, including Creative Marketing Concepts, LLC and several individuals. Two of the newly added individual defendants,[1] Matthew Buecler and Jeanette Bunn, removed the action to this Court on April 7, 2005, pursuant to provisions of the then recently enacted "Class Action Fairness Act of 2005," [28 U.S.C. 1332(d) (CAFA)](#). On October 12, 2005, this Court denied Plaintiff's motion to remand and on December 1, 2005, this Court granted a motion to dismiss Buecler and Bunn.

During the period of time between the certification of the class action and the denial of Plaintiff's motion to remand, *Fax.com* apparently went out of business and ceased its participation in this litigation. Thus, the only remaining active defendant is Defendant JD & T. On January 12, 2007, Defendant JD & T filed a motion to decertify the class action. Paper No. 40. That motion is now ripe.

"Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *[General Tel. Co. of the Southwest v. Falcon, 457 U .S. 147, 160 (1982)](#).* In fact, a court "is duty bound to monitor [the] class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification." *[Chisolm v. TranSouth Financial Corp. 194 F.R.D. 538, 544 (E.D.Va.2000)](#).* Like the decision to initially certify a class, a decision to decertify a class is

left to the court's discretion. *Doe v. Lally,* 467 F.Supp. 1339 (D.Md.1979).

 *2 Defendant JD & T raises three arguments as to why this Court should decertify the class. First, it argues that, now that the case is in a federal court, certification must be re-evaluated under the federal class certification rule. Although Maryland's class certification rule, Md. R. 2–231, is patterned after federal rule, Fed.R.Civ.P. 23, Defendant contends that the presumptions and burdens applied in interpreting the two rules are not identical. Second, Defendant contends that changes in the posture of the case, specifically, the fact that Fax.com is no longer actively participating in the litigation, have rendered continued treatment of this case as a class action unmanageable. Fax.com, according to JD & T, was the only source of critical information regarding the identity of those who received the facsimile transmissions, as well as those that may have consented to the transmissions. Finally, JD & T argues that the state court's certification decision was simply wrong.

For the reasons explained below, the Court finds JD & T's second argument compelling. Under the current posture of this litigation, class certification is no longer appropriate under Rule 23. Thus, the Court need not reach the issue of whether the state court's certification decision was flawed or whether it would have been different under the federal rule.

Rule 23(a) sets out four threshold requirements that must be satisfied by the putative class before a class action can be certified. The class representative must establish that

> 1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These four prerequisites are frequently referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively.

Once these four prerequisites are established, the plaintiff must still satisfy one of the three criteria of section (b) of Rule 23 before a class can be certified. Under 23(b) the potential class representative must show either that: 1) separate actions would result in inconsistent adjudications or the interests of non-parties would be substantially impaired; 2) final injunctive or declaratory relief is appropriate to the class as a whole; or 3) common questions of law or fact predominate over any questions affected only individual members and a class action is the superior method of fairly and efficiently adjudicating the controversy. Here, Plaintiff asserted, and the state court found, that class certification was appropriate under the state rule equivalent of the third subparagraph of Rule 23(b). *See* Second Amend. Compl. ¶ 21 (citing Md. Rule 2–231(b)(3)). Defendant argues, and this Court agrees, that Plaintiff simply cannot establish the prerequisites of commonality or typicality, nor can he demonstrate that common questions predominate over questions affecting the individual class members.

 *3 Commonality, by definition, requires that there are questions of law or fact that are "common" to the class. "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. A question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 319 (4th Cir.2006) (internal quotations and citations omitted). The need for a case-by-case determination of a material issue for each class member's claim also denotes that the claims of the class representative are not "typical" of the claims of the individual class members. *See Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990).

In order to establish a claim under the TCPA, a plaintiff must have received a facsimile transmission that was "unsolicited." Under the statute, "unsolicited" means transmitted without the recipient's "prior express invitation or permission." 47 U.S.C. § 227(a)(5). The recipient's prior invitation or permission could have been given orally or in writing. *Id.* (stating that invitation or permission can be given "in writing or otherwise"); *see also Carnett's Inc. v. Hammond,* 610 S.E.2d 529, 531 (Ga.2005).

