Case 3:24-cv-01866-JKM    Document 52-17    Filed 03/25/25    Page 1 of 7
Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

🚩 **KeyCite Yellow Flag - Negative Treatment**
Disagreed With by [Wiggins v. Bank of America, North America,](...) S.D.Ohio, September 22, 2020

2019 WL 4382204
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

[Caroline SIMON](...), individually and on behalf of all others similarly situated, Plaintiff,

v.

ULTIMATE FITNESS GROUP, LLC d/b/a Orangetheory Fitness, and Does 1 Through 10, inclusive, and each of them, Defendants.

No. 19 Civ. 890 (CM)
|
Signed 08/19/2019

**Attorneys and Law Firms**

[Todd Friedman](...), Law Offices of Todd M. Friedman, Woodland Hills, CA, for Plaintiff.

[Cary Brian Samowitz](...), [Rachael C. Kessler](...), [Cassandra Beckman Widay](...), DLA Piper US LLP, New York, NY, [Edward Dean Totino](...), Baker & McKenzie LLP, Los Angeles, CA, for Defendants.

**MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISMISS OR STAY**

[McMahon](...), C.J.:

**\*1** Plaintiff Caroline Simon brings this class action against Ultimate Fitness Group, LLC d/b/a Orangetheory Fitness ("Defendant" or "Orangetheory") and ten unnamed employees or agents of Orangetheory, alleging violations of the Telephone Consumer Protection Act of 1991, [47 U.S.C. § 227](...) ("TCPA"). The TCPA prohibits the making and sending of telemarketing calls and texts through an automated telephone dialing system ("ATDS" or "autodialer") without the consent of the recipient.

Orangetheory now moves to dismiss the Class Action Complaint (hereinafter referred to as the "Complaint") for lack of personal jurisdiction and for failure to state a claim.

In the event that the motion to dismiss is denied, Defendant also moves to stay the proceedings while awaiting the Federal Communications Commission's ("FCC's") release of the revised definition of an ATDS.

For the reasons set forth below, all of Orangetheory's motions are denied.

**I. Factual Background**

The following facts are drawn from the allegations in the Complaint, which are presumed true for the purposes of these motions.

Plaintiff Caroline Simon ("Plaintiff" or "Simon") is a resident of New York. (Compl. dated Jan. 31, 2019, Dkt. No. 11 ("Compl.") ¶ 4.)

The Complaint originally stated in error that Orangetheory had its principal place of business in New York City. (Compl. ¶ 5.) However, Plaintiff now agrees that Orangetheory is a Delaware corporation with its principal place of business and headquarters in Florida. (See Pl.'s Mem. of Law in Opp. Mot. to Dismiss, Dkt. No. 36 ("PL MTD Opp.") at 4 n.2; Def.'s Mem. of Law in Supp. of Mot. to Dismiss, Dkt. No. 32 ("Def. MTD Br.") at 1; see also Decl. of Charlene Barone in Supp. of Def.'s Mot. to Dismiss, Dkt. No. 33 ("Barone Decl.") ¶¶ 2–3.)

In or about May 2018, Simon received an unsolicited text message from Defendant on her cell phone. (Compl. ¶ 8.) The last four digits of the sender's number were "5443." (*Id.*) In or about June 2018, Simon continued to receive unsolicited text messages from Defendant, sent from Defendant's "text number" 797-979. (*Id.* ¶ 9.) Defendant allegedly contacted or attempted to contact Simon from telephone numbers confirmed to belong to Defendant, including but not limited to 797-979. (*Id.* ¶ 11.)

Although Simon does not allege what the text messages said, she alleges Defendant sent her "spam advertisements and/or promotional offers." (*Id.* ¶ 9.) She alleges the text messages were sent via Defendant's "SMS blasting platform," which she alleges is classified as a prohibited "automatic telephone dialing system" (ATDS) under the Telephone Consumer Protection Act ("TCPA"). (*Id.* ¶ 10.)

