**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOSEPH FRIEL, individually and on
behalf of a class of all persons and
entities similarly situated,

       Plaintiff

vs.

LINE 5, LLC, HEADSTART
WARRANTY GROUP LLC and JEA
MANAGEMENT SERVICES d/b/a
COVERED AUTO

       Defendants.

Case No. 3:24-cv-1866

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO STRIKE</u>**

# I.    Contents

I.    Contents ......................................................................................................- 1 -

II.    TABLE OF AUTHORITIES .....................................................................- 1 -

III.    INTRODUCTION ....................................................................................- 3 -

IV.    BACKGROUND ......................................................................................- 3 -

V.    STATEMENT OF QUESTIONS INVOLVED...........................................- 5 -

VI.    LEGAL STANDARD ...............................................................................- 5 -

VII.    DEFENDANT'S MOTION TO STRIKE FAILS ......................................- 5 -

   A.    Striking class allegations without discovery is premature. ........................- 5 -

   B.    The Plaintiff's class claims must not be struck because the Plaintiff does not
plead an overly broad class.............................................................................- 11 -

   C.    For nearly identical reasons, there exist common questions of law or fact
applicable to the class. ...................................................................................- 18 -

   D.    Nothing about the phrase "same or substantially similar" in the Robocall
Class is vague. ...............................................................................................- 21 -

VIII.    CONCLUSION.....................................................................................- 22 -

# II.    TABLE OF AUTHORITIES

**Cases**

*Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL
4007345 (N.D.N.Y. Aug. 30, 2024) ..................................................... - 8 -, - 19 -

*Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417(M.D. Pa. 2012)...............- 15 -

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019).- 8 -

*Browning v. Anheuser-Busch*, LLC, 539 F. Supp. 3d 965 (W.D. Mo. 2021) ....- 22 -

*Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022
WL 17732717 (W.D. Tex. Oct. 18, 2022) ......................................................- 18 -

*D.G. v. William W. Siegel & Assocs.*, 791 F. Supp. 2d 622 (N.D. Ill. 2011) .....- 17 -

*Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555 (M.D. Tenn. 2020).........- 5 -

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) .............................- 6 -

*Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598 (9th Cir. 2011)............- 22 -

*Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at
*5 (N.D. Ala. Aug. 23, 2018) ...........................................................................- 6 -

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449
(M.D. Pa. Jan. 17, 2024)..................................................................... - 11 -, - 12 -

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.*, No. 4:22-CV-01659, 2023
   WL 2472606 (M.D. Pa. Mar. 10, 2023) ..................................... - 9 -, - 11 -, - 12 -
*Johnson v. Ally Fin. Inc.*, No. 1:16-CV-1100, 2017 WL 3433689 (M.D. Pa. Aug.
   10, 2017) ............................................................................................- 12 -
*Johnson v. Comodo Grp., Inc.*, No. CV164469SDWLDW, 2020 WL 525898
   (D.N.J. Jan. 31, 2020) ........................................................................- 9 -
*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185 (D.
   Colo. Nov. 14, 2023) ...................................................................... - 17 -, - 20 -
*Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72 (3d Cir. 2011) ..- 6 -
*Lizama v. Venus Labs., Inc.,* 679 F. Supp. 3d 848 (E.D. Mo. 2023) ..................- 21 -
*Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601
   (D.N.J. June 30, 2017) ......................................................................- 13 -
*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)..........- 8 -
*Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220 (S.D. Cal. 2014) .....- 17 -
*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8
   (N.D. Cal. June 15, 2015) ...................................................................- 7 -
*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022
   WL 2713278 (N.D. Iowa June 9, 2022) .................................. - 17 -, - 18 -, - 20 -
*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). - 12
   -
*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014
   WL 6750690 (N.D. Ohio Dec. 1, 2014) ...............................................- 20 -
*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122,
   2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014).....................................- 7 -
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .........................................- 19 -
*Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014).......................- 13 -
*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022
   WL 4586407 (S.D.N.Y. Sept. 29, 2022) .................................. - 14 -, - 17 -, - 20 -
*Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004)...................................- 6 -

## Statutes

44 U.S.C. § 3501 ................................................................................- 16 -
47 C.F.R. § 64.1200(c)........................................................................- 16 -
FED. R. CIV. P. 23 ................................................................................- 19 -

## III.    INTRODUCTION

Defendant Line 5 LLC's motion to strike class allegations, premised on former Defendant JEA Management Services' motion, must be denied because, as confirmed by multiple other cases, including this Court, the mere possibility of the affirmative defense of consent is insufficient to justify striking class claims at the pleadings stage and by no means renders it overly broad. The class pled here, alleging illegal calling conduct arising out of an illegal calling campaign, is the touchstone of cases routinely certified, and upheld, by courts across the country. Multiple courts have also rejected Defendant's other ancillary arguments. Defendant's motion should therefore be denied in its entirety.

