Case 3:24-cv-01866-JKM    Document 53-3    Filed 03/25/25    Page 1 of 7
Sauter v. CVS Pharmacy, Inc., Not Reported in F.Supp.3d (2014)
2014 WL 1814076

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by Etzel v. Hooters of America, LLC, N.D.Ga., November 15, 2016

2014 WL 1814076
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Eastern Division.

Chris SAUTER, Plaintiff,

v.

CVS PHARMACY, INC., Defendant.

No. 2:13–cv–846.
|
Signed May 7, 2014.

**Attorneys and Law Firms**

Brian K. Murphy, Geoffrey J. Moul, Jennifer A. Hemenway, Joseph F. Murray, Murray Murphy Moul & Basil, LLP, Columbus, OH, for Plaintiff.

Joseph C. Pickens, Taft Stettinius & Hollister LLP, Columbus, OH, Michael D. Leffel, Madison, WI, Robert H. Griffith, Foley & Lardner LLP, Chicago, IL, Stephen H. Jett, Taft, Stettinius & Hollister, Cleveland, OH, for Defendant.

*OPINION AND ORDER*

JAMES L. GRAHAM, District Judge.

**\*1** The Plaintiff brings this putative class action against the Defendant for alleged violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. This matter is before the Court on the Defendant's Motion to Strike Plaintiff's Class Allegations (doc. 23) filed on February 3, 2014. For the reasons that follow, the Court will GRANT the Defendant's Motion to Strike (doc. 23). The Court will GRANT the Plaintiff 14 days in which to file an amended complaint.

**I. Background**

The following allegations are taken from the Plaintiff's Complaint:

The Plaintiff is a resident of Columbus, Ohio. First Am. Compl. at ¶ 1, doc. 16–1. The Defendant, CVS Pharmacy, Inc., is a national pharmacy chain that sells prescription drugs among other products. *Id.* at ¶ 15. In order to meet internal sales quotas, CVS enrolls individuals in a program that automatically refills their prescriptions without obtaining customers' consent. *Id.* at ¶¶ 16–17.

On March 28, 2013, the Plaintiff received a phone call from CVS (the First Call), which utilized an automatic telephone dialing system (ATDS) to call the Plaintiff's cell phone without the Plaintiff's consent. *Id.* at ¶ 22. Upon answering the phone, the Plaintiff heard a robotic voice delivering a prerecorded message. *Id.* at ¶ 23. The voice provided him with general information about a prescription refill and the location of his local CVS pharmacy. *Id.* Thousands of individuals have received similar messages. First Am. Compl. at ¶ 23. On at least four occasions after the First Call and prior to the filing of this lawsuit, the Defendant used an ATDS to make phone calls to the Plaintiff's cell phone without the Plaintiff's consent. *Id.* at ¶ 24. After the Plaintiff filed this lawsuit on August 28, 2013, the Defendant used an ATDS to make eight additional phone calls to the Plaintiff's cell phone without his consent. *Id.* at ¶¶ 25–27. These additional calls made by the Defendant utilized an automated prerecorded message, indicative of the use of an ATDS. *Id.* at ¶¶ 23–25, 27–29.

The Plaintiff did not provide his cellular telephone number to the Defendant and did not subscribe to any telemarketing service offered by the Defendant. *Id.* at ¶ 32. The Defendant "harvested" the Plaintiff's number from his physician when the Plaintiff filled his prescription at his local CVS pharmacy. *Id.* at ¶ 29. The Plaintiff never expressly consented to receive notifications from CVS on his cell phone. *Id.* at ¶¶ 33–36.

The Plaintiff alleges that the Defendant has repeatedly violated the TCPA over the past several years through its use of ATDS and prerecorded messages without the prior express consent of the recipients of those messages. *Id.* at ¶¶ 38–41. The Plaintiff seeks to represent a class comprised of "all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls" in the four years prior to the filing of the Plaintiff's Complaint in this case. *Id.* at ¶ 42. The Plaintiff also seeks to represent two additional subclasses. First, the Plaintiff proposes to represent a subclass of:

> **\*2** all persons within the United States who received a non-emergency telephone call on or after October 16, 2013 from CVS to a cellular telephone through the use of

an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express written consent for such calls ....

First Am. Compl. at ¶ 43. Second, the Plaintiff proposes to represent a subclass of:

all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who had expressly revoked any consent previously given to CVS for such calls, at any time within the four years prior to the filing of the instant Complaint.

