2024 WL 4007345
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rhonda ALEY, on behalf of herself
and others similarly situated, Plaintiffs,
v.
LIGHTFIRE PARTNERS, LLC, Defendant.

5:22-cv-00330 (AMN/TWD)
|
Signed August 30, 2024

**Attorneys and Law Firms**

AYTAN Y BELLIN, ESQ., KATSKY KORINS LLP, 605 Third Avenue, 17th Floor, New York, NY 10158, Attorneys for Plaintiffs.

ANTHONY PARONICH, ESQ., PARONICH LAW, P.C., 350 Lincoln St., Suite 2400, Hingham, MA 02043, Attorneys for Plaintiffs.

LATRICE LATIN ALEXANDER, ESQ., THE LATIN LAW GROUP, LLC, 4751 Best Road, Suite 490, College Park, GA 30337, Attorneys for Plaintiffs.

JOHN D. FITZPATRICK, ESQ., CUNNINGHAM DALMAN, P.C., 321 Settlers Rd., PO Box 1767, Holland, MI 49422, Attorneys for Defendant.

WILLIAM G. BAUER, ESQ., WOODS OVIATT GILMAN LLP, 1900 Bausch & Lomb Place, Rochester, NY 14604, Attorneys for Defendant.

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

*1 On April 7, 2022, Plaintiff Rhonda Aley ("Plaintiff Aley"), on behalf of herself and those similarly situated, brought this putative class action against Defendant alleging violations of the Telephone Consumer Protection Act of 1991 (the "TCPA"). 47 U.S.C. § 227; *see* Dkt. No. 1 (the "Complaint"). On June 13, 2022, Defendant Lightfire Partners, LLC ("Defendant Lightfire") filed its Answer. Dkt. No. 17. On December 11, 2023, Plaintiff Aley filed a motion for class certification (the "Motion"). Dkt. No. 68. Defendant Lightfire filed its opposition to the Motion on March 22, 2024. Dkt. No. 84. On April 19, 2024, Plaintiff Aley filed a reply in further support of the Motion. Dkt. No. 88.

For the reasons set forth below, the Motion is granted.

### II. BACKGROUND

#### A. The TCPA

This is a putative class action brought under the TCPA, which prohibits certain kinds of telephone solicitations without the recipient's consent. *See generally*, 47 U.S.C. § 227. Pursuant to § 227(c) of the TCPA, the Federal Communications Commission ("FCC") issued 47 C.F.R. § 64.1200(c)(2) providing for the creation of a national do-not-call registry ("DNCR"). The regulation states that "[n]o person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *Id.* The TCPA also provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [DNCR] may ... bring ... an action ... to enjoin such violation" and "an action to recover for actual monetary loss from such violation, or to receive up to $500 in damages for each such violation, whichever is greater[.]" 47 U.S.C. § 227(c)(5). The TCPA requires "prior express written consent" by the recipient of the phone call to lawfully initiate any telephone solicitation to a person listed on the DNCR. 47 C.F.R. § 64.1200(a)(2).

#### B. Factual Background

Defendant Lightfire is a Missouri limited liability company that makes telemarketing calls. Dkt. No. 1 ¶¶ 7, 18; Dkt. No. 17 at ¶¶ 7, 18. Plaintiff Aley alleges she placed her telephone number on the DNCR on October 27, 2008, and that her phone number has remained on the DNCR since that time. Dkt. No. 1 at ¶ 21. Despite registering her phone number to the DNCR, Plaintiff Aley alleges Defendant Lightfire placed multiple telemarketing calls to her on January 31, February 1, February 2, and February 11, 2022. *Id.* at ¶ 23. Plaintiff Aley alleges she "never provided her consent or requested these calls." *Id.* at ¶ 35. The Complaint also alleges Plaintiff

Aley "asked the Defendant to no longer call" during a call on February 1, 2022. *Id.* at ¶¶ 26-29. Finally, the Complaint alleges there are "thousands" of similarly situated individuals on the DNCR list that were also called multiple times by Defendant within a year without consent. *Id.* at ¶ 42.

