Case 3:24-cv-01866-JKM    Document 53-5    Filed 03/25/25    Page 1 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

2020 WL 525898
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court, D. New Jersey.

Michael JOHNSON, on behalf of himself and all others similarly situated, Plaintiff,
v.
COMODO GROUP, INC. et al., Defendants.

Civil Action No. 16-4469 (SDW) (LDW)
|
Signed 01/31/2020

**Attorneys and Law Firms**

Sofia Balile, Lemberg Law, LLC, Wilton, CT, for Plaintiff.

Jeffrey S. Jacobson, Faegre Drinker Biddle & Reath LLP, New York, NY, Lauri A. Mazzuchetti, Paul Andrew Rosenthal, Kelley Drye & Warren LLP, Parsippany, NJ, for Defendants.

**OPINION**

WIGENTON, District Judge.

*1 Before this Court are Defendant Comodo Group, Inc.'s ("Defendant" or "Comodo") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 and Motion to Exclude Plaintiff's Expert, as well as Plaintiff Michael Johnson's ("Plaintiff") Motion for Class Certification pursuant to Rule 23. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED-IN-PART**, Defendant's Motion to Exclude is **DENIED**, and Plaintiff's Motion for Class Certification is **GRANTED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

Between 2012 and 2016,[1] Defendant made cold sales calls for its then affiliate, Comodo CA Ltd.,[2] which was in the business of issuing/selling Secure Sockets Layer ("SSL") Certificates to website owners. (D.E. 190-1 ¶ 1.)[3] SSL Certificates are encryption keys that enable website owners to securely transfer data to and from their customers. (*Id.*)

Each Certificate contains expiration date information and often contains the user's (*i.e.*, website operator's) name and telephone number. (D.E. 200 ¶¶ 33–34.)

Defendant used an automated computer program to crawl the internet to compile a database of SSL Certificates, their expiration dates, and their users' names and telephone numbers. (*Id.*) When contact information was not immediately available on a Certificate, Defendant supplemented the information by scanning the target website or manually searching the WHOIS Registry, an online database. (*Id.*) Using this process, Defendant formulated sales leads containing phone numbers for soon-to-expire Certificates. (*Id.* ¶ 35.) Defendant's sales department would then load the leads into a dialing platform called "VICIdial." (*Id.* ¶ 37.)

VICIdial is a "predictive dialer" that automatically called stored leads throughout the day when it expected that one of Defendant's sales agents was available to take an already dialed and connected call. (*Id.* ¶¶ 37, 44.) VICIdial is able to dial leads randomly, sequentially, or by some internal rank —this setting can be changed by pressing a button. (*Id.* ¶¶ 39, 41.) Defendant used the "internal rank" setting. (*Id.* ¶ 40.) VICIdial also permits sales agents to leave prerecorded messages by pressing a button. (*Id.* ¶¶ 45–46.) Defendant's sales agents only used this option when calls were sent to voicemail. (D.E. 190-1 ¶¶ 17–19.)

*2 In May and June 2016, Defendant called Plaintiff via VICIdial seven times and left a prerecorded voicemail three times.[4] (D.E. 200 ¶¶ 57, 61.) Plaintiff was not a Comodo customer and did not consent to these calls. (*Id.* ¶¶ 65, 66.) In fact, Plaintiff answered the phone on June 16, 2016, and requested no further calls, resulting in the sales agent marking Plaintiff's number as "do-not-call." (*Id.* ¶¶ 62–63.) Nonetheless, Plaintiff received another call on June 29, 2016. (*Id.* ¶¶ 61, 64.)

Plaintiff filed suit on July 22, 2016. (D.E. 1.) In the operative complaint, the Second Amended Class Action Complaint, filed September 5, 2018, Plaintiff alleges: (1) violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., (Count I) and (2) willful violations of the TCPA (Count II). (D.E. 76 ¶¶ 67–84.)

Plaintiff moved for class certification on January 11, 2019. (D.E. 114.) Defendant opposed and filed its motion to exclude on May 28, 2019. (D.E. 157, 158.)[5] Plaintiff timely

Case 3:24-cv-01866-JKM    Document 53-5    Filed 03/25/25    Page 2 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

responded on July 12, 2019. (D.E. 179.) Defendant moved for summary judgment on August 23, 2019, and all briefs were timely filed. (D.E. 189, 190, 199, 203.) Because Defendant's summary judgment motion attacks the constitutionality of the TCPA, the United States intervened on November 8, 2019, in support of the statute's constitutionality. (D.E. 209.) Defendant responded to the Government's position on November 18, 2019. (D.E. 210.) The Court heard oral arguments on the three motions on December 19, 2019. (D.E. 216.)