Under the Federal Communications Commission's (FCC's) TCPA implementing regulations in effect at the time Plaintiff received the fax transmissions from JD & T, "express permission [was] also deemed given by those recipients having an 'established business relationship' " with the sender of the fax transmission.[2] *Carnett,* 610 S.E.2d at 531. An "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication ... with or without an exchange of consideration...." 47 C.F.R. § 64.1200(f)(3). "The FCC has opined that the established business relationship exemption is

broad and that you have an established business relationship with a person or entity if you have made an inquiry, application, purchase, or transaction regarding products of services offered by such person or entity." *Carnett,* 610 S.E.2d at 531–32 (internal citations omitted).[3]

It is this need to make a determination for each class member as to whether the facsimile transmission was unsolicited, both by the lack of express permission and by the absence of a prior business relationship, that makes class treatment of this action inappropriate and unmanageable. This determination of whether invitation or permission was given is, of necessity, highly individualized and would require a separate inquiry for each individual class member in light of their particular relationship or lack of relationship with each of the defendants. Under the current posture of this case, there is simply no available method for class-wide determination of this issue.

**\*4** Numerous courts, citing the lack of commonality, typicality and predominance of common issues, have determined that TCPA claims cannot be brought as a class action. *See, e.g., Forman v. Data Transfer, Inc.,* 164 F.R.D. 400, 403–04 (E.D.Pa.1995)(observing that "the essential question of fact that each potential plaintiff must prove is whether a specific transmission to its machine was without express invitation or permission on its part."); *Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169–70 (S.D.Ind.1997) (noting that it would be required "to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements."); *Blitz v.. Xpress Image, Inc.,* Civ. No. 05–679, 2006 WL 2425573 (N.C.Super.Aug.23, 2006) (denying class certification upon the conclusion that "there is no avoiding an individualized inquiry into the facts and circumstances of each recipient's 'invitation and permission' should this matter proceed as a class action," as well as need for individualized determination of applicability of "established business relationship"); *Carnett's Inc. v. Hammond,* 610 S.E.2d 529, 532 (Ga.2005) (noting that while the predominate *question* of whether facsimiles were unsolicited was common to all class members, "a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class."); *Rondos v. Lincoln Prop. Co.,* 110 S.W.3d 716, 721–22 (Tex.Ct.App.2003) (reversing certification of class upon concluding that the predominant issue for litigation would be whether individual fax owners gave permission to receive advertisements); *Livingston v. U .S. Bank, N.A.,* 58 P.3d 1088, 1091 (Colo.App.2002) (upholding trial court's determination that "the question whether any particular fax recipient gave 'prior express invitation or permission' would have to be decided on an individual basis and therefore would overwhelm, let alone predominate over, the common issues").

It is conceivable, while the actual transmitter of the facsimiles in question, Fax.com, was available to actively participate in this litigation, that these issues could have been resolved in some more global fashion. In moving to certify the class in the state court and in his pleadings opposing this motion to decertify, Plaintiff averred that Fax.com had a database and log of the transmissions at issue in this matter. *See* Aug. 7, 2002, Mem. in Support of Class Cert.;[4] Opp. at 14. Information that Fax.com might have as to the source of its databases might be instructive as to issues of consent: was the database constructed from customer lists provided by CMC, lists purchased from some third party, numbers generated by Fax.com computers randomly dialing and hunting for fax machines, or some combination thereof? Regardless of what insight *Fax.com* might have been able to provide, however, there is no evidence in the record that JD & T has, or ever had, any information regarding the content or construction of the databases used by Fax.com.

**\*5** This absence of available information about the database renders this case, in its present posture, readily distinguishable from at least some of the cases relied upon by Plaintiff where class certification of TCPA claims was found appropriate. For example, in *Kavu, Inc. v. Omnipak Corp.,* Civ. No. 06–109, 2007 WL 201093, (W .D.Wash. Jan. 23, 2007), the record before the certifying court included the identity of the specific third party supplier of the database that was used to send the offending faxes as well as an explanation of the particular method used by that third party to construct the database. The defendant, in fact, asserted in the litigation that the recipients' inclusion in that database demonstrated consent to receive facsimiles. *Id.* at \*3. Because the validity of that assertion could be tested on a class-wide basis, the Court distinguished the case before it from the more typical TCPA case: "whether the facsimile was 'unsolicited' appears to be more of a common issue in this case than in the cases that denied class certification .... [where] the issue of whether each potential class member gave permission to receive the facsimiles was key." *Id.; see also, Gene & Gene, LLC v. Biopay, LLC,* Civ. No. 05–121, 2006 WL 3933312 at \*2 (M.D.La. Dec. 20, 2006) (record before the court contained