Simon was never a customer of Orangetheory, and never provided her cellular telephone number to it. (*Id.* ¶ 14.) Defendant and its agents never received Simon's prior express consent to receive unsolicited text messages, pursuant to 47

Case 3:24-cv-01866-JKM    Document 52-17    Filed 03/25/25    Page 2 of 7

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

U.S.C. § 227(b)(1)(A). (*Id.*) Defendant's texts were not for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A). (*Id.* ¶ 12.)

**\*2** Simon now brings this action on behalf of a putative class of individuals within the United States who also received unsolicited text messages from Defendant within four years of the date of Simon's filing of her Complaint. (*Id.* ¶ 16.) While Simon is not sure exactly how large the putative class is, she believes the class could contain hundreds of thousands of people. (*Id.* ¶ 18.)

With respect to injury, Simon alleges that she and members of the putative class were harmed by Defendant's acts because the unsolicited text messages caused the class members to "incur certain telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invad[ed] the privacy of said Plaintiff and the Class members." (*Id.* ¶ 19.)

**II. Procedural History**
In her Complaint filed on January 31, 2019, Simon asserts two causes of action on behalf of herself and the class: first, for negligent violations of the TCPA (Count 1), and, second, for knowing and/or willful violations of the TCPA (Count 2). (*Id.* ¶¶ 28–37.) The Complaint seeks $500 in statutory damages for each of Defendant's negligent violations of the TCPA (*Id.* ¶¶ 28–31), and up to $1,500 in statutory damages for each of Defendant's knowing and/or willful violations of the TCPA. (*Id.* at 6.)

Orangetheory now moves to dismiss the Complaint against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 31.) Should those motions fail, Orangetheory asks the Court to stay Simon's action pending new FCC rules that might affect the definition of an autodialer under the TCPA. (Dkt. No. 34.)

**III. Discussion**

   **A. Defendant's Motion to Dismiss Under Rule 12(b)(2) for Lack of Personal Jurisdiction Is Denied**

**1. Applicable Legal Standard**

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's burden of proof "depends upon the procedural context in which the jurisdictional challenge is raised." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 373 (S.D.N.Y. 2009). Where, as here, no evidentiary hearing has been held, plaintiffs "need only make a *prima facie* showing of personal jurisdiction." *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (citation omitted). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Id.* The pleadings, affidavits, and other supporting materials are construed in a light most favorable to plaintiffs, and all doubts are resolved in their favor. *Id.*

Because Simon's claim is based on the TCPA, which is silent about service of process, state law informs whether the court has personal jurisdiction over Orangetheory. *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 358 (E.D.N.Y. 2007) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).

To determine whether personal jurisdiction exists over a non-domiciliary, the court engages in a two-step inquiry. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007)). The court first applies the long-arm statute of the forum state, to see whether it permits the exercise of personal jurisdiction over the defendants. If the laws of the forum state permit jurisdiction, the court then considers whether the exercise of such jurisdiction comports with constitutional due process. *See Best Van Lines*, 490 F.3d at 244.

**\*3** Because the Court is located in New York, the Court applies New York law. *See Chloe*, 616 F.3d at 163. Under New York's long-arm statute, there are two ways to establish personal jurisdiction over a defendant: (1) "general jurisdiction" under N.Y. C.P.L.R. § 301; and (2) "specific jurisdiction" under N.Y. C.P.L.R. § 302. As will be discussed, only the latter constitutes a possible basis for asserting personal jurisdiction over Orangetheory in this case.

Case 3:24-cv-01866-JKM	Document 52-17	Filed 03/25/25	Page 3 of 7

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

**2. The Court Has Specific Jurisdiction over Orangetheory with Respect to Simon's Claim**

Simon originally plead in error that Defendant's principal place of business was in New York City. (Compl. ¶ 5.) If that were true, there would be no question that Defendant is "at home" in New York and is thus subject to the general jurisdiction of this Court. *Daimler AG v. Bauman*, 571 U.S. 117, 136–37 (2014). However, because Orangetheory is actually a Delaware corporation with its principal place of business in Florida, the Court can only exercise specific jurisdiction over it—that is, jurisdiction that arises out Simon's and the putative class members' claims with respect to Defendant's conduct alleged in the suit. (Pl. MTD Opp. at 4); *see Daimler*, 571 U.S. at 137.