## IV.    BACKGROUND

This is a straightforward case. Mr. Friel has brought this action under the TCPA alleging that the Defendants sent or benefited from pre-recorded telemarketing regarding Headstart Warranty Group LLC and Line 5, LLC's goods services, including to calls that were on the National Do Not Call Registry. *See* ECF No. 1 at ¶5. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls. *Id.* at ¶6.

Defendant Headstart Warranty Group LLC is a seller and guarantor of vehicle service contracts. Upon information and belief, Headstart is the guarantor of the vehicle service contracts and is the entity that will purportedly pay a covered repair under the contract. *Id.* at ¶14. Defendant Line 5 handles the customer management, payment processing, and also provides financing for the service contracts sold by JEA and guaranteed by Headstart. *Id.* at ¶ 15. Plaintiff has never been a customer of any of the Defendants nor asked or inquired to be a customer of any of the Defendants. *Id.* at ¶ 20. Despite that, the Plaintiff received many telemarketing calls from robots promoting the Defendants' services. *Id.* at ¶ 21-31. As a result, the Plaintiff is pursuing the following putative classes:

> **<u>Robocall Class:</u>** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of JEA Management Services d/b/a Covered Auto, Headstart Warranty Group LLC, or Line 5, LLC, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

> **<u>National Do Not Call Registry Class:</u>** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

*Id.* at ¶73.

## V.    STATEMENT OF QUESTIONS INVOLVED

1. Should the Plaintiff's Class Allegations be stricken prior to any discovery?

Suggested Answer: No.

## VI.    LEGAL STANDARD

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV. P. 12(f), (f)(2). However, the 12(f) device is used rarely and is particularly disfavoured, applying, by its very definition, to "redundant, immaterial, impertinent, or scandalous matter." Indeed, counsel for the Plaintiff has identified only a handful of cases addressing the 12(f) device in the context of striking class allegations in this District and Circuit. The standard adopted in these cases is, as Defendant concedes, akin to that under Rule 12(b)(6), permitting striking class allegations only in cases where court is convinced that "any questions of law are clear and not in dispute" and that "no set of circumstances" put forth at the pleadings stage would permit a class to be certified on the basis set forth in the complaint. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575–76 (M.D. Tenn. 2020) (collecting cases).

## VII.    DEFENDANT'S MOTION TO STRIKE FAILS

### A.    Striking class allegations without discovery is premature.

- 5 -

Significantly, because "the TCPA is 'a consumer protection statute which is remedial in nature,' this Court must interpret the statute broadly" and certainly not allow it to be turned on its head and weaponized against consumers." *Heard v. Nationstar Mortg. LLC*, No. 16-cv-00694- MHH, 2018 WL 4028116, at *5 (N.D. Ala. Aug. 23, 2018).[1] Indeed, the Third Circuit has held, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

The Third Circuit counsels against striking class allegations if discovery may reveal a certifiable class. *See Landsman & Funk PC v. Skinder-Strauss Assocs.,* 640 F.3d 72, 93-94 (3d Cir. 2011) (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347-48 & n.17 (3d Cir. 2004)). The Third Circuit has nevertheless noted that there are a "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Id.* at 93 n.30.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal.

---

[1] A copy of this unpublished decision is attached herein as Exhibit 1.

June 15, 2015) (internal annotations omitted).[2]  Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Which Defendant made which pre-recorded calls?

- Which Defendant made which calls to numbers on the National Do Not Call Registry?

- Were those numbers called 2 or more times in a 12 month period?

- Were those numbers "residential"?