*Id.* at 44.

The Plaintiff's Complaint includes three counts. Count I alleges that the Defendant negligently violated the TCPA through its use of an ATDS and/or prerecorded messages. *Id.* at ¶¶ 54–57. Count II alleges that the Defendant willfully or knowingly violated the TCPA through its use of an ATDS and/or prerecorded messages. *Id.* at ¶¶ 58–61. Count III requests injunctive relief to bar future TCPA violations on the part of the Defendant. *Id.* at ¶¶ 62–64.

The Defendant filed its Motion to Strike Class Allegations (doc. 23) on February 3, 2014. The Defendant's motion is fully briefed.

**II. Motions to Strike Class Allegations**

"Most courts recognize that a motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification." 1 McLaughlin on Class Actions § 3:4 (10th ed.2013) (collecting cases). Courts in the Sixth Circuit have permitted the use of motions to strike class allegations prior to discovery. *See, e.g., Pilgrim v. Universal Health Card,* LLC, 660 F.3d 943, 945 (6th Cir.2011) (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering"); *Loreto v. Procter & Gamble Co.,* No. 1:09–cv–815, 2013 WL 6055401, at *6 (S.D.Ohio Nov.15, 2013); *Rikos v. Procter & Gamble Co.,* No. 1:11–cv–226, 2012 WL 641946, at *7 (S.D.Ohio Feb.28, 2012); *Bearden v. Honeywell Intern., Inc.,* No. 3:09–01035, 2010 WL 1223936, at *9 (M.D.Tenn. Mar.24, 2010).

"[C]ourts should exercise caution when striking class action allegations based solely on the pleadings," *Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 56 (1st Cir.2013), because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal citations and quotations omitted). *See also Mazzola v. Roomster Corp.,* 849 F.Supp.2d 395, 410 (S.D.N.Y.2012) ("[A] motion to strike class actions ... is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification"). But "[a] court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Loreto,* 2013 WL 6055401, at *2 (citing *Pilgrim,* 660 F.3d at 949). *See also General Tel. Co. of Sw.,* 457 U.S. at 160 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question").

**III. Discussion**

*3 Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D),[1] the Defendant moves to strike or dismiss the Plaintiff's class allegations, arguing that the Plaintiff's proposed class and subclasses are impermissible "fail safe" classes. Def.'s Mot. to Strike at 2, doc. 23. According to the Defendant, the Plaintiff's proposed classes "are specifically defined such that whether a person qualifies as a member of the respective class depends upon whether the person ultimately has a valid claim under the TCPA as interpreted by Plaintiff." Def.'s Mot. to Strike Class Allegations at 6–7, doc. 23 (citing *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir.2012)). Each proposed class includes only those individual who did not provide prior express consent to the Defendant's alleged use of an ATDS to contact those individuals by phone. As a result, the Defendant contends that the class allegations are improper as a matter of law because the issue of consent would require individualized fact-finding, which is impermissible under Rule 23.

At the outset of his Response, the Plaintiff emphasizes that motions to strike class action allegations are rarely granted,

particularly prior to the Plaintiff being able to conduct discovery. Further, the Plaintiff observes, "nearly every court presented with a motion to strike TCPA class allegations prior to discovery has denied the motion, including where, as here, the class is not so narrow as to require the court to make individualized findings which would settle the dispute at hand." Pl.'s Resp. in Opp. at 3, doc. 24. The Plaintiff recognizes that fail-safe classes are impermissible, *id.* at 4, but maintains that the proposed class definitions do not require individualized determinations with respect to liability, *id.* at 5. Citing his Amended Complaint, the Plaintiff asserts that the Defendant maintains a list of individuals enrolled in its automatic prescription refill program and who subsequently receive phone calls made with an ATDS. *Id.* at 5. In the Plaintiff's view, this list would obviate the need for individualized determinations of consent. *Id.* Even if the Court finds that the Plaintiff's proposed classes are fail-safe, the Plaintiff argues that the appropriate remedy is for the Court to refine or correct the class definition, rather than strike those definitions. *Id.* at 6.

A. *Telephone Consumer Protection Act (TCPA)*
"In 1991, Congress enacted the TCPA 'to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ... machines and automatic dialers.' " *Charvat v. NMP, LLC,* 656 F.3d 440, 443 (6th Cir.2011) (quoting S.Rep. No. 102–178, at 1, *reprinted* in 1991 U.S.C.C.A.N.1968, 1968). Relevant here, the TCPA prohibits the:

> mak[ing][of] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service.