**\*2** Specifically, Plaintiff provides an expert analysis which found "Defendant called Plaintiff and 62,224 other class members whose numbers were on the [DNCR] [ ] as part of [a] singular 'Auto Protectors' campaign." Dkt. No. 68-1 at 1 (citing Dkt. Nos. 68-2, 68-3).[1] The parties agree that Defendant Lightfire obtained the telephone numbers for the calls at issue from Connexus Digital, a separate entity which sold the relevant consumer information to Defendant Lightfire. Dkt. No. 68-1 at 3; Dkt. No. 84 at 6. The parties similarly agree that Connexus Digital collected the telephone numbers from consumers using "Myjobscorner.com," a website operated by Connexus Digital. Dkt. No. 68-1 at 9; Dkt. No. 84 at 7. Upon visiting Myjobscorner.com, Defendant asserts Connexus Digital took record of which consumers entered telephone numbers and "check[ed] an unchecked box and ... click[ed] a continue button" which, to Connexus Digital, indicated their consent to being called despite registration on the DNCR. Dkt. No. 84 at 7-8; *see also* Dkt. No. 68-1 at 9. Connexus Digital then sold the consumers' information to Lightfire, and Lightfire placed the telemarketing calls at issue relying on the supposed consent obtained through Myjobscorner.com. *Id.* at 6. Despite recognizing that Lightfire obtained the phone numbers at issue through Connexus Digital's operation of Myjobscorner.com, Plaintiff Aley made a sworn statement in response to Defendant's interrogatories that she never visited the website. Dkt. No. 84-5 at 4.[2]

### III. STANDARD OF REVIEW

Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a) ("Rule 23(a)"). The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks and citation omitted). A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("Rule 23(b)"). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility in deciding whether to grant certification." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, \*5 (N.D.N.Y. Feb. 25, 2021) (internal quotation marks and citation omitted).

### IV. DISCUSSION

Plaintiff Aley moves to certify a class of "[a]ll persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from Lightfire as part of the "Auto Protectors" calling campaign (3) within a 12-month period, (4) as evidenced in the calling data Lightfire produced in this lawsuit, (5) from [the] four years prior [to] the filing of the Complaint." ("Proposed Class Members"). Dkt. No. 68-1 at 4. Defendant seemingly disputes whether Plaintiff Aley satisfies the adequacy requirement under Rule 23(a) as a class representative. Dkt. No. 84 at 10-21. Defendant also contests whether the proposed class satisfies the predominance requirement of Rule 23(b). *Id.* at 21. Because the Rule 23 factors are frequently conflated, the Court addresses each in turn.

#### A. Numerosity

**\*3** Numerosity "is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). Here, the proposed class satisfies the numerosity requirement because there are 62,225 Proposed Class Members. Dkt. No. 68-1 at 4.

#### B. Commonality

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD/ML), 2022 WL

4621433, at \*4 (N.D.N.Y. Sept. 30, 2022) (quoting *Falcon*, 457 U.S. at 157 n.13). "Although the claims need not be identical, they must share common questions of fact or law." *Id.* (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005)). Further, those questions of law or fact must lead to "common answers" amongst the class. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 (citation omitted). Courts liberally construe the commonality requirement. *Lowe*, 2022 WL 4621433, at \*4 (citation omitted).

Here, the Proposed Class Members make essentially identical claims under the TCPA. Each Proposed Class Member's claim is premised on allegations that Defendant called them multiple times for telemarketing purposes despite their registration on the DNCR. Dkt. No. 68-1. Undoubtedly, the Proposed Class Members' claims share "common questions of fact": (1) whether their phone numbers were listed on the DNCR, (2) whether they received more than one call from Defendant during the relevant timeframe, and (3) whether those calls were made pursuant to the same marketing campaign. The answers to these factual questions should apply to every Proposed Class Member. Assessing the Plaintiffs' claims, specifically in response to Defendant's assertion of consent, will also involve an evaluation of "common questions of law": (1) whether the procedures employed on Myjobscorner.com were sufficient to establish consent under the TCPA, and ultimately (2) whether Defendant's conduct violated the TCPA. Again, the Court's determination of these questions will apply to every Proposed Class Member. As such, the requested class satisfies the commonality requirement. *See Wal-Mart Stores, Inc.*, 564 U.S. at 359 (finding "[e]ven a single [common] question" is all that is required) (citation and internal quotations omitted).