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing Rule 56(e)). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

**\*3** The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which ... [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### B. Class Certification

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). Specifically, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(1)-(4). These requirements are referred to as numerosity, commonality, typicality, and adequacy, respectively. *See, e.g.*, *Marcus*, 687 F.3d at 591.

Under Rule 23(b)(3), a party seeking class-certification must also "prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. To do so, the plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and

Case 3:24-cv-01866-JKM   Document 53-5   Filed 03/25/25   Page 3 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

administratively feasible mechanism for determining whether putative class members fall within the class definition.' " *Id.* (citation omitted). In addition, a party seeking certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). These additional requirements are referred to as the ascertainability, predominance, and superiority requirements, respectively. *See, e.g.*, *Byrd*, 784 F.3d at 162.

**C. Exclusion of Expert Opinion**

Where an expert opinion is critical to class certification and a party challenges the reliability of that opinion, the reviewing court must engage in a two-step analysis before analyzing whether Rule 23's requirements have been met. Specifically, the court must ascertain (1) whether the party's challenges bear upon "those aspects of [the] expert testimony offered to satisfy Rule 23" and (2) if so, whether the opinion is admissible as to those aspects under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993). *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187–88 (3d Cir. 2015). FRE 702 provides the parameters for admissible expert testimony:

 **\*4** A witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if:

 (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

 (b) the testimony is based on sufficient facts or data;

 (c) the testimony is the product of reliable principles and methods; and

 (d) the expert has reliably applied the principles and methods to the facts of the case.

In deciding whether to admit expert testimony, the trial court is a "gatekeeper" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999) (applying *Daubert* standard to all expert testimony). The court must consider whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, *i.e.*, it must "fit" the facts of the case. *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). The proponent of the expert testimony must prove these requirements by a preponderance of the evidence. *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citation omitted).

In order to be qualified as an expert, FRE 702 requires a witness to have "specialized knowledge regarding the area of testimony. The basis of this specialized knowledge can be practical experience as well as academic training and credentials." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (internal citation and quotation marks omitted). The Third Circuit has also "stress[ed] that ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training." *Id.* at 626.

In deciding whether proposed expert testimony is reliable, the trial court should examine:

 (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994). Each step of the expert's analysis must be reliable, including "the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012). But proponents of expert testimony need not "prove their case twice—they do not have to demonstrate ... by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000).

**III. DISCUSSION**

**A. Motion for Summary Judgment**

**\*5** The TCPA, in relevant part, prohibits making:

 any call (other than a call made for emergency purposes or made with the prior express consent of the called party)

Case 3:24-cv-01866-JKM   Document 53-5   Filed 03/25/25   Page 4 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service.... 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to establish a TCPA violation, Plaintiff must show that Defendant (1) made a non-emergency call without prior express consent, (2) using an ATDS *or* artificial or prerecorded voice, (3) to a cell phone. If Plaintiff shows that the violation was willful, the statute provides for treble damages. *Id.* at § 227(b)(3)(C).

Defendant argues that summary judgment is appropriate because: (1) it did not violate the TCPA because (a) VICIdial is not an ATDS and (b) prerecorded voicemails do not violate the statute; (2) if it did, any violations were not willful (Count II only); and (3) any violations are not actionable because the TCPA is unconstitutional. The Court analyzes these arguments in turn.

*1. Violation of TCPA (Count I)*

a. Whether VICIdial is an ATDS

The TCPA defines an ATDS as "equipment which has the *capacity*—(A) to store or produce telephone numbers to be called, *using a random or sequential number generator*; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). VICIdial is a "predictive dialer," meaning that it can "store pre-programmed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers." *Dominguez v. Yahoo!, Inc.*, Civ. No. 13-1887, 2017 WL 390267, at *4 (E.D. Pa. Jan 27, 2017) (citation and quotation marks omitted), *aff'd sub nom. Dominguez on Behalf of Himself v. Yahoo, Inc.* ("*Dominguez II*"), 894 F.3d 116 (3d Cir. 2018). VICIdial, like other predictive dialers, does not "us[e] a random or sequential number generator" to generate numbers to be called; instead, it has the capacity to autodial <u>stored</u> numbers randomly or sequentially, although Defendant used VICIdial to autodial numbers according to an internal ranking of the numbers. (D.E. 190-1 ¶¶ 9, 14–15.)[6]