**Levitt v. Fax.com, Not Reported in F.Supp.2d (2007)**
2007 WL 3169078
Case 3:24-cv-01866-JKM   Document 52-15   Filed 03/25/25   Page 4 of 7

database with names and contact information for the alleged unlawful facsimile transmissions).[5]

Implicitly acknowledging the importance of some means by which to identify those who received the offending facsimiles and those who may have consented to that receipt, Plaintiff devotes much of his opposition to an attempt to show that JD & T has or had possession of this information, or at least should have had possession of this information. In this attempt, however, Plaintiff seriously misconstrues the record. For example, Plaintiff declares that Jeannette Bunn, JD & T's president, "selected the geographic areas to be targeted" by the facsimile advertisements. Opp. at 6. This statement is presumably based upon a series of emails from JD & T to individuals associated with Fax.com and CMC. While Bunn makes geographic suggestions in these emails as to the *content* of the facsimile advertisements, *i.e.,* recommending the addition of particular vacation destinations,[6] there is nothing in these emails or elsewhere in the record to suggest that she had any input into the geographic areas to which those advertisement were to be sent.

Similarly, Plaintiff cites to a series of emails where complaints about the receipt of facsimiles are forwarded to Bunn and Bunn contacts the marketing company to have the telephone numbers removed from the call list. Plaintiff argues that these emails show that "JD & T thus helped 'maintain' the fax list" and "Bunn thus carelessly and recklessly proceeded to help in the deletion process, without taking the extra step of ascertaining whether prior consents were being obtained, and without implementing a policy to be sure they were obtained where needed." Opp. at 8, 9. While these emails might have relevance to issues of liability, they do not shed light on the propriety of class certification. If anything, they reinforce the fact that JD & T did not have immediate access to the database and thus had to relay the complaints elsewhere.

*6 In his opposition, Plaintiff asserts that he is attaching what he claims to be "3 representative pages" of "[t]he Fax.com database [which he] obtained through a former employee." Opp. at 8. Given the undisputed significance of this database, it is remarkable that Plaintiff mentions that it has come into his possession almost in passing. The Court surmises that Plaintiff's nonchalance with regard to this "evidence" is explained by Plaintiff's apparent inability to render it admissible. As JD & T observes, Plaintiff makes no effort, whatsoever, to authenticate this evidence. Furthermore, from the dates on the "representative pages," it appears this list is from a time period three years after the time relevant to this action. Finally, there is nothing about these pages indicating that they contain telephone numbers to which JD & T advertisements were sent. As evidence in this action, these pages as presented are essentially worthless and the Court suspects from the offhanded way that they were introduced that Plaintiff's counsel realizes as much.

Plaintiff also cites a January 28, 2003, letter from counsel for JD & T to Plaintiff's counsel in which it is stated that 36,877 transmissions of the specific advertisement at issue in this action were sent to Maryland fax numbers during the relevant time period. Pl.'s Ex. 7. This letter, Plaintiff claims, demonstrates that JD & T "had a method to determine Maryland recipients of the specific unsolicited travel faxes at issue." Opp. at 12. The value of this letter as evidence relevant to issues of class certification, however, is also highly suspect. First, the letter clearly states that it is a "***CONFIDENTIAL SETTLEMENT COMMUNICATION PER JUDGE HOLLAND—NOT TO BE USED IN LITIGATION.***" That aside, the letter also clearly relates that the information is coming from Fax.com, not JD & T.[7] Furthermore, the letter explains that, because of the way that the database was encrypted to protect its contents from theft, there is no way to obtain the individual numbers that comprise the database.

Unable to provide any evidence that JD & T actually had access to the database used by Fax.com to send the advertisement, Plaintiff argues, in the alternative, that JD & T *should* have had that access. Plaintiff opines that "[i]f Fax.com represented that it had obtained prior consents, one would expect that JD & T would want to confirm this fact, and see some kind of evidence in support." Opp. at 16. Plaintiff argues that, based upon JD & T's inability to prove that consent was given, a finding of lack of consent "should apply uniformly, across the board, as to all class members." *Id.* at 15.