Defendant does not challenge that this Court has specific jurisdiction over Defendant with respect to Simon's claim and the claims of any New York residents who may be in the putative class. (Def. MFD Br. at 4 ("... the Court presumably has specific jurisdiction over [Plaintiff's] claim against Defendant....").) Defendant argues, however, that Supreme Court's recent decision in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), prevents the Court from exercising personal jurisdiction over Defendant with respect to the claims of putative class members who are not New York residents.

**3. The *Bristol-Myers Squibb* Decision**

Defendant argues that *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), requires this Court to dismiss the claims of absent, non-New York class members, because the Court lacks specific jurisdiction over Orangetheory with respect to those claims. (Def. MTD Br. at 4.)

In *Bristol-Myers Squibb*, a group of 678 plaintiffs filed a mass action, under eight identical complaints, against Bristol-Myers Squibb in California state court, for injuries caused by one of Bristol-Myers Squibb's drugs, Plavix. *Bristol-Myers Squibb*, 137 S. Ct. at 1778. Only 86 of the plaintiffs were California residents. *Id.* The other 592 plaintiffs were residents of other States, and so had not suffered their injuries within California. *Id.* The California Supreme Court found that the lower courts had personal jurisdiction over Bristol-Myers Squibb, given the company's extensive contacts with California and the similarities between the claims of the California plaintiffs and the non-California plaintiffs. *Id.* at 1779. The Supreme Court reversed: without an actual connection between the out-of-state plaintiffs' claims and the defendant's activities in California, California state courts' exercise of personal jurisdiction over Bristol-Myers Squibb with respect to the non-California plaintiffs' claims would violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1781, 1783.

The Supreme Court explicitly "[left] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784. The Supreme Court therefore left it to the lower courts to determine whether *Bristol-Myers Squibb*'s holding applies to nationwide class actions brought pursuant to Fed. R. Civ. P. 23. In practice, this question has fallen to the district courts; as far as this Court is aware, no circuit court has yet to weigh in on the matter. *See Suarez v. Cal. Nat. Living, Inc.*, 17-cv-9847, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019).

**\*4** District courts generally take one of three approaches.

First, many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases. *See, e.g.*, *Sanchez v. Launch Tech. Workforce Solutions, LLC*, 297 F. Supp. 3d 1360, 1365 (N.D. Ga. 2018); *Molock v. Whole Foods Mkt., Inc.*, 297 F. Supp. 3d 114, 126 (D.D.C. 2018); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 09-md-2047, 2017 WL 5971622, at *12–*14 (E.D. La. Nov. 30, 2017); *Cabrera v. Bayer Healthcare, LLC*, LA 17-cv-8525, 2019 WL 1146828, at *8 (C.D. Cal. Mar. 6, 2019); *Gress v. Freedom Mortg. Corp.*, No. 1:19-cv-375, 2019 WL2612733, at *6–*7 (M.D. Pa. June, 26, 2019); *Hicks v. Rous. Baptist Univ.*, 17-cv-629, 2019 WL 96219, at *5–*6 (E.D.N.C. Jan. 3, 2019). Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims. *Sanchez*, 297 F. Supp. 3d at 1366. The due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights. *Id.* at 1365–66 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)).

Another set of district courts holds the opposite: the same due process concerns that animated *Bristol-Myers Squibb* necessarily apply to nationwide class actions in federal courts. They hold there is no principled way to distinguish between the strictures of the Fourteenth Amendment Due Process

Case 3:24-cv-01866-JKM   Document 52-17   Filed 03/25/25   Page 4 of 7

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

Clause and the Fifth Amendment Due Process Clause. *See, e.g., Gazzillo v. Ply Gem Indus., Inc.*, 17-cv-1077, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874–75 (N.D. Ill. 2017); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 850–51 (N.D. Ohio 2018).