- Does either Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Defendant claims that the issue of whether or not it had consent to contact people will create individualized issues. But, "[c]ourts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc*., No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014)[3] (ultimately finding plaintiff in a TCPA case improperly pled a fail-safe

---

[2] A copy of this unpublished decision is attached herein as Exhibit 2.
[3] A copy of this unpublished decision is attached herein as Exhibit 3.

class, but granting plaintiff leave to amend its pleadings to remove reference to consent, which is not included here). In essence, Defendant asks this Court to hold as a matter of law that a TCPA class in which there is even the *possibility* of consent is not ascertainable. As the Fourth Circuit recently explained, that is not the law:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer v. Dish Network, LLC*, 925 F.3d at 656 (2019) (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have *certified* numerous class actions based on violations of the TCPA, including where discovery developed that there were uniform legal issues surrounding proffered consent evidence. *See, e.g.*, *Aley v. Lightfire Partners, LLC*, No. 5:22-CV-00330 (AMN/TWD), 2024 WL 4007345, at *3 (N.D.N.Y. Aug. 30, 2024) (certifying class on common legal issues of consent)[4]; *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012). And identifying class members in a TCPA case is simply a matter of expert work, as other Courts in this Circuit have

---

[4] A copy of this unpublished decision is attached herein as Exhibit 4.

found when *certifying* similar TCPA cases. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*, No. CV164469SDWLDW, 2020 WL 525898, at *11 (D.N.J. Jan. 31, 2020).[5]

In rejecting a similar argument previously in a TCPA case, *this very Cour*t rejected an identical argument over the essentially same class definition proposed here in *Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.*, No. 4:22-CV-01659, 2023 WL 2472606, at *4 (M.D. Pa. Mar. 10, 2023) (cleaned up)[6]:

> Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc.* There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."
>
> Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class." But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element

---

[5] A copy of this unpublished decision is attached herein as Exhibit 5.
[6] A copy of this unpublished decision is attached herein as Exhibit 6.

for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead on the defendant's "internal records that detail whether it received consent to text certain phone numbers."

Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations [with substantially similar language to here]. Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…

Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

Indeed, Mr. Jackson utilized a similar definition in *Meadowbrook* as Plaintiff does here:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.

- 10 -

*See* 4:22-CV-01659 (E.D. Pa.), ECF No. 1 *compared with*:

> **National Do Not Call Registry Class:** All persons within the United
> States: (1) whose residential telephone numbers were on the National
> Do Not Call Registry for at least 31 days; (2) but who received more
> than one telephone solicitation call from Defendants or a third party
> acting on Defendants' behalf; (3) within a 12-month period; (4) within
> the four years prior to the filing of the Complaint.

ECF No. 30 at p. 8. This Court should hold the same way that that it did
in *Meadowbrook* and deny the motion here, just as it did in *Jackson v. Direct
Building Supplies*, also cited by the Defendant. There, this Court again
summarily reached a similar conclusion, holding that, "minimal analysis is
required . . . Jackson has avoided the fail-safe concerns posed by [*Zarichny*]
by defining his class without reference to whether the class members first
consented to be called." *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-
01569, 2024 WL 184449, at *9 (M.D. Pa. Jan. 17, 2024)[7].

## B. The Plaintiff's class claims must not be struck because the Plaintiff does not plead an overly broad class.

Defendant advances three main arguments for why it contends that the
proposed classes are overly broad. In essence, Defendant's entire argument sounds
in ascertainability. First, the defendant claims that the both classes are overly broad
because it claims that some class members may have consented. Second, JEA

---

[7] A copy of this unpublished decision is attached herein as Exhibit 7.

argued that both classes do not distinguish its conduct from the other Defendants. Finally, Defendant argues that the Do Not Call Registry class is overly broad because it contends that it includes individuals who did not *personally* register their number on the National Do Not Call Registry. Each of these arguments fail and do not show that the class is overly broad, particularly because "the ascertainability analysis is exceedingly narrow and wholly distinct from other class certification requirements." *Johnson v. Ally Fin. Inc.*, No. 1:16-CV-1100, 2017 WL 3433689, at \*3 (M.D. Pa. Aug. 10, 2017)[8].  "The requirement demands only that courts be able to identify putative class members; it does not require exacting precision and the ability to find *all* class members at the moment of class certification," much less pre-discovery. *Id.*

Start with purported consent. Numerous decisions and holdings of *this very Court*, including *Meadowbrook*, *Direct Building*, and *Ally*, have held that, when a class is pled, as here, to not include any language regarding consent, the class is not fail-safe. *Accord Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). Here, the Plaintiff avoided that potentially fatal flaw in drafting a fail-safe class by not including consent language in his class definition. That renders the authorities cited by the Defendant here distinguishable, as the *lack of*

---

[8] A copy of this unpublished decision is attached herein as Exhibit 8.

*consent* was pled *as part of the class definition*, unlike here. In other words, the cases cited by the Defendant all had class allegations struck at the pleadings stage for precisely that reason: the class definition included some variation of the language that required each class member have not provided their consent.