**\*4** 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA requires the Federal Communications Commission (FCC) to "prescribe regulations to implement the requirements of" subsection (b). *Id.* § 227(b) (2). "Private parties are authorized to seek injunctive relief and statutory damages for violations of these prohibitions." *Ashland Hosp. Corp. v. Serv. Emps. Intern. Union, Dist. 1199 WV/KY/OH,* 708 F.3d 741 (6th Cir.2013) (citing 47 U.S.C. § 227(b)(3)).

B. *Fail–Safe Classes*

Here, the Defendant argues that the Plaintiff's proposed classes are impermissible failsafe classes.

1. The Sixth Circuit And Fail–Safe Classes

"[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young,* 693 F.3d at 538 (citing *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011)). A "fail-safe" class "includes *only* those who are *entitled* to relief." *Young,* 693 F.3d at 538. "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment —either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman,* 646 F.3d at 352).

a. Randleman v. Fidelity Nat'l Title Ins. Co.
In *Randleman,* the Sixth Circuit affirmed the district court's order decertifying the plaintiffs' class action on the grounds that the proposed class definition included only those who were "entitled to relief," and was therefore an impermissible fail-safe class. The plaintiffs purchased a home in 2001 along with title insurance and a homeowner's policy. *Randleman,* 646 F.3d at 349. Three years later, in 2004, the plaintiffs refinanced their home. *Id.* At that time, the new mortgagee required the plaintiff to obtain a new title insurance policy. *Id.* The plaintiffs purchased the new title policy from the defendant but the defendant failed to give the plaintiffs the discounted "refinance" rate to which they were entitled. *Id.*

The plaintiffs subsequently filed a class action suit against the defendant. The district court initially certified a class of all persons who paid for title insurance issued by the defendant in connection with the refinancing of a residential mortgage loan and who "were entitled to receive the 'reissue' or 'refinance' rate for title insurance." *Id.* at 350. After extensive discovery, the district court reversed course, concluding that liability could only be determined on an individual basis after reviewing each homeowner's file. *Id.* Based on this conclusion, the district court held that the plaintiffs' proposed class failed to meet the commonality or typicality requirements under Rule 23. *Id.* at 350–51. Further, the district found that common issues did not predominate because of the required individualized determination of each homeowner's liability. *Randleman,* 646 F.3d at 351.

 *5 At the outset of its decision affirming the district court's decertification order, the court of appeals observed that the plaintiff's proposed class "was flawed in that it only included those who are 'entitled to relief.' " *Id.* at 352. As the court explained, "[t]his is an improper fail-safe class that shields the putative class members from receiving an adverse judgment" because "[e]ither the class members win, or by virtue of losing, they are not in the class, and, therefore, not bound by judgment." *Id.* (collecting cases). Significantly, before considering the predominance requirement, the court of appeals noted that the prohibition against fail-safe classes constituted an independent ground for denying class certification." *Id.*

b. Young v. Nationwide Mut. Ins. Co.
In contrast, in *Young,* the court of appeals rejected the defendants' argument that the plaintiffs' proposed class was invalid as a fail-safe class. The plaintiffs purchased insurance products from the defendants. *Young,* 693 F.3d at 535. Under Kentucky state law, local governments could impose a tax on insurers for the premiums they collected from the sale of specific insurance products. *Id.* Further, local governments could charge a "collection fee" to compensate for their expenses in collecting those taxes. *Id.* All of the defendants passed the cost of those taxes and collection fees onto their policyholders. *Id.*

According to the plaintiffs, the defendants charged them for the taxes on their premiums "when either the tax was not owed or the tax amount owed was less than the insurer billed." *Id.* The plaintiffs filed a class action alleging numerous violations of state law by the defendants. *Id.* Among other arguments before the district court, the defendants asserted that the plaintiffs' proposed class definition "would require the court to engage in impermissible individual determinations on the merits of the claims of each putative class member." *Young,* 693 F.3d at 535–36. The district court rejected this argument and subsequently certified ten subclasses, finding that they satisfied the Rule 23(a) and Rule 23(b) requirements. *Id.* at 536. The court defined the subclasses as "[a]ll persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by [Defendant insurer] during the Relevant Time Period ... and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." *Id.*