### C. Typicality

Rule 23(a)(3) requires that Plaintiff Aley's claims and defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story*, 2021 WL 736962, at \*5 (internal quotation marks and citation omitted). "The requirement is met if ... (1) '[the] claims of representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members,' (2) ... 'the claims are based on the same legal theory,' and (3) ... 'the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative.' " *Id.* (citation omitted). Although the analysis of commonality and typicality "tend to merge ... [t]he commonality requirement tests the definition of the class itself, while the typicality requirement focuses on how the named plaintiff's claims compare to the claims of the other class members." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 532 (E.D.N.Y. 2017) (citations omitted).

**\*4** Here, Plaintiff Aley's claim is typical of the Proposed Class Members. The alleged course of conduct that gives rise to Plaintiff Aley's claim is shared by all the Proposed Class Members: Defendant called Plaintiff Aley and the Proposed Class Members, despite their registration on the DNCR, because Connexus Digital collected their information through Myjobscorner.com and gave it to Defendant. Dkt. No. 68-1 at 4. And Plaintiff Aley's claim is based on Defendant's alleged violation of the TCPA, the same legal theory that underpins the rest of the class claims. Finally, Plaintiff Aley and the rest of the Proposed Class Members are alleged to share the common injury of receiving calls from Defendant as defined in the TCPA. That Plaintiff Aley denies having visited Myjobscorner.com does not defeat typicality for three reasons. First, it is likely that other Proposed Class Members may similarly claim they never visited Myjobscorner.com. Second, that question is relevant to defeating Defendant's affirmative defense of consent, not "prov[ing] all the elements of the cause of action." *Story*, 2021 WL 736962, at \*5 (internal quotation marks and citation omitted). Third, the Court notes that in the Second Circuit, the typicality prerequisite is a low, flexible bar. *Id.* Plaintiff Aley has met that bar, and the Court reserves the question of consent for its assessment under Rule 23(b)(3).

### D. Adequacy of Named Plaintiff and Class Counsel

To determine adequacy, the Court inquires as to "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and ... have no interests antagonistic to the interests of the other class members.' " *Story*, 2021 WL 736962, at \*6 (quoting *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at \*7

(S.D.N.Y. Sept. 28, 2007) (quoting *Penney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Here, there is no evidence that the interests of Plaintiff Aley and the other Proposed Class Members are at odds. Rather, the record reflects that Plaintiff Aley and the Proposed Class Members have the same incentive to maximize their compensation for past harm and that she is knowledgeable about the general contours of the case. *See generally* Dkt. No. 68-6; Dkt. No. 88-1. Moreover, the Court finds that Class Counsel is experienced in TCPA litigation. *See* Dkt. Nos. 68-1 at 16-17, 68-7. As such, the Court finds that the adequacy requirement is satisfied.

Defendant makes several arguments intended to undermine Plaintiff Aley's adequacy as the Named Plaintiff. Dkt. No. 84 at 10-21. First, Defendant attacks Plaintiff Aley's reliability by pointing to her deposition, where Plaintiff seemingly suggested she did not review her engagement letter, the pleadings, or her sworn statements issued in discovery. Dkt. No. 84 at 11. Second, Defendant argues Plaintiff Aley lacks credibility, in part because Defendant's recordings of phone calls with Plaintiff reveals Plaintiff Aley made no request to be left alone, contradicting the Complaint. Dkt. No. 84 at 14. Even if true, such conduct is insufficient to establish that Plaintiff Aley is inadequate for purposes of class certification. *See Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (finding named Plaintiff to be adequate despite "poor memory regarding the posture and details of th[e] litigation"); *see also Baffa*, 222 F.3d at 61-62 (disapproving of attacks on class representative's ignorance under the adequacy prong).