Whether a predictive dialer such as VICIdial is an ATDS is the only close legal question on this motion. District courts have been split on the issue since the D.C. Circuit's 2018 decision in *ACA International v. FCC*, 885 F.3d 687. *See Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 563, 574 (D.N.J. 2018) (discussing the split). Until then, predictive dialers were consistently treated as ATDS, pursuant to orders issued by the FCC in 2003, 2008, and 2015. *See id.* at 573. However, *ACA International* invalidated the FCC's 2015 order as impermissibly expansive, specifically with respect to the order's broadened definition of "capacity." *Id.* at 572 (citing *ACA Int'l*, 885 F.3d at 700).[7] The Third Circuit followed suit in *Dominguez II*, but neither decision explicitly addressed whether the FCC's pre-2015 orders are still valid and whether predictive dialers are still prohibited by the TCPA. *Id.* at 572–73.

**\*6** Without such clarity, some courts have followed the FCC's 2003 and 2008 orders in holding that predictive dialers violate the TCPA, and others have ignored the orders entirely and analyzed the statutory text itself, coming to disparate conclusions. This is true even within the District of New Jersey. *Compare Fleming*, 342 F. Supp. 3d at 576 (McNulty, J.) ("Does a system that dials numbers from a list that was not randomly or sequentially generated when the list was created qualify as an ATDS? ... I am convinced that the answer is no."), *with Wilson v. Quest Diagnostics, Inc.*, Civ. No. 18-11960, 2018 WL 6600096, at *3 (D.N.J. Dec. 17, 2018) (Martini, J.) ("[A] predictive dialer qualifies as an ATDS so long as it has the present capacity to dial numbers without human intervention." (some punctuation omitted)); *see also Rivero v. D'Jais, LLC*, Civ. No. 18-12697, 2019 WL 4784175, at *3 n.2, *5 n.6 (D.N.J. Sept. 30, 2019) (Wolfson, J.) (acknowledging the divide among D.N.J decisions).[8]

The Ninth Circuit is the only appellate court that has directly considered the legality of predictive dialers post-*ACA Int'l*.[9] *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). As an initial matter, the court explicitly held that *ACA Int'l* invalidated the pre-2015 FCC orders. *Id.* at 1049 (citation omitted). The Ninth Circuit went on to analyze the structure and legislative history of the TCPA, first finding the statute's text ambiguous, and then finding that Congress gave the FCC's interpretation tacit approval when it amended the TCPA in 2015 without changing the definition of ATDS. *Id.* at 1050–52. The court further observed that any *legal* use of an ATDS under the TCPA can <u>only</u> autodial from a stored list of numbers that have given express consent. *Id.* at 1051. For these reasons, the court unanimously held that predictive dialers ("equipment that ma[kes] automatic calls from lists of recipients") are covered by the TCPA. *Id.*

This Court is persuaded by the Ninth Circuit's reasoning in *Marks* and holds that predictive dialers are ATDS under the statutory language itself. That VICIdial only had the

Case 3:24-cv-01866-JKM   Document 53-5   Filed 03/25/25   Page 5 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

capacity to autodial telephone numbers from a stored list of SSL Certificate-holders (instead of randomly or sequentially generated telephone numbers) is of no moment, as any legal use of an ATDS under the TCPA can only autodial cellular numbers from a stored list of numbers that have given express consent. *Id.*; *see also Somogyi v. Freedom Mortg. Corp.*, Civ. No. 17-6546, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018) (Simandle, J.) ("A calling system is no less random if the machine's universe is the hundreds of thousands of customers .... Defendant's position would lead to the conclusion that a system containing fewer than all the telephones in the world is a pre-selected, limited universe, and therefore not 'random.' Congress could not intend such an absurd result.").