This argument is based upon an interpretation of the statute not supported by the language of the statute itself or by the case law. Plaintiff contends, without citation, that "[e]ven if a member of the class had given permission to Fax.com to send faxes ... any such permission would not extend to JD & T." Opp. at 17. If, hypothetically, a consumer requested that Fax.com send information about travel packages and Fax.com then sent that consumer a facsimile about travel packages offered by JD & T, it is hard to imagine how that transmission could be deemed "unsolicited." Under the statute, the term " 'unsolicited advertisement' means any material advertising the commercial availability or quality

of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The statute does not designate to whom the permission must be given. If permission is given to the transmitter of the facsimile, the marketing company, or the provider of the advertized product or services, the statute would not be violated.

**\*7** Once all the smoke is blown away, it appears that Plaintiff's true position is that this action is amenable to class treatment because the class members do not actually need to prove that the facsimiles in question were "unsolicited" in order to make out a claim under the TCPA. In Plaintiff's "common sense" view, "[i]t is unfathomable that anyone would actually give consent to receive via facsimile a barrage of ads like those at issue in this action." Opp. at 15 n. 7.[8] Thus, it can simply be presumed, according to Plaintiff, that the transmissions were unsolicited.

The Court has no doubt that this assumption would hold true for a majority of consumers. Most consumers do not wish for their facsimile machines to be tied up or their toner and paper wasted receiving and printing faxed advertisements. Just because that is true of most, however, does not permit the Court to adopt a presumption that it is true of all. Again, if Fax.com had remained involved in this litigation, information regarding the sources of telephone numbers in its database might have allowed some global determinations of consent. But without Fax.com's participation, that is simply not possible.[9]

Plaintiff raises one additional argument that warrants brief mention. Plaintiff argues that CAFA, the Class Action Fairness Act, somehow "weighs in favor of certification." Opp. at 2. Plaintiff correctly observes that this Court has already held that, because CAFA allows for the aggregating of class member claims, " 'there is no dispute that the instant suit satisfies' " CAFA's jurisdictional criteria. Opp. at 17 (quoting Oct. 12, 2005 Mem. at 2). Because Plaintiff's individual damages would be below the requisite amount in controversy for diversity jurisdiction, Plaintiff opines that decertification would divest this Court of subject matter jurisdiction of his claims. *Id.* at 18.

In the context of post-removal reduction of the amount in controversy under the general diversity jurisdiction statute, courts have uniformly held that "diversity jurisdiction is determined at the time the action commences, and a federal court is not divested of jurisdiction ... if the amount in controversy subsequently drops below the minimum jurisdictional level." Hill v. Blind Indus. & Serv. of Md., 179 F.3d 754, 757 (9th Cir.1991). Because of the recentness of CAFA's enactment, few courts have considered the effect of post-removal certification or decertification decisions on continued federal jurisdiction. In the one decision of which this Court is aware that reached the issue, Davis v. Homecomings Financial, Civ. No. 05–1466, 2007 WL 905939 (W.D.Wash. March 22, 2007), the court held that a similar "time of removal" principle would apply.

In *Davis,* the plaintiff proposed a nation-wide class. After removal to federal court, the class was certified as state-wide class only which brought the amount in controversy under CAFA's requisite $5 million threshold. Nonetheless, following the principle that the amount in controversy is determined as of the time of the removal, the court concluded that it could retain jurisdiction over the now diminished class action. The court reasoned that Congress is presumed to be aware of the legal context in which it is legislating and, despite this presumed knowledge, "there is no indication that Congress intended to alter the established authority regarding subsequent changes to the amount in controversy." *Id.* at \* 1. This Court agrees with that reasoning and concludes that decertification of the class will not divest this Court of jurisdiction over Plaintiff's now lone claim.

**\*8** For the above stated reasons, the Court concludes that the class should be decertified. A separate order will issue.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 3169078

Footnotes

1     There is no indication in the record that any of the other defendants added in the Second Amended Complaint were ever served with process.

Levitt v. Fax.com, Not Reported in F.Supp.2d (2007)
Case 3:24-cv-01866-JKM   Document 52-15   Filed 03/25/25   Page 6 of 7
2007 WL 3169078

2  Congress subsequently amended the TCPA to codify the "established business relationship" exception to TCPA liability in the facsimile context. 47 U.S.C. § 227(b)(1)(C)(i).

3  When Congress codified the "established business relationship" exception, it adopted by reference the FCC's definition of the term. 47 U.S.C. 227(a)(2) ("[t]he term 'established business relationship' for the purposes only of [47 U.S .C. § 227(b)(1)(C)(i) ] shall have the meaning given the term in [47 C.F.R. 64.1200]").