A third set of district courts opts to defer this issue until class certification: since unnamed plaintiffs are merely *potential* class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims. *See Suarez*, 2019 WL 1046662, at *6 (citing *Gonzalez v. Costco Wholesale Corp.*, 16-cv-2590, 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018)); *Chernus v. Logitech, Inc.*, No. 17-cv-673, 2018 WL 1981481, at *7–*8 (D.N.J. Apr. 27, 2018); *see also Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337 (E.D.N.Y. 2018) (citing the "unsettled nature of the law following *Bristol-Myers*" as another reason to defer on personal jurisdiction).

### 4. The Court Defers This Question Until Class Certification

Orangetheory "believes that it would be preferable to make this argument at the time that Plaintiff moves to certify a class." (Def. MTD Br. at 4 n.2.) Orangetheory represents that it made its motion now only to preserve the issue of personal jurisdiction, which is waived if not raised in a responsive pleading or motion to dismiss. (*Id.*; *see also* Reply in Supp. of Def.'s Mot. to Dismiss Pl.'s Class Action Compl., Dkt. No. 38 ("Def. MTD Reply") at 2.)

*5 The Court agrees that it is appropriate to defer questions regarding the class claims until class certification. *See Campbell*, 322 F. Supp. 3d at 337; *Gonzalez*, 2018 WL 4783962, at *8. "[I]n contrast to *Bristol-Meyers*, there are no actual 'non-forum state plaintiffs' or putative class members to speak of yet in this case, making Defendants' motion to dismiss or strike patently premature." *Bank v. CreditGuard of Am.*, No. 18-cv-1311, 2019 WL 1316966, at *12 (E.D.N.Y. Mar. 22, 2019). The Court will consider this issue when and if Plaintiff moves for class certification. The Court notes that the issue is preserved.

### B. Defendant's Motion to Dismiss Count 1 (Negligent Violation of the TCPA) and Count 2 (Knowing or Willful Violation of the TCPA) for Failure to State a Claim under Rule 12(b)(6) Is Denied

#### 1. Applicable Legal Standard

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation omitted), The claims will survive the motion to dismiss as long as they contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must do more, however, than merely attach "labels and conclusions" to bald factual assertions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### 2. The Telephone Consumer Protection Act (TCPA)

Congress enacted the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA") to hold telemarketers accountable for spamming customers with intrusive nuisance calls. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012). The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any *automatic telephone dialing system* ... to any telephone number assigned to a ... cellular telephone service ... unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]" 47 U.S.C. § 227(b)(1)(a)(iii) (emphasis added).

The TCPA defines an "automatic telephone dialing system," or "ATDS," as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

The definition of an "automatic telephone dialing system"— and the attendant concept of "capacity"—are central to the statute.

Case 3:24-cv-01866-JKM   Document 52-17   Filed 03/25/25   Page 5 of 7
Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

"The FCC has the authority to promulgate regulations implementing the TCPA." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 474 (2d Cir. 2018) (citing 47 U.S.C. § 227(b)(2)). "In 2015, the FCC issued a Declaratory Ruling and Order that, among other things, attempted to clarify the TCPA's requirement that, to qualify as an autodialer under the statute, a device must have the 'capacity' to dial random and sequential numbers." *Id.* (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973–74 (2015) (the "2015 Ruling")). "The Commission asserted that an expansive interpretation of the term 'capacity' was consistent with both Congress's intent that the TCPA have a broad protective reach, and with the Commission's previous orders. Accordingly, the FCC 'declined to define a device's "capacity" in a manner confined to its "present capacity." Instead, the agency construed a device's "capacity" to encompass its "potential functionalities" with modifications such as software changes.' " *Id.* (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 693–94 (D.C. Cir. 2018) (in turn quoting 2015 Ruling)).

*6  In 2018, the 2015 Ruling was struck down by the D.C. Circuit in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The D.C. Circuit held that, per the text of the statute, the ATDS' *present* functions must include the ability to generate random or sequential numbers, even if that function was turned off when the system sent the offending calls or text messages in question. *Id.* at 699.

After the D.C. Circuit vacated the 2015 Ruling, the FCC sought public comment on the meaning of "capacity" under the TCPA's definition of an autodialer. *See Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 83 Fed. Reg. 26,284 (June 6, 2018). The notice stated that the agency would take comments until October 24, 2018. The FCC has taken no further action.