The *Brown*, *TD Bank*, and *Warnick* cases cited by the Defendant on this point are thus distinguishable. *Brown*, as mentioned above, pled consent as part of the class definition. In *TD Bank*, the case revolved around issues of what individuals may have called to *revoke* consent and whether or not each consumer's method of revocation was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *5 (D.N.J. June 30, 2017)[9]. In *TD Bank*, the plaintiff also happened to adopt a flawed class definition predicated on whether the defendant had the plaintiff's "prior express consent." *Id.* at *12.

Similarly, in *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014)[10], the court held that a proposed class was unascertainable based on a twice-revised class definition that had started out pleading a revocation of consent and ended with an internal list of anomalies called a "TCPA Tracker." As such, whether each class member was appropriately listed as an "anomaly" in the Defendant's records was similarly an individualized question. *See id.* at 557–58. In

---

[9] A copy of this unpublished decision is attached herein as Exhibit 9.
[10] A copy of this unpublished decision is attached herein as Exhibit 10.

sum, the issues of consent in this case, if there are any, will be easily ascertained and resolved on a classwide basis long before class certification, including on non-individualized, purely legal grounds developed through discovery.

And JEA's motion also claimed that JEA had an existing business relationship with some class members. Line 5 has not made such argument, which is itself a red herring that is premature and is more appropriately suited to class certification based on a review of each Defendant's own records to ascertain whether there is an existing business relationship. In fact, when the Defendant has not met its burden of demonstrating consent applicable to the class, a class is properly *certified*, not stricken. *See, e.g*, *Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022)[11]. As such, any arguments premised on an existing business relationship, just as the consent defense, should fail. In any event, given that no consent defense has been put forth, let alone any evidence to analyse whether such problems exist, it would be premature to strike the class allegations at the pleadings stage on this basis.

Second, JEA contended that the class is overly broad because the class includes calls made by or on behalf of every defendant and impermissibly lumps them together. As an initial matter, this does not pose a problem for Line 5 here, as

---

[11] A copy of this unpublished decision is attached herein as Exhibit 11.

the Plaintiff has pled in his complaint the existence of distinguishable calls placed by Line 5. That does not render the class here unascertainable because, just like the issues of consent, the issues of what Defendant placed what call will be easily ascertained long before trial based on the Defendant's own books and records. To that end, JEA's owner has submitted an affidavit, attached herein as Exhibit A, outlining the circumstances of the calls and the distinction between the conduct of the players here. And, even so, there is no reason why the Plaintiff cannot simply amend, either now or at class certification, to plead distinct subclasses based on different courses of conduct, including as revealed through discovery. *See Attanasio v. Cmty. Health Sys.*, 863 F. Supp. 2d 417, 419 (M.D. Pa. 2012) (permitting amendment to address various employers' and labor law violations in subclasses).

Third and finally, the National Do Not Call Registry Class is not overly broad because the registry does not require personal registration. The possibility that some class members may not have personally registered their numbers on the National Do Not Call Registry does not render the class at all unascertainable or overly broad.

As an initial matter, the TCPA cannot require that an individual later seeking to sue under the Do Not Call Registry provisions of the TCPA needs to *personally register* their number on the Do Not Call Registry because that fact would be

*impossible to prove*, as the FTC is neither authorized to nor collects such

information. This is because the Paperwork Reduction Act of 1995, 44 U.S.C. §

3501, applies to the collection of an individual's phone number for inclusion on the

Do Not Call Registry. And the FCC's and FTC's PRA notices for registration on

the Do Not Call Registry do not permit the collection of personally identifiable

information so as to establish whether an individual personally registered their

number on the Registry. *See generally OMB Control Nos.* 3060-0519 and 3084-

0169. Registering a telephone number on the Registry does not require the

provision of any personally identifiable information, and requiring such

information would defeat the purposes of registration, consumer privacy, as an

initial matter. Thus, as an initial matter, the government is *not even authorized* to

collect the information the Defendant claims the Plaintiff is required to prove as a

legal matter. It follows that proving such information cannot be an element of a

TCPA claim.

      Relying on *Rombough*, the Defendant misstates the applicable law. The

FCC's regulations permit a "residential telephone subscriber" to register "his or her

telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone

number is registered on the Registry, the "registrations must be honored

indefinitely, or until the registration is cancelled by the consumer of the telephone

number is removed by the database administrator." *Id*. Previously, such

registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry.

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023)[12] (cited by Defendant but a case which supports Plaintiff in that the court refused to strike class allegations regarding personal registration and reformulating class definition); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual

---

[12] A copy of this unpublished decision is attached herein as Exhibit 12.

whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts.").