On appeal, the defendants challenged the certification of the class, arguing that the class definition created improper fail-safe classes. The court reviewed *Randelman's* discussion of failsafe classes, and, with limited explanation, concluded that the class definition at issue did not create a fail-safe class. *Id.* at 538. The court of appeals emphasized that "Plaintiffs' classes will include both those entitled to relief and those not," reasoning that "Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point." *Id.* Therefore, the court found that the plaintiff's class definitions were not fail-safe. *Id.*

2. Fail–Safe Classes under the TCPA

 *6 Courts have had limited occasion to consider fail-safe classes in the context of the TCPA. Those courts that have considered the issue have reached contradictory conclusions.

a. Wolfkiel v. Intersections Insurance Services Inc.
In *Wolfkiel v. Intersections Insurance Services Inc.,* the named plaintiffs filed a putative class action against a mortgage loan servicer (Ocwen) and company (Intersections Insurance Services) from which they received telemarketing calls, allegedly in violation of the TCPA. —— F.R.D. ——, 2014 WL 866979 (N.D.Ill. Mar.5, 2014). After the named plaintiff's[2] mortgage was transferred to a mortgage servicing company, Ocwen, he began to receive unsolicited marketing phone calls to his cell phone. *Id.* at *1. The plaintiff contacted the number from which he received calls, leading him to Ocwen. *Id.* The plaintiff inquired as to the reason for the phone calls, and the telemarketer explained that the purpose of the calls was to offer him Intersections' identify theft membership services. *Id.* The plaintiff informed the telemarketer that he was not interested in the service and that he did not wish to receive any more phone calls for those services. *Id.* Despite this request, plaintiff continued to receive similar telemarketing phone calls. *Id.* The named plaintiff subsequently filed suit against the defendants, asserting that he never consented to receiving telemarketing calls and that he should have not received any calls after he requested that they be stopped. *Wolfkiel,* 2014 WL 866979, at *1

The plaintiff filed suit and sought to represent two putative classes, including a "NoConsent Class" defined as:

> All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4)

promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services. *Id.,* at *3–4. The defendants alleged that No–Consent Class was fail-safe and, therefore, inherently flawed. *Id.* at *5. Citing Seventh Circuit case law and the Sixth Circuit's decision in *Young,* the district court concluded that it was "not yet persuaded that the No–Consent Class qualifie[d] as a fail-safe class ." *Id.* at *6. According to the court, it was not clear "that this class definition create[d] a situation where membership in the class [was] dependent upon the validity of a putative member's claim ." *Id.* "More importantly," the court concluded, "it [was] not a basis on which to strike Plaintiff's class allegations prior to the certification stage." *Id.* (citing Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 814 (7th Cir.2012) ("[the fail-safe problem] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis")).

b. Lindsay Transmission, LLC v. Office Depot, Inc.

**\*7** In contrast, the district court in *Lindsay Transmission, LLC v. Office Depot, Inc.* concluded that a similar proposed class definition in a TCPA fax case would create a fail-safe class. No. 4:12–CV–221, 2013 WL 275568 (E.D.Mo. Jan.24, 2013). The *Lindsay* plaintiff purportedly received three unsolicited advertisements by fax from the defendant. Thereafter, he filed a putative class action on behalf of himself and all similarly-situated individuals. *Id.* at * 1. Relying on the TCPA's prohibition against the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine," 47 U.S.C. § 227(b) (1)(C), the plaintiff sought to certify a nationwide class defined as:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice.

Lindsay Transmission, LLC, 2013 WL 275568, at *3.

The defendant filed a motion to strike the plaintiff's class allegations, arguing, *inter alia,* that the plaintiff's proposed class definition created an impermissible fail-safe class. *Id.* at *4. In response, the plaintiff asserted that the defendant's motion to strike was "premature." *Id.* The district court reviewed the Seventh Circuit's decision in *Messner* and the Sixth Circuit's decision in *Randleman,* concluding that "the proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship." *Id.* Therefore, the court held that "the proposed class consist[ed] solely of persons who can establish that defendant violated the TCPA," and consequently, was a fail-safe class. *Id.*

c. Olney v. Job.com, Inc.