Third, Defendant argues Plaintiff Aley's assertion that she never visited Myjobscorner.com makes her an inadequate representative. "The Second Circuit has held that the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless 'plaintiff's interests are antagonistic to the interest of other members of the class.' " *Zyburo*, 44 F. Supp. 3d at 503 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). Indeed, to defeat class certification, the conflict between Plaintiff Aley and the Proposed Class Members "must be fundamental." *In re Flag Telecom Holdings*, 574 F.3d at 35 (citation omitted). Defendant argues Plaintiff Aley's denial of having visited the website and her failure to track her browser history make her claims "quite vulnerable," and therefore, makes her inadequate. Dkt. No. 84 at 15. But even if Plaintiff Aley were proven to have visited the website, her claims would be no more vulnerable than most of the Proposed Class Members, who rely instead on the insufficiency of the consent procedures on Myjobscorner.com. Defendant also argues that Plaintiff Aley cannot speak to the "in-call opt-in" method of gathering consent which Defendant employed after obtaining phone numbers through Connexus Digital. *Id.* at 18, 20. But the TCPA bans the *initiation* of calls to consumers; Defendant fails to identify how their procedures for gaining redundant consent after the call was answered is meaningful for purposes of providing an affirmative defense. *See* 47 C.F.R. § 64.1200(c)(2). Defendant's assertions therefore do not approach a "fundamental" conflict with Proposed Class Members' incentive to pursue the case or signify any particular weakness, and therefore, Plaintiff Aley is an adequate class representative.[3]

### E. Ascertainability

\*5 The Second Circuit's "modest threshold requirement" that a proposed class be ascertainable is satisfied. *In re Petrobras Sec.*, 862 F.3d at 269-70. There is no dispute that Defendant has maintained records of its relevant telemarketing calls for the timeframe in question, nor does Defendant contest Plaintiff's expert's method of cross-referencing those records with the DNCR and filtering the list through controls to ascertain the proposed class. *See* Dkt. No. 68-1 at 5-6. Regardless of whether Plaintiff's expert's list of Proposed Class Members is final, its analysis shows that ascertaining a class based on the proposed criteria is "objectively possible." *In re Petrobras Sec.*, 862 F.3d at 270.

### F. Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied *and* "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), the "matters pertinent" to these requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.
Fed. R. Civ. P. 23(b)(3) (A-D).

The analysis pursuant to Rule 23(b)(3) is a relatively close call. As discussed, several overarching common questions of law and fact exist, which "goes a long way toward satisfying [ ] Rule 23(b)(3)[.]" *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *Falcon*, 457 U.S. at 157 n.13). However, Defendant argues that separate and individualized issues threaten to ensure Proposed Class Members will have "interests in controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3) (A-D). Just as Plaintiff Aley asserts she has never visited Myjobscorner.com, Dkt. No. 84-5 at 4, other Proposed Class Members may take similar positions. Indeed, as Plaintiff Aley recognizes, "Connexus Digital explicitly disclaimed the accuracy of the information inputted into its website, stating it 'does not have the capacity to determine whether each user has entered a name which matches the subscriber name for a telephone number.' " Dkt. No. 88 at 11 (citation omitted). Put simply, Connexus Digital has no way of verifying whether the phone numbers and consent they obtained through Myjobscorner.com came from the Proposed Class Members themselves or from other internet users entering phone numbers that did not belong to them. Therefore, whether individual Proposed Class Members ever visited the website at all is an open question for more than just Plaintiff Aley. Such questions could necessitate individual assessments of browsing histories, the use of proxy networks to disguise the IP addresses used to visit Myjobscorner.com, *see* Dkt. No. 68-1 at 13, whether the names entered with Proposed Class Members' telephone numbers match the subscriber names for the telephone numbers, Proposed Class Members' memories and credibility, Proposed Class Members' job seeking status, and a myriad of other kinds of evidence the parties may use to try to prove Proposed Class Members did or did not visit Myjobscorner.com themselves.

However, while these questions do exist, they do not predominate the questions common to all Proposed Class Members. The sufficiency of the consent procedures used on Myjobscorner.com under the TCPA is an issue for every Proposed Class Member. Should the Court grant certification, and should the Court subsequently rule that the consent procedures were inadequate under the law, such a determination would render moot the individualized assessment of whether individual Proposed Class Members visited Myjobscorner.com. This dynamic incentivizes Proposed Class Members to prioritize the issue of Myjobscorner.com's procedures. Therefore, the shared issue of whether Myjobscorner.com adequately obtained consent is "more substantial" than the individualized inquiries as to whether Proposed Class Members visited the website. *See In re U.S. Foodservice Inc. Pricing Litigation*, 729 F.3d 108, 118 (2d Cir. 2013) (citation omitted). Indeed, there is no risk of "sacrificing procedural fairness or bringing about other undesirable results" by proceeding as a class. *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (citation omitted). Even if the Court rules that the consent gathered through Myjobscorner.com is adequate, individual Proposed Class Members will not have lost their ability to prove they never visited the website in the first place.[4]