**\*7** This Court's holding is supported by that of the only other court to address whether VICIdial is an ATDS post-*ACA Int'l*. *See O'Shea v. Am. Solar Sol., Inc.*, Civ. No. 14-894, 2018 WL 3217735 (S.D. Cal. July 2, 2018) (holding that VICIdial is an ATDS). The *O'Shea* court found *ACA Int'l* inapplicable to the question of whether VICIdial is an ATDS because it only invalidated the FCC's 2015 order on the basis that its definition of "capacity" was overbroad. *Id.* at *2. Because there was no question that VICIdial was configured as an autodialer, the definition of capacity was irrelevant. *Id.* The Defendant's use of VICIdial here is substantively similar to the use of VICIdial in *O'Shea*—there is no question that Defendant used VICIdial to autodial tens of thousands of telephone numbers. Such a device is within the scope of the TCPA even after *ACA Int'l*. *See King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("[T]he term "capacity" in the TCPA's definition of a qualifying [ATDS] .... does include devices whose autodialing features can be activated, as the D.C. Circuit suggested, by the equivalent of 'the simple flipping of a switch.' " (quoting *ACA Int'l*, 885 F.3d at 696)).

This Court will therefore deny Defendant's motion for summary judgment that it did not violate the TCPA because VICIdial is not an ATDS. Because this Court would reach the same conclusion regardless of whether the FCC's pre-2015 orders are in effect, it declines to decide whether *ACA Int'l* and *Dominguez II* invalidated those orders. *See Somogyi*, 2018 WL 3656158, at *4 (observing that FCC guidance cannot "alter the statutory definition of an ATDS").

b. Whether Defendant's Prerecorded Voicemails Violated the TCPA

The use of prerecorded messages is a separate and independent basis by which Defendant may be liable for violating the TCPA. 47 U.S.C. § 227(b)(1)(A). The Third Circuit made this clear when it held that an allegation of one unanswered and unsolicited prerecorded message left on a cell phone's voicemail is sufficient on its own to state an injury under the TCPA. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017).[10]

Defendant argues for a narrow construction of the TCPA that would only prohibit prerecorded messages that are played by a computer or machine without human intervention (here, the sales agents pressed a button to play the message), and even then, only messages that are played to a live person (here, the messages were left on voicemail). (D.E. 190 at 23.)[11][12]

**\*8** However, the statute itself makes no distinction between prerecorded messages played by a human or played by a machine. 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person ... to make any call ... using ... [a] prerecorded voice ...."). Moreover, various district courts have declined to negate TCPA liability where humans assisted in playing a prerecorded message. *See, e.g.*, *Margulis v. Eagle Health Advisors, LLC*, Civ. No. 15-1248, 2016 WL 1258640, at *3 (E.D. Mo. Mar. 31, 2016); *Bakov v. Consol. World Travel, Inc.*, Civ. No. 15-2980, 2019 WL 1294659, at *3 (N.D. Ill. Mar. 21, 2019); *Braver v. NorthStar Alarm Servs., LLC*, Civ. No. 17-0383, 2019 WL 3208651, at *5 (W.D. Okla. July 16, 2019).

More specifically, multiple courts, including the Third Circuit, have held that prerecorded messages left on voicemail can incur TCPA liability. *Susinno*, 862 F.3d at 351; *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("routing a call to voicemail counts as answering the call" and can violate the TCPA); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 720 (S.D.N.Y. 2013) (holding that for purposes of TCPA liability, it is immaterial whether the calls were answered or went to voicemail); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, Civ. No. 19-196, 2019 WL 2567971, at *2 (M.D. Fla. June 21, 2019) ("[C]ourts have consistently held that calls resulting in voicemail messages are subject to the TCPA." (citations omitted)). Therefore, this Court will deny Defendant's motion for summary judgment that its prerecorded voicemails did not violate the TCPA.

Case 3:24-cv-01866-JKM   Document 53-5   Filed 03/25/25   Page 6 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