4  Defendant included quoted text from this memorandum in its motion, Mot. at 9, but the memorandum itself is not a part of record in this Court and Defendant did not supply it with its motion. As Plaintiff did not challenge Defendant's citation, the Court assumes its accuracy.

5  The court in *Gene & Gene,* did not base its decision on the availability of that database. Instead, after acknowledging that "federal courts have consistently denied class certification," 240 F.R.D. at 242, the court proceeded to examine "Fifth Circuit precedent in order to ascertain how a federal court within the Fifth Circuit should decide this matter." *Id.* Under its view of Fifth Circuit precedent, the court opined that the requirements of commonality and typically are "not demanding." *Id.* at 244. In contrast, the Fourth Circuit has held that, "in class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(b)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 147 n. 4 (4th Cir.2001) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 609 (1997)). Thus, in the Fourth Circuit, "[t]he common questions must be dispositive and overshadow other issues." *Lienhart,* 255 F.3d at 146.

In addition to distinguishable facts and law, all three of the cases relied upon by Plaintiff—*Kavu, Gene & Gene;* and *Lampkin v. GGH,* 146 P.3d 847 (Okla.Civ.App.2006), a recent decision from the intermediate appellate court of Oklahoma —endorsed what this Court views as a flawed class definition. The class definitions in all three actions, like the class definition approved by the state court in the instant action, required a determination of the merits in that all the definitions limit class membership to those who received "unsolicited" facsimiles. *Kavu,* 2007 WL 201093 at * 2 (defining class as "[a]ll persons who received an unsolicited advertisement ..."); *Gene & Gene,* 240 F.R.D. at 241 (defining class as "all recipients of unsolicited telefacsimile messages and/or advertisements ..."); *Lampkin,* 146 P.3d at 851 (defining class as "[h]imself and all entities and persons ... who received unsolicited fax advertisements ..."); Dec. 24, 2002, Order (defining class as "[a]ll persons, including business entities of any form, in Maryland, who received unsolicited advertisements transmitted by Fax.com, Inc...."). Deciding the merits of individuals' claims in order to determine the members of the class is not appropriate. *See Eisen v. Carlisle v. Jacquelin,* 417 U.S. 156, 177 (1974); *See also, Forman,* 164 F.R .D. at 403; *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 404–06 (Tex.2000) (collecting cases and explaining why a "fail-safe class," *i.e.,* a class whose definition includes a determination of the merits, is untenable).

6  *See, e.g.,* Opp. at 10 (" '... regarding adding some areas to the fax piece? I asked if you could add Sun Valley, ID as it is a popular destination for skiing and we have inventory there that is not moving at all.' ") (quoting Oct. 6, 2001 email from Bunn to Robin Posser).

7  For a brief period of time, early in this litigation, counsel for Fax.com also represented JD & T. At the time this letter was sent, Fax.com was clearly the main target of this litigation as evidenced by the fact that JD & T is mentioned nowhere in the letter.

8  Annoying as unsolicited facsimiles might be, the Court questions if three facsimiles can be fairly deemed "a barrage."

9  In an effort to compensate for Fax.com's absence from this litigation, Plaintiff submitted materials from other proceedings related to Fax.com. For example, Plaintiff submitted a portion of the testimony of Thomas Roth, one of Fax.com's officers, given in a January 31, 2003, hearing before the Securities and Exchange Commission. In his testimony, Mr. Roth states that some of the numbers in Fax.com's database were obtained by having computers randomly dial phone numbers fishing for facsimile machines. Faxes to these numbers, Roth acknowledged, would be unsolicited. But Roth also testified that *Fax.com* would purchase some numbers from list brokers. He made no representation in the testimony provided by Plaintiff that faxes sent to numbers on those purchased lists would be unsolicited. There is no testimony regarding the source of the database used to fax the JD & T material. Furthermore, as JD & T had no opportunity to cross examine Roth, this testimony is likely inadmissible in this action.

**Levitt v. Fax.com, Not Reported in F.Supp.2d (2007)**
Case 3:24-cv-01866-JKM    Document 52-15    Filed 03/25/25    Page 7 of 7
2007 WL 3169078

---

**End of Document**                                                © 2025 Thomson Reuters. No claim to original U.S. Government Works.