In the meantime, on June 29, 2018, the Second Circuit published a decision adopting the definition of "capacity" articulated by the D.C. Circuit in *ACA International*:

> In sum, we conclude that the term "capacity" in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software. That definition does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed, but does include devices whose auto dialing features can be activated, as the D.C. Circuit suggested, by the equivalent of "the simple flipping of a switch."

*King*, 894 F.3d at 481 (citing *ACA Int'l*, 885 F.3d at 696).

At present—in the absence of any valid agency rule interpreting "capacity"—the Second Circuit's decision in *King* is binding on this Court.

**3. Simon Has Plausibly Plead that Orangetheory Used an ATDS**

To state either a negligent violation or willful violation claim under the TCPA, a plaintiff must allege the following basic elements: "(1) [a defendant] called her on her cell phone; (2) using an automated dialing system or pre-recorded voice; (3) without her consent." *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015), *rev'd on other grounds*, 894 F.3d 473 (2d Cir. 2018); *see also Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 474 (S.D.N.Y. 2018).

The parties agree that Simon has pleaded the first and third elements. Simon alleges that she received text messages from Defendant on multiple occasions between May and June 2018. (Compl. ¶ 9.) Since a text message is the same as a "call" under the TCPA, Simon has shown the first element of her claim. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666–67 (2016). In addition, Simon also alleges that she has never been a customer of Defendant's and that she has never given Defendant her cell phone number. (Compl. ¶ 14.) This allows the Court to draw a direct inference that Defendant never received Simon's "prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii).

Defendant instead moves to dismiss both TCPA claims (Counts 1 and 2) on the ground that Simon has not plausibly plead enough facts suggesting the use of an ATDS.

I find that she has.

Courts find that the use of a "short code telephone number" plausibly indicates that the Defendant used an ATDS. *Rotberg*, 345 F. Supp. 3d at 476–77; *see also Krady v. Eleven Salon Spa*, No. 16-cv-5999, 2017 WL 6541443, at *4 (E.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 6542462 (E.D.N.Y. Dec. 21, 2017) (collecting cases on short codes and other indicia of ATDS).

Case 3:24-cv-01866-JKM    Document 52-17    Filed 03/25/25    Page 6 of 7

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

In addition, courts have found that if the texts are of an "impersonal, generic nature," they plausibly indicate the use of an ATDS. See *Krady*, 2017 WL 6541443, at *4; see also *Unchageri v. YuppTV USA, Inc.*, No. 17-CV-3862, 2018 WL 1184737, at *3 (N.D. Ill. Mar. 7, 2018).

**\*7** Here, Simon asserts that she received the text message via "Defendant's SMS blasting platform," which plausibly alleges that the text messages were sent widely and to multiple numbers. (Compl. ¶ 10.) Although Simon does not allege the specific contents of the text messages, she alleges Defendant sent her "spam advertisements and/or promotional offers"—which plausibly suggest impersonal, generic messages. Most persuasively, Simon claims to have received several unsolicited text messages over a period of two months from a variety of numbers, including the short code text number "797-979," which, as other courts have held, is plausible indicia of an ATDS. (*Id.* ¶ 9.) At this stage, Plaintiff has done all she must to plead this element of her claim.

Defendant's motion to dismiss Counts 1 and 2 of the Complaint for failure to state a claim under Rule 12(b)(6) is, therefore, DENIED.

### C. Defendant's Motion to Stay Is Denied

Defendant has filed a separate motion asking the Court stay the case until the FCC promulgates a new final rule, or issues a new declaratory ruling, defining "autodialer" and "capacity." Defendant identifies two grounds for such a stay: *first*, the Court's inherent power to issue stays to control its docket, and, *second*, the Court's authority to issue a stay under the doctrine of primary jurisdiction.

For the following reasons, Orangetheory's motion is denied without prejudice to renewal at a later stage of the litigation.

### 1. Defendant Has Not Shown It Is Entitled to a Stay

In deciding whether to grant a stay under its inherent powers, the Court must consider: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Defendant fails to make the required showing on any of these factors. Orangetheory has not made *any* showing—let alone a strong one—that any ruling by the FCC would likely exclude the device used by Orangetheory to spam Simon, so as to enable it to succeed on the merits. In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury.

Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.

Finally, Orangetheory argues that the public interest favors issuing a stay, because of the "risk of disparate interpretations of the TCPA in the absence of clear guidance from the FCC." (Mem. of Law in Supp. of Def.'s Mot. to Stay, Dkt. No. 35 ("Def. Stay Br.") at 15.) However, the Second Circuit's interpretation of "capacity" in *King*, according to Orangetheory, is in line with nearly all other circuits that have reached the issue. (*See id.* at 12–14.) The risk seems small. If and when the FCC rules, we will deal with it.

### 2. The Primary Jurisdiction Doctrine Does Not Mandate a Stay

Defendant also argues that the abstention doctrine of primary jurisdiction requires staying the case.

"The doctrine of primary jurisdiction allows a federal court to refer" or stay "a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222–23 (2d Cir. 1995). In the Second Circuit, the "inquiry has generally focused on four factors:

> **\*8** (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

Case 3:24-cv-01866-JKM    Document 52-17    Filed 03/25/25    Page 7 of 7

Simon v. Ultimate Fitness Group, LLC, Not Reported in Fed. Supp. (2019)
2019 WL 4382204

(2) whether the question at issue is particularly within the agency's discretion;

(3) whether there exists a substantial danger of inconsistent rulings; and

(4) whether a prior application to the agency has been made.

*Ellis v. Tribune Television Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006). Courts "must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 83 (internal quotation omitted).

Defendant argues that "the FCC is currently considering the precise questions at issue here," because, in its June 2018 request for comments, it asked the following questions: "What constitutes an [ATDS]? How "automatic" must dialing be for equipment to qualify as an [ATDS]? Must such a system dial numbers without human intervention? If equipment cannot itself dial random or sequential numbers, can that equipment be an [ATDS]?" (Def. Stay Br. at 3.)

Putting aside for the moment that agency requests for comment are often broader than the scope of the final rule, the takeaway from Defendant's brief is that degree of human interaction with the purported autodialer lies at the heart of this lawsuit. But neither Simon nor this Court knows anything about the system that was allegedly used to send text messages on behalf of Orangetheory. The Court certainly does not know if "human intervention" is what will tip the scales in favor of either plaintiff or defendant, and therefore whether this case is susceptible of resolution by the FCC's rulemaking —if that is even what the FCC intends to do. *See Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531 (E.D. Mo. 2018) ("[T]he FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue" of what constitutes "capacity."). Put differently, "a stay is not prudent at this time because, at a minimum, discovery of the nature of [Defendant's] calling system and [Defendant's] contacts with Plaintiffs is required before any definitive legal standard under the TCPA can be applied to [Defendant's] conduct herein." *Somogyi v. Freedom Mortg. Corp.*, No. 17-cv-6546, 2018 WL 3656158, at *1 (D.N.J. Aug. 2, 2018).

Finally, even if Orangetheory had identified the specific question at issue and the Court were convinced that the FCC was taking action would resolve it—I am not—delay and prejudice would still justify denying the motion. It is well known that, "If the FCC does proceed with a formal rulemaking, such a process will likely take years[.]" *Gould*, 326 F.R.D. at 532. Further, any final rule promulgated by the FCC would almost certainly be subject to a pre-enforcement challenge—and would likely be stayed pending the resolution of that challenge, which could also take years. In the meantime, it is clear that critical evidence, including records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

That said, it is possible that the regulatory landscape will have changed significantly once discovery concludes. Therefore, while the Court denies Orangetheory's motion to stay the case now, that ruling is without prejudice to Orangetheory's renewal of its motion, if and when: (1) the issues for trial are narrowed; (2) the scope and timeline of the FCC's action becomes clearer; and (3) a stay would not pose irreparable harm to Plaintiff and the putative class.

### IV. Conclusion

*9 For the aforementioned reasons, Defendant's motion to dismiss for lack of personal jurisdiction is denied; the motion to dismiss for failure to state a claim is denied; and the motion to stay is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 31 and 34.

This constitutes the written decision and order of the Court.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4382204

---

**End of Document**                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.