*Rombough* has been rejected by a multitude of courts, most notably in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022)[13], where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). As a result, there is no requirement that an individual personally register their number on the Do Not Call Registry and this Court need not even consider the issue when determining whether to strike the class allegations at the pleadings stage.

## C.    For nearly identical reasons, there exist common questions of law or fact applicable to the class.

Neither the consent issue nor the registration issue defeat commonality, either, as the Defendant claims, for much the same reasons above. Courts routinely

---

[13] A copy of this unpublished decision is attached herein as Exhibit 13.

certify TCPA class actions of this sort, including class actions where there are disputed issues of consent. The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case will satisfy this requirement.

Although consent *might* become an issue in this class action, such contentions do not require an *individualized* inquiry, and the class claims can all be resolved in one stroke. The fact of consent, together with its legal effectiveness, are issues capable of classwide resolution since consent under the TCPA must meet certain requirements, as both this Court and others have recognized. For starters, if the legal requirements for consent are not satisfied, for example by using legally insufficient language on a website used to obtain consent, every class member would not have provided legally sufficient consent and consent becomes a nonissue. *See, e.g.*, *Aley*, 2024 WL 4007345, at *3.

Similarly, even factual circumstances surrounding the obtained consent are subject to classwide adjudication. Because all the telephone calls here originated from the same place, the success and legal sufficiency of the affirmative defense of consent is necessarily a common question with common answers. TCPA cases are routinely certified as common, even when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases)[14]. Indeed, as described above, the Defendant's own internal books and records will be used by the Court or jury to craft a uniform, objective answer to a common question: did any class member provide their telephone number to the Defendant, as reflected in the Defendant's own records? If yes, they are out of the class; if no, they are in the class.

Nor does the registration issue at all render the class uncommon. As noted above, at least one district court has *certified* a class action where the defendant made the same argument as in *Rombough*. *Watson*, 2022 WL 4586407, at *9. But even if this Court were to consider *Rombough's* flawed reasoning, that poses no barrier to commonality. Just as the Court did in *Klassen*, 2023 WL 7544185, it can always revise the class definition to include consumers who placed their number

---

[14] A copy of this unpublished decision is attached herein as Exhibit 14.

on the Do Not Call Registry and have a class administrator inquire of each class member as to their answer to this question.

**D.    Nothing about the phrase "same or substantially similar" in the Robocall Class is vague.**

The Plaintiff's Robocall class definition seeks to represent, "All persons in the United States who…received one or more calls on their cellular telephone…(4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff." There is nothing vague or confusing about that "same, or substantially similar" phrase to encourage the extreme remedy of striking the class allegations prior to any discovery. Indeed, the Plaintiff posits that the Defendant's argument would have not even been made if he had simply used the phrase "the same". However, where would that distinction end? What if the Defendants used a different voice actor to send a message on a different day? What if they used the same voice actor but had different words in the message? The possibilities are endless, but by the same token the Plaintiff did not want to allege that *any* recorded message of *any* type for *any* reason would be subject to discovery and his class definition, for that would likely garner similar objection. As such, he used the phrase he did.

In the non-TCPA context other courts have refused to strike class allegations using similar language. *See, e.g., Lizama v. Venus Labs., Inc.,* 679 F. Supp. 3d 848, 858 (E.D. Mo. 2023) ("The 'overarching question' for standing is whether the named plaintiff's injury is **substantially similar** to 'the claims of those [he] seeks

- 21 -

to represent.' (quoting *Browning v. Anheuser-Busch*, LLC, 539 F. Supp. 3d 965, 977 (W.D. Mo. 2021)) (emphasis added). Indeed, "[t]he TCPA prohibits persons from (1) making 'any call,' (2) 'using . . . an artificial or prerecorded voice,' (3) 'to any telephone number assigned to a . . . cellular telephone service. . . .'" *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 (9th Cir. 2011) (internal citation omitted). As such, despite the fact that the Plaintiff would have commonality with all calls made "using an artificial or prerecorded voice," he still limited his class, prior to any discovery, to calls that presumably had the same factual predicate for being sent, as he only intends to pursue similar types of pre-recorded calls, e.g., sales calls.

Defendant's motion on this basis ought be denied as well.

## VIII.  CONCLUSION

For all of the foregoing reasons, Defendant's motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this March 25, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
M.D. Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305

- 22 -

a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this March 25, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,995 words.

DATED this March 25, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.