In *Olney v. Job.com, Inc.,* one of the defendants allegedly used an ATDS to make phone calls to the plaintiff's cell phone without the plaintiff's prior express consent. No. 1:12–CV–01724, 2013 WL 5476813, at * 1 (E.D.Cal. Sept.30, 2013). The plaintiff brought a putative class action against the defendants on behalf of himself and all other similarly-situated individuals. *Id.* The defendants subsequently filed a motion to deny class certification and strike class allegations, asserting, *inter alia,* that the plaintiff's proposed class was an impermissible fail-safe class. *Id.*

Initially, the plaintiff proposed the following class:

> All persons within the United States who received any telephone call from Defendant to said person's cellular telephone made through the use of any automated telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

**\*8** *Id.* at * 10. The district court agreed with the defendant that, as originally proposed, the plaintiff's class was a fail-safe class. *Id.* at *11. Recognizing that "the TCPA prohibits calls to cellular telephones using ATDS unless prior express consent has been given," the district court found that "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." *Id.* The district court continued its analysis, noting that the class could be redefined to avoid the fail-safe problem. *Olney,* 2013 WL 5476813, at * 11. In his response to the defendants' motion, the plaintiff offered an amended proposed class definition:

> All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made

through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint. *Id.* After reviewing this language, the court found that "[t]here is no longer any language in this class definition that could even arguably cause a 'failsafe' problem," and denied the defendants' motion to strike class allegations accordingly. *Id.*

3. The Plaintiff's Proposed Class Definitions Are Fail–Safe

Here, the Plaintiff seeks to represent a class:

> of all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express consent for such calls,* at any time within the four years prior to the filing of the instant Complaint.

First Am. Compl. at ¶ 42 (emphasis added). The Plaintiff also seeks to represent two subclasses of individuals that fall within the class definition. The Plaintiff's first subclass includes:

> [a]ll persons within the United States who received a non-emergency telephone call on or after October 16, 2013 from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express written consent* for such calls.

*Id.* at ¶ 43 (emphasis added). The Plaintiff's second subclass includes:

> all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who had expressly revoked any consent* previously given to CVS for such calls, at any time within the four years prior to the filing of the instant Complaint.

*Id.* at ¶ 44 (emphasis added).

Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS.

*9 Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class. *Olney,* 2013 WL 5476813, at *11. In other words, "the proposed class[es] consist[ ] solely of persons who can establish that defendant violated the TCPA." *Lindsay Transmission, LLC,* 2013 WL 275568, at *4.[3] If the Plaintiff successfully demonstrates that the Defendant made calls using an ATDS or an artificial or prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win. *See* 47 U.S.C. § 227(b)(1)(A)(iii). However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class. *See Randleman,* 646 F.3d at 352 (defining a fail-safe class as a class where "[e]ither the class members win, or by virtue of losing, they are not in the class, and, therefore, not bound by judgment").

Assuming that the Court finds his proposed classes to be fail-safe, the Plaintiff argues that the Court should permit him to amend his class definitions rather than striking them entirely. The Court agrees. "[D]istrict courts have broad discretion to modify class definitions." *Powers v. Hamilton Cnty. Pub. Defender Com'n,* 501 F.3d 592, 619 (6th Cir.2007) (citing *Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 750 (7th Cir.2005); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir.2004)). "Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification." *Messner,* 669 F.3d at 825 (collecting cases). The Court will grant the Plaintiff 14 days to file an amended complaint accordingly.

**IV. Conclusion**

The Court GRANTS the Defendant's Motion to Strike (doc. 23) and GRANTS the Plaintiff fourteen (14) days in which to file an Amended Complaint.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1814076

## Footnotes

1  Courts cite Rule 12(f), Rule 23(c)(1)(A), Rule 23(d)(1)(D) as authority for striking class allegations prior to discovery. *See Bearden v. Honeywell Intern., Inc.,* No. 3:09–01035, 2010 WL 1223936, at *9 (M.D.Tenn. Mar.24, 2010) (quoting *Hovsepian v. Apple, Inc.,* No. 08–5788, 2009 WL 5069144, at *2 (N.D.Cal. Dec.17, 2009)) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"); 1 McLaughlin on Class Actions § 3:4 (10th ed.2013) (citing *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir.2011)) (same).

2  A second named plaintiff's claim was dismissed for failure to state a claim. *See Wolfkiel,* 2014 WL 866979, at *2.

3  The Plaintiff attempts to distinguish *Lindsay Transmission* from the facts of the present case. *See* Pl.'s Resp. in Opp. at 4–5. The Plaintiff's argument concerning *Lindsay Transmission* is more relevant to the issue of whether the proposed class definitions satisfy Rule 23's commonality and predominance requirements, an issue not presently before the Court.

---

**End of Document**  © 2025 Thomson Reuters. No claim to original U.S. Government Works.