**\*6** Defendant's cases to the contrary are distinguishable. In *Sherman v. Yahoo! Inc.*, the court faced "several plausible consent theories that apply differently to different class members." No.13cv0041-GPC-WVG, 2015 WL 5604400, at \*10 (S.D. Cal. Sep. 23, 2015). In contrast, Defendant puts forward only one theory of consent that it asserts would apply to every Proposed Class Member: that every individual that it called provided "prior express written consent" by "check[ing] an unchecked box and then click[ing] a continue button" while visiting Myjobscorner.com. Dkt. No. 84 at 7. Therefore, unlike in *Sherman*, the question of that theory's sufficiency can be determined by a generalized set of proof regarding the form, font, and language of the consent provision. And in *Wiley v. Am. Fin. Network, Inc.*, the court took issue with the fact that "a major focus of the litigation w[ould] be on a defense unique to [the named Plaintiff]," whereas here, Defendant's affirmative defense of consent applies to each Proposed Class Member, and their proof of that supposed consent will be identical for each Proposed Class Member. SACV 22-00244-CJC (DFMx), 2023 WL 4681538, at \*3 (C.D. Cal. July 3, 2023). Finally, in *Berman v. Freedom Fin. Network, LLC*, the court explicitly relied on Ninth Circuit law which suggested that where some members of the proposed class were subject to arbitration agreements and others were not, a class should not be certified. 400 F. Supp. 3d 964, 987 (N.D. Cal. 2019). Here, no such divide exists amongst Proposed Class Members.

A class action is also "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Should the Court deny certification and individual Proposed Class Members bring suit, there is

a danger of inconsistent rulings on whether the procedures employed by Myjobscorner.com were sufficient to establish consent. Moreover, given the limited damages per individual Proposed Class Member, *see* 47 U.S.C. § 227(c)(5), this is precisely the kind of case in which "individual[s] would be without effective strength to bring their opponents into court at all" absent class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted). Therefore, Plaintiff Aley has satisfied the requirements of Rule 23(b)(3).

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion to certify the class, Dkt. No. 68, is **GRANTED**.

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 4007345

## Footnotes

1    Citations to Court documents generally utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination. If no CM/ECF pagination exists, citations utilize the document's internal page numbers.

2    The Court exercises its authority to look beyond the pleadings in this case "before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The Court's analysis will "entail some overlap with the merits of the plaintiff's underlying claim," but that is expressly permitted. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

3    The Court also notes that whether Plaintiff Aley visited Myjobscorner.com is an open question of fact. Though Plaintiff Aley swore in an interrogatory response that she did not, Defendant, not Plaintiff Aley, produced evidence showing Plaintiff Aley's phone number was entered into the website, that Plaintiff Aley was later uncertain about whether she'd visited the website in her deposition, and that Plaintiff Aley was seeking a job in babysitting around the time of the supposed consent. Dkt. 84 at 15. Moreover, Defendant cannot dispute Plaintiff Aley's assertion in her interrogatory response while also relying on its truthfulness to defeat class certification. *See generally*, *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996) ("a deposition of a witness, subject to cross examination, is generally more reliable than an affidavit").

4    The Court is unconvinced by Defendant's argument on the merits of the affirmative defense, and thus, finds that it is a live, common issue which overwhelms the individual issues of whether the Proposed Class Members visited Myjobscorner.com. Defendant acknowledges it is simply their "understanding" that the consent provided for on Myjobscorner.com meets the statutory requirements for an electronic signature under the Electronic Signatures in Global and National Commerce Act. Moreover, Defendant merely alludes to the sufficiency of "clickwrap agreements" and finds comparison to Plaintiff Aley's cases "lacks credibility" without engaging in the fact-intensive analysis required. *See* Dkt. No. 84 at 25-26; *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78 (2d. Cir. 2017).

---

**End of Document**      © 2025 Thomson Reuters. No claim to original U.S. Government Works.