*2. Willfulness (Count II)*

A defendant's conduct is willful when they "knew or should have known" that their conduct violated the TCPA; bad faith is not required. *Echevvaria v. Diversified Consultants, Inc.*, Civ. No. 13-4980, 2014 WL 929275, at *9 (S.D.N.Y. Feb. 28, 2014), *report and recommendation adopted*, 2014 WL 12783200 (Apr. 22, 2014).<sup>13</sup> Defendant argues that any TCPA violations were made despite a good faith belief that it was only calling business landlines and not cell phones. (D.E. 190 at 29–31.) However, even if Defendant only intended to call potential business customers, nothing in the TCPA exempts calls made to individuals at a business telephone number instead of a residential number. *See Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 944 (C.D. Cal. 2015) (citing cases). Furthermore, the record contains evidence that (1) Defendant knew it was making calls to recipients who did not consent, and (2) Defendant was warned by VICIdial's creator, during a training session, to subscribe to a cell phone filtering service or otherwise risk a TCPA lawsuit. (D.E. 200 ¶¶ 53, 69–74.) Despite the warning, Defendant did not filter cell phones during the relevant time period. (*Id.* ¶ 51.) Thus, a jury could determine that Defendant "knew or should have known" that its conduct violated the TCPA. Summary judgment on Count II will therefore be denied.

*3. Constitutionality of TCPA*

**\*9** Defendant's two constitutional challenges to the TCPA stem from a 2015 amendment to the statute allowing persons collecting government-backed debts (*e.g.*, student loans) to use an ATDS. Defendant argues that the exception transforms the statute into a content- and speaker-based restriction that violates the Free Speech Clause of the First Amendment and should be subject to strict scrutiny. (D.E. 190 at 31–38.) Defendant further argues that the same exception violates the Equal Protection Clause of the Fourteenth Amendment by treating certain types of speech and certain speakers differently from others. (*Id.* at 38–39.)

At oral argument on December 19, 2019, this Court declined to reach the merits of the constitutional issues because the exception for government-backed debt collections has no impact on the remainder of the statute and can be severed, as was done by the Fourth and Ninth Circuits. *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156 (9th Cir. 2019). However, on January 10, 2020, the Supreme Court granted *certiorari* in *Am. Ass'n of Political Consultants, sub nom. Barr v. Political Consultants*, No. 19-631, 2020 WL 113070, to address "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Petition for Writ of Certiorari, *American Ass'n of Political Consultants*, 2019 WL 6115075 (No. 19-631). In light of this development, this Court will reserve decision on the constitutional issues.

**B. Motion to Exclude and Motion for Class Certification**

In order to identify putative class members, Plaintiff's expert, Anya Verkhovskaya, proposes to rely on Defendant's call log, which it produced in response to an interrogatory asking it to "[l]ist (by date, time, name and telephone number called) all calls placed ... to a cellular line during the Class Period in order to sell an SSL Certificate." (D.E. 115-6 (Anya Verkhovskaya's Expert Report) ¶ 16, D.E. 179-8 at 12 (Interrogatory No. 9).) The call log contains system codes for each call that indicate whether the call was dialed using a prerecorded voice (codes "AL" and "AUTOVM") and whether it was dialed automatically by VICIdial (code "AUTO"). (D.E. 200 ¶¶ 58, 59; D.E. 179-5 (Mehran Dep. Tr.) at 143–44.) Using these codes, Ms. Verkhovskaya identified 34,568 unique telephone numbers that were dialed by Defendant automatically or using a prerecorded voice. (D.E. 115-6 ¶¶ 20–22.) She proposes to use a LexisNexis database to input these telephone numbers and produce a report detailing subscribers/users of the telephone numbers, including names, addresses, associated date ranges, and whether each number is a cellular number or landline—a process known as "reverse-append." (*Id.* ¶¶ 31–32.) For any subscribers/users not fully identified through this process, Ms. Verkhovskaya will use databases and services provided by TransUnion, Microbilt, Experian, and the U.S. Postal Service to fill in the gaps. (*Id.* ¶¶ 35–37.)

*1. Motion to Exclude*

Defendant moves to exclude Ms. Verkhovskaya on the bases that her proposed methodology is not testable or reliable (D.E. 158-1 at 18–23), her methodology is incapable of identifying putative class members (*id.* at 24–31), and she is not qualified

to opine on the issues (*id.* at 33–37). The Court rejects these arguments in turn.

First, Plaintiff's methodology is testable, reliable, and sufficiently capable of identifying putative class members. It has already been used in other TCPA class actions. *See, e.g.*, *Shamblin v. Obama for Am.*, Civ. No. 13–2428, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015); *Reyes v. BCA Fin. Servs., Inc.*, Civ. No. 16-24077, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018); *Krakauer v. Dish Network, LLC*, Civ. No. 14-333, 2015 WL 5227693, at *10 (M.D.N.C. Sept. 8, 2015). Similarly, the vendors that Ms. Verkhovskaya plans to use, such as LexisNexis, have been reliably used in past TCPA litigations to identify telephone number users/subscribers and their addresses. *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 159 (S.D. Cal. 2019) (approving the use of LexisNexis to identify class members and summarizing cases holding the same); *Krakauer*, 2015 WL 5227693, at *8–10 (holding that Ms. Verkhovskaya's use of LexisNexis to identify putative TCPA class members is a reliable methodology and denying motion to exclude).

**\*10** Although some of the calls on the call log that Defendant produced and that Ms. Verkhovskaya plans to rely on fall outside the class definition, these calls appear to be statistically insignificant and filterable (*e.g.*, test calls placed to Defendant's employees and unconnected/incomplete calls). (D.E. 179 at 23.) Calls to landline numbers can be similarly filtered. (D.E. 115-6 ¶ 31.) Furthermore, Ms. Verkhovskaya's reliance on the VICIdial system codes used in the call log is justified—these codes are unlikely to be prone to human error as they were entered by the system itself (and not a human being) when an automatic call was placed or when an agent pressed a button to play a prerecorded message. (*See* D.E. 200 ¶ 58.)[14]

Second, Ms. Verkhovskaya is clearly qualified to opine on TCPA issues. Although her college degree was in nursing, she has 19 years of experience serving as an expert witness or court-approved administrator in class action lawsuits, including TCPA suits. (D.E. 115-6 ¶ 6.) Multiple district courts have used Ms. Verkhovskaya as an expert in TCPA cases. *See, e.g.*, *Shamblin*, 2015 WL 1909765, at *3 (holding that Ms. Verkhovskaya is "amply qualified, and [her] relevant experience, education, and training render [her] competent to offer expert testimony in TCPA cases"); *Reyes*, 2018 WL 3145807, at *13 ("Several other district courts have also relied on Verkhovskaya's expertise when deciding whether to certify TCPA and other classes.") (collecting cases); *Youngman v. A&B Ins. & Fin., Inc.*, 2018 WL 1832992, at *4 (M.D. Fla. Mar. 22, 2018) (noting that Ms. Verkhovskaya has "extensive experience in identifying class members in TCPA class actions"). There is nothing special about this case that counsels a different course of action, and the motion to exclude Ms. Verkhovskaya's testimony will therefore be denied.

*2. Motion for Class Certification*

Plaintiff requests that the Court certify the following class:

> (1) All persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using the ViciDial ATDS or a prerecorded voice [(4)] within four years of the filing of the complaint.

(D.E. 180 at 1.) The Rule 23(a) requirements are met here. Numerosity clearly exists where more than 34,000 unique telephone numbers were allegedly called. (D.E. 115-6 ¶ 22.) Commonality also exists because there are questions of law and fact common to the class, specifically, whether VICIdial is an ATDS, whether Defendant's use of prerecorded messages violated the TCPA, whether the public availability of putative class members' contact information constituted prior express consent to Defendant's calls, and whether treble damages are warranted. Although Plaintiff was employed by Defendant's competitor, his claims and factual allegations are typical of—really, identical to—those of other class members. Finally, Plaintiff and his counsel are adequate to represent class interests, and Defendant's claim that counsel demonstrated inadequacy by abandoning class claims against an affiliate is not supported by the text of the tolling agreement at issue ("Comodo CA agrees to suspend and toll the running of any statute of limitations related to Johnson's claims, in either an individual or class capacity ...."). (D.E. 118-1 ¶ 2.)

Defendant's primary argument against certification is based on the Rule 23(b)(3) requirements for class certification, specifically that the class is not ascertainable for the reasons discussed above in connection with the motion to exclude, and additionally because (1) cellular numbers may have been reassigned and (2) users and subscribers share the same cell phone numbers. (D.E. 157 at 27–30.)

**\*11** A class is ascertainable where "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within

Case 3:24-cv-01866-JKM  Document 53-5  Filed 03/25/25  Page 8 of 10

Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 525898

the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (vacating and remanding denial of class certification in TCPA matter) (citation and internal quotation marks omitted). "[P]laintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id.* (citation and internal quotation marks omitted). "Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Id.* at 441 (citation omitted).

Defendant specifically disputes that the use of reverse-append in conjunction with affidavits is a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." (D.E. 157 at 22–35.) However, the use of reassigned phone numbers should not be a significant issue in this class where putative members were targeted by name. Reassigned numbers generally pose a problem to reverse-append only in TCPA actions where the class consists entirely of members who received reassigned numbers and did not consent to telemarketing calls, even though the prior owners of the numbers did (so called "wrong-number cases"). *See, e.g., Hunter v. Time Warner Cable Inc.*, Civ. No. 15-6445, 2019 WL 3812063, at *13 (S.D.N.Y. Aug. 14, 2019) (citing cases where reverse-append was permitted but declining to adopt it where class consisted of members who received reassigned numbers from defendant's former customers) (submitted by Defendant as supplemental authority, D.E. 188).

Furthermore, both subscribers *and* users may have standing to bring a TCPA claim in the Third Circuit. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015) (TCPA's zone of interests includes intended call recipient, actual recipient, and regular user of the phone line who occupies the same residence). Even if a distinction does need to be made between subscribers and users, this problem is curable through the use of affidavits, especially where most recipients were targeted by name because of their listing on SSL Certificates.

Beyond ascertainability, the other requirements of Rule 23(b)(3) certification are also met. There are no substantial questions affecting only individual members, and any such questions are predominated by the common questions of fact and law specified above in connection with the commonality requirement. A class action is also the superior dispute resolution mechanism where more than 34,000 unique telephone numbers were allegedly called; litigating these claims individually would cost many more millions of dollars and take a substantially greater toll on judicial resources. Plaintiff's motion for class certification will therefore be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **DENIED-IN-PART**, Defendant's Motion to Exclude is **DENIED**, and Plaintiff's Motion for Class Certification is **GRANTED**. An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 525898

Footnotes

1   Plaintiff's proposed class consists of individuals who received calls from Defendant "within four years of the filing the complaint," *i.e.*, after July 22, 2012. (D.E. 114 at 1.)

2   The operative complaint lists a second defendant, Comodo CA, Inc., which is no longer a party pursuant to a tolling agreement between itself, Plaintiff, and non-party Comodo CA, Ltd. (D.E. 109.)

3   Record citations in this opinion are generally to Defendant's Statement of Material Facts Not in Dispute (D.E. 190-1) and Plaintiff's L.R. 56.1(a) Responsive Statement (D.E. 200), as well as the record citations contained therein.

4   One of the prerecorded messages was left during a call dialed manually, on May 18. (*See* D.E. 200 ¶¶ 57, 61.)

5   The motion to exclude is treated as a cross-motion to Plaintiff's motion for class certification. (D.E. 171.) The two motions largely overlap and are analyzed together in this opinion.

Case 3:24-cv-01866-JKM    Document 53-5    Filed 03/25/25    Page 9 of 10

**Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)**
2020 WL 525898

6   "[T]he term "capacity" in the TCPA's definition of a qualifying [ATDS] .... does not include every smartphone or computer that might be turned into an [ATDS] if properly reprogrammed, but does include devices whose autodialing features can be activated, as the D.C. Circuit suggested, by the equivalent of 'the simple flipping of a switch.' " *King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 696 (D.C. Cir. 2018)). The definition of "capacity" is not at issue here, where Defendant configured VICIdial to autodial numbers by internal rank and could modify the system with the press of a button to autodial numbers randomly or sequentially from a stored list. (D.E. 200 ¶¶ 39–41.)

7   The FCC's 2015 order broadened the definition of "capacity" as used in the TCPA by holding that equipment need not have the present capacity to function as an autodialer to trigger the TCPA. *In re Rules & Regulations Implementing the Telephone Consumer Act of 1991*, 30 FCC Rcd. 7961, 7974 (2015). Rather, it was sufficient if equipment had the "potential" capacity to be configured with autodialing functions, using modifications such as software changes (as opposed to a "simple flipping of a switch"). *Id.*; *ACA Int'l*, 885 F.3d at 696. The D.C. Circuit invalidated this provision of the FCC's 2015 order, reasoning that it was impermissibly expansive inasmuch as it would sweep even smartphones under the definition of an ATDS. *Id.* at 700; *see also O'Shea v. Am. Solar Sol., Inc.*, Civ. No. 14-894, 2018 WL 3217735, at *2 (S.D. Cal. July 2, 2018).

8   In *Fleming*, Judge McNulty analyzed the caselaw and decided "that when the D.C. Circuit vacated the 2015 FCC Declaratory Ruling it also necessarily set aside the parts of the previous 2003 and 2008 FCC Orders that ruled that a predictive dialer was impermissible under the TCPA." 342 F. Supp. 3d at 574 (citing various nationwide decisions, but relying primarily on *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 934 (N.D. Ill. 2018)). Judge McNulty then held that the statutory clause "using a random or sequential number generator" requires that an ATDS randomly or sequentially generate *numbers to be called*, not randomly or sequentially *call numbers that are stored*. *Id.* at 576 ("The phrase ... applies to the manner in which the numbers make their way onto the list—not to the manner in which the numbers are dialed once they are on the list[.]"). In contrast, Judge Martini found that the prior FCC orders were still valid and, thus, predictive dialers were ATDS under binding precedent. *Wilson*, 2018 WL 6600096, at *3 ("[T]he court in *ACA International* only struck down the *expanded interpretation* in the 2015 Order as unreasonable."); *see also Pinkus*, 319 F. Supp. 3d at 934–35 (taking the opposite view but citing cases nationwide and noting that "most district courts" have held that they are bound by prior FCC orders under which a predictive dialer is an ATDS even if it does not have the capacity to randomly or sequentially generate numbers to be dialed).

9   The Second Circuit did not address predictive dialers, but did note that no deference is owed to the FCC's pre-2015 orders after *ACA Int'l*. See *King*, 894 F.3d at 476–77 ("independently" interpreting the TCPA).

10  In a footnote, Defendant argues that *Susinno* should not apply because the defendant in that case did not challenge TCPA liability on the ground that a live person did not answer the call. (D.E. 190 at 25 n.8.) However, nothing in the opinion suggests that the Third Circuit would have decided differently if the argument had been raised. Indeed, the Third Circuit found that the single prerecorded voicemail was "the very harm that Congress sought to prevent, arising from prototypical conduct proscribed by the TCPA." *Susinno*, 862 F.3d at 351 (quotation marks omitted) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

11  Defendant presents no case law to support this narrow construction, and instead makes specious appeals to legislative history and an FTC advisory opinion. (D.E. 190 at 24–27.) However, the 2009 advisory FTC opinion on which Defendant relies expressly "applies only to the extent that actual company practices conform to the material submitted for review." Federal Trade Commission Staff Advisory Opinion/Comment Letter, 2009 WL 10650736, at *2 (Sept. 11, 2009). Those "practices" were those "in which a live human being continuously interacts with the recipient of a call in a two-way conversation, but is permitted to respond by selecting recorded statements." *Id.* The opinion stated that such practices were not prohibited by FTC regulations. *Id.* The opinion expressly does not apply to "prerecorded messages [that do] not involve a live agent who controls the content and continuity of what is said to respond to concerns, questions, comments – or demands – of the call recipient." *Id.* at *1. In other words, Defendant's actions are prohibited even by the FTC opinion to which it cites.

Case 3:24-cv-01866-JKM     Document 53-5     Filed 03/25/25     Page 10 of 10

**Johnson v. Comodo Group, Inc., Not Reported in Fed. Supp. (2020)**
2020 WL 525898

12    Defendant also argues that summary judgment should be granted because Plaintiff cannot recall if the voicemail he listened to was prerecorded. (D.E. 190 at 27–28.) However, Defendant is bound by the testimony of its Rule 30(b)(6) witness, who testified that Defendant left Plaintiff three prerecorded voicemails in May 2016. (D.E. 200 at ¶ 57.)

13    There is a split of authority on what constitutes "willful," with some courts adopting the lower standard that the conduct need only be voluntary (as opposed to inadvertent). *Echevvaria*, 2014 WL 929275, at *9. There is no question that Defendant's conduct was voluntary, but there is a genuine dispute of material fact as to whether Defendant knew or should have known that its conduct violated the TCPA. Thus, regardless of the standard applied, Defendant is not entitled to summary judgment.

14    Defendant also argues that putative class members cannot be reliably identified by Ms. Verkhovskaya's methodology because (1) cellular numbers may have been reassigned and (2) users and subscribers share the same cell phone numbers. (D.E. 158-1 at 28–33.) These arguments are addressed below in connection with the motion for class certification, and specifically, the issue of ascertainability.

---

**End of Document**                                             © 2025 Thomson Reuters. No claim to original U.S. Government Works.