2023 WL 2472606
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Gerard JACKSON, individually and on behalf of all others similarly situated, Plaintiff,
v.
MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP., Defendant.

No. 4:22-CV-01659
|
Signed March 10, 2023

**Attorneys and Law Firms**

Anthony I. Paronich, Broderick Law, P.C., Hingham, MA, Jeffrey M. Bower, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Candice Kearney, Lawrence Holmes, Offit Kurman, P.C., Philadelphia, PA, for Defendant.

**MEMORANDUM OPINION**

Matthew W. Brann, Chief United States District Judge

 *1  After receiving three unsolicited and unwanted telemarketing calls from the same company in the same day, Plaintiff Gerard Jackson sued the allegedly offending telemarketer—Defendant Meadowbrook Financial Mortgage Bankers Corp.—asserting violations of the Telephone Consumer Protection Act of 1991. Jackson brings this case, a putative class action, on behalf of himself and all similarly situated individuals. Although Jackson has yet to seek discovery or class certification, Meadowbrook has moved to dismiss the case, challenging the legality of Jackson's proposed class definition and arguing that Jackson doesn't have sufficient information to support a class action. But those challenges are either without merit or premature. Accordingly, Meadowbrook's motion is denied.

**I. BACKGROUND**

Gerard Jackson's telephone number has long been listed on the National Do Not Call Registry, a list consumers can voluntarily join to stop receiving telephone solicitations.[1] Nevertheless, Meadowbrook—a supplier of reverse mortgage services that makes telemarketing calls to generate leads—placed three separate telemarketing calls to Jackson on October 6, 2022.[2]

All three calls followed a similar script.[3] The callers asked Jackson if he was interested in a reverse mortgage and then explained that they were representatives of Meadowbrook seeking to sell the company's reverse mortgage services.[4] Jackson told all three callers that he did not want to receive any more calls.[5] According to Jackson, he neither requested nor consented to these calls.[6] Indeed, prior to October 6, 2022, Jackson's attorney had sent Meadowbrook what amounted to a cease-and-desist letter, claiming that prior calls from Meadowbrook to Jackson violated the Telephone Consumer Protection Act ("TCPA") and asking Meadowbrook to stop calling him.[7]

Later that month, Jackson sued Meadowbrook, alleging violations of the TCPA.[8] He initiated this claim on behalf of himself and all similarly situated individuals.[9] Jackson defines the class of persons he proposes to represent as follows:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (4) from four years prior the filing of the Complaint.[10]

In his Complaint, Jackson also details the questions of law and fact he considers "common" to him and the proposed class:

- "whether [Meadowbrook] systematically made multiple telephone calls to members of the National Do Not Call Registry Class";

- "whether [Meadowbrook] made calls to [Jackson] and members of [the proposed class] without first obtaining prior express written consent to make the calls";

- "whether [Meadowbrook's] conduct constitutes a violation of the TCPA"; and

- "whether members of [the proposed class] are entitled to treble damages based on the willfulness of [Meadowbrook's] conduct."[11]

**\*2**  In November 2022, Meadowbrook filed the instant motion challenging the sufficiency of the class allegations and therefore asking the Court to dismiss the Complaint.[12] Although Meadowbrook styles its motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it is, properly understood, a motion to strike the class allegations under Rule 12(f).[13] That motion has been fully briefed and is now ripe for disposition.[14]

## II. LAW

Defendants may move to strike class allegations prior to discovery.[15] However, striking such allegations is appropriate only in the "rare [cases] where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."[16] The difficulty in striking such allegations arises in part because "[t]o determine if the requirements of Rule 23 have been satisfied, a district court must conduct a 'rigorous analysis.' "[17] That may require the court to "delve beyond the pleadings to determine whether the requirements for class certification are satisfied" and "venture into the territory of a claim's merits and evaluate the nature of the evidence."[18] In most cases, "some level of discovery is essential to such an evaluation," and "allowing time for limited discovery supporting certification motions may be necessary for sound judicial administration."[19]

Motions to strike class allegations are therefore "disfavored," as "a motion for class certification is a more appropriate vehicle for arguments about class propriety."[20] Courts should grant motions to strike class allegations "only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23."[21]

## III. ANALYSIS

**\*3** Meadowbrook argues that the class allegations should be stricken for two reasons: (a) the proposed class constitutes an impermissible "fail-safe class"; and (b) the facts alleged do not satisfy the class action requirements under Federal Rule of Civil Procedure 23.[22] Neither argument justifies the relief Meadowbrook requests. The former is without merit, whereas the latter, while potentially meritorious, is premature.

### A. Fail-Safe Class

First, Meadowbrook argues that Jackson's proposed class constitutes a fail-safe class as "it is defined by the elements it is required to prove."[23] Put differently, because Jackson alleges that one question of law and fact common to the proposed class is "whether [Meadowbrook's] conduct constitutes a violation of the TCPA," Meadowbrook believes "the question of whether the class exists and the question of whether [Meadowbrook] is liable are one and the same."[24] According to Meadowbrook, the Court should therefore strike Jackson's class allegations and, consequently, dismiss the Complaint.[25] The Court disagrees.

A fail-safe class bases its membership upon the validity of putative members' legal claims, meaning that "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment."[26] The "principal concern" with fail-safe classes is ascertainability, an "essential prerequisite" for class actions brought under Rule 23(b)(3).[27] The ascertainability inquiry requires plaintiffs to demonstrate that their proposed classes are "defined with reference to objective criteria," and that a "reliable and administratively feasible mechanism" exists "for determining whether putative class members fall within [a given] class definition."[28] Class certification is not proper if the court is unable to identify class members "without extensive and individualized fact-finding or 'mini-trials' "—the issue inherent to fail-safe classes.[29]

Although the United States Court of Appeals for the Third Circuit has not explicitly considered whether fail-safe classes are permissible, it has approvingly cited rulings by other circuits that categorically disallow fail-safe classes.[30] Accordingly, district courts within this circuit have stricken class allegations when "the face of the complaint leaves little doubt" that the plaintiff's "class definitions create impermissible fail-safe classes."[31] That said, if "[i]t is not readily apparent whether [the proposed] class is fail-safe," the court should refrain from striking the class allegations and instead permit the parties to proceed to discovery.[32] That way, "the permissibility of [the] proposed class" can be determined "at the class-certification stage."[33]

**\*4** As support for its contention that Jackson's proposed class is fail-safe, Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania

in *Zarichny v. Complete Payment Recovery Services, Inc.*[34] There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent.[35] Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."[36]

Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."[37] But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[ ] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] ... which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[ ] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead on the defendant's "internal records that detail whether it received consent to text certain phone numbers."[38]

Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent."[39] Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable [ ]class"—that fall "outside of the legal requirements of the [TCPA]."[40]

**\*5** Similarly, in *O.P. Schuman & Sons, Inc. v. DJM Advisory Group, LLC*, the Honorable Juan R. Sánchez, now the Chief Judge of the Eastern District, denied the defendant's motion to strike class allegations for a proposed class consisting of "[a]ll persons who were sent one or more telephone facsimile messages ... that advertised the commercial availability or quality of [the defendant's] property, goods, or services" that "did not contain an opt-out notice that complied with federal law."[41] Citing *Abella*, Judge Sánchez held that "[i]t is not readily apparent whether [the proposed class] is fail-safe," as "it does not rely on ascertaining whether potential class members provided [the defendants] permission or invitation to send the facsimile."[42]

And, earlier this year, in *Shelton v. Absolute Home Mortgage Corp.*, the Honorable Nitza I. Quiñones Alejandro of the Eastern District denied a motion to dismiss the class action component of a TCPA claim brought on behalf of all persons who received a telemarketing call on or behalf of the defendant despite listing their numbers on the Do Not Call Registry.[43] There, Judge Quiñones Alejandro rejected the defendants' argument that the proposed class was impermissibly fail-safe, explaining that unlike *Zarichny*, the proposed class at issue "does not include the referenced 'without prior consent.' "[44]

Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition."[45] The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]."[46] Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

Whether Jackson's proposed class ultimately passes muster and warrants certification remains to be seen. But at this early stage, it is not "readily apparent" that the proposed class is

fail-safe.[47] Therefore, that is not a valid basis for striking the class allegations and dismissing the Complaint.

### B. Class Action Requirements

Next, Meadowbrook argues that Jackson has not alleged facts establishing either "the requirements of Federal Rule of Civil Procedure 23(a) to sustain a class" or that a class action is "the superior method to adjudicate this controversy, as required by Rule 23(b)."[48] Because both are required, Meadowbrook contends that the class allegations should be stricken.[49] This argument, however, is premature, as Jackson has yet to seek discovery or move for class certification.

Under Rule 23(a), a plaintiff seeking class certification must establish four requirements:

(1) "the class is so numerous that joinder of all members is impracticable" (numerosity);

(2) "there are questions of law or fact common to the class" (commonality);

(3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and

(4) "the representative parties will fairly and adequately protect the interest of the class" (adequacy of representation).[50]

\*6 In addition, "plaintiffs must meet one of the requirements of Rule 23(b)."[51] Relevant here, Rule 23(b)(3) contains two elements: predominance and superiority.[52] To satisfy these elements, "a plaintiff must show that 'questions of law or fact common to the members of the class predominate' over questions affecting only individual members and that a class action is 'superior to other available methods for the fair and efficient adjudication of the controversy.' "[53]

That said, the Third Circuit has warned district courts about "decid[ing] the class certification issue" when there has "been no motion for class certification and no discovery," explaining that such rulings are typically "premature."[54] On this, the Court finds particularly instructive the Third Circuit's ruling in *Landsman & Funk PC v. Skinder-Strauss Associates*.[55] There, the Third Circuit consolidated for appeal three cases brought in the United States District Court for the District of New Jersey under the TCPA, including a ruling by the Honorable William J. Martini in *Goodrich Management Corp. v. Afgo Mechanical Services, Inc.* ("*Afgo*").[56]

In *Afgo*, the defendant moved to dismiss the TCPA class action because it did not "satisfy the requirements for class certification under [Rule 23]."[57] Judge Martini granted the motion, explaining that the plaintiff could not satisfy either the elements of Rule 23(a) or Rule 23(b).[58] For the former, Judge Martini ruled that there were "too many crucial factual determinations to be made with respect to claims and defenses that will vary from party to party"—in particular, the "consent to receive faxes and the existence of a prior business relationship with [the defendant]."[59] For the latter, Judge Martini held that common issues of fact and law did not predominate, reiterating that there were "numerous issues ... that pertain only to individual plaintiffs and not to the class as a whole."[60] And Judge Martini concluded that "a class action would in fact be an inferior means of adjudicating this controversy" because "[a]n individual plaintiff who files a TCPA action in small claims court can typically receive damages quickly and without incurring legal fees."[61]

On appeal, the Third Circuit rejected Judge Martini's analysis and vacated his order.[62] At the outset, the Third Circuit held that "delving into the propriety of class certification was the wrong focus at that early stage of the proceeding," as there "had been no motion for class certification and no discovery."[63] The Third Circuit explained that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of faxes."[64] Significantly, the Third Circuit emphasized that "differences among plaintiffs' consent may be defeated by common proof developed in discovery."[65] And even if they can't, that may not settle the matter in a defendant's favor: "it is not clear that, as a matter of law, differences regarding consent are sufficient to defeat class certification."[66]

\*7 Further, the Third Circuit found Judge Martini's holding on superiority unpersuasive.[67] The Third Circuit noted that if Congress "wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in [the Class Action Fairness Act of 2005], which specifically lists certain types of statutory claims that could not be brought

as class actions."[68] It did not do so.[69] And the Third Circuit explained that "[a]lthough individual actions under the TCPA may be easier to bring in small claims court than other types of cases, that does not necessarily undermine the greater efficiency of adjudicating disputes involving 10,000 faxes as a single class action."[70] Endorsing a position raised by the plaintiff, the Third Circuit found that there is "little reason to believe that individual actions are automatically efficient; plaintiffs can still face protracted litigation when they sue individually."[71]

Here, Meadowbrook raises the same arguments against class certification that the Third Circuit rejected in *Landsman*. For the Rule 23(a) factors, Meadowbrook's primary argument concerns commonality and typicality. Meadowbrook asserts that Jackson's proposed class "fails as a matter of law because there is no common issue that can be resolved without a factual determination being made as to each class member," emphasizing that to determine whether potential class members do, in fact, qualify for the class, the Court will need "to make an individual inquiry" into their placement on the National Do Not Call Registry, the calls they received, and what consent, if any, they gave.[72] Relatedly, Meadowbrook contends that Jackson's class allegations do not satisfy the typicality requirement because although he alleges that Meadowbrook "made potentially thousands of separate calls to separate potential class members," he "has not alleged that these calls were placed at the same time, by the same caller, or featured the same conversation."[73]

But as the Third Circuit explained in *Landsman*, issues concerning the relationship between the alleged telemarketer and the putative class members—in particular, those concerning consent—are "difficult to resolve without discovery."[74] The differences Meadowbrook presents "may be defeated by common proof developed in discovery," and even if they're not, those differences may not be "sufficient to defeat class certification."[75] In any event, it is simply too early in the litigation to make that judgment.[76]

For the Rule 23(b) superiority requirement, Meadowbrook argues that Congress enacted the TCPA "to encourage individual causes of action, granting adequate relief without requiring a plaintiff to hire counsel."[77] To Meadowbrook, because plaintiffs seeking redress for alleged violations of the TCPA can do so in small claims or magisterial district courts—"with expediency and minimal cost"—a class action "is not the superior alternative."[78] But as Jackson explains, "courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context" because "[m]ost of those who received these unwanted calls would not seek relief on an individual basis": the cost of doing so "would not be practical or economical given the potential size of individual awards."[79] Indeed, that is the precise position the Third Circuit adopted in *Landsman*.[80]

### IV. CONCLUSION

*8 Class action lawsuits, as with most things in life, typically unfold according to a standard procedure. First, an allegedly representative plaintiff files a complaint. The parties then engage in discovery relevant to the class determination. After that, the plaintiff moves for class certification. And then the court, engaging in the required rigorous analysis, rules on the propriety of the proposed class.

With its motion to dismiss, Meadowbrook seeks to circumvent that standard procedure and "slip through the backdoor."[81] But there is a reason why the standard procedure is standard. Because Meadowbrook's proffered bases for dismissal are either meritless or premature, the motion is denied.

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2472606

Footnotes

1      Doc. 1 (Compl.) ¶¶ 12, 18.

2      *Id.* ¶¶ 15–16, 19.

3      *Id.* ¶ 21.

| | |
|---|---|
| 4 | *Id.* ¶¶ 22–23. |
| 5 | *Id.* ¶ 24. |
| 6 | *Id.* ¶ 28. |
| 7 | *Id.* ¶ 20. |
| 8 | *Id.* ¶¶ 42–46. |
| 9 | *Id.* ¶ 30. |
| 10 | *Id.* ¶ 31. |
| 11 | *Id.* ¶ 37. |
| 14 | Doc. 7 (Meadowbrook Br.); Doc. 8 (Jackson Opp.); Doc. 9 (Meadowbrook Reply). |
| 13 | Meadowbrook insists its motion is a Rule 12(b)(6) motion to dismiss, but the legal standard it invokes, *see* Doc. 7 (Meadowbrook Br.) at 5 ("[w]here it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may *move to strike* the class allegations before a motion for class certification is filed") (emphasis added), the arguments it presents, *see id.* at 4 (asserting that Jackson "has not pleaded a case capable of class-wide resolution" and "cannot establish the requirements ... to sustain a class"), and the principal case it relies on, *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610 (E.D. Pa. 2015), signal otherwise. Regardless of whether the motion, if granted, would result in dismissal, the nature and legal basis of the motion affirm that it is, in truth, a motion to strike the class allegations. The Court must therefore apply the legal standard for motions to strike under Rule 12(f). Meadowbrook cannot mandate a more permissive legal standard and elide precedential rulings unhospitable to its position by simply characterizing the motion as something other than what it is. |
| 12 | Doc. 5 (Mot. to Dismiss). |
| 15 | *See* Fed. R. Civ. P. 12(f). |
| 16 | *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93 n.30 (3d Cir. 2011), *opinion vacated in part on other grounds*, 2012 WL 2052685 (3d Cir. Apr. 17, 2012). |
| 17 | *Id.* at 93 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 154, 167 (3d Cir. 2008)). 4 |
| 18 | *Id.* (internal quotation marks and citations omitted). |
| 19 | *Id.* (brackets, ellipses, and internal quotation marks omitted). |
| 20 | *Luciano v. Teachers Insurance and Annuity Association of America – College Retirement Equities Fund*, 2022 WL 1044969, at *3 (D.N.J. Apr. 7, 2022). |
| 21 | *Id.* (internal quotation marks omitted). |
| 22 | Doc. 7 (Meadowbrook Br.) at 1. |
| 23 | *Id.* at 8. |
| 24 | *Id.* |
| 25 | *Id.* at 5. |
| 26 | *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). |

Case 3:24-cv-01866-JKM    Document 53-6    Filed 03/25/25    Page 7 of 9
Jackson v. Meadowbrook Financial Mortgage Bankers Corp., Not Reported in Fed....
2023 WL 2472606

27  *Johnson v. Ally Financial Inc.*, 2017 WL 3433689, at *3 (M.D. Pa. Aug. 10, 2017) (Connor, C.J.) (citing *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012)).

28  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) (citation omitted).

29  *Marcus*, 687 F.3d at 593.

30  See *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) (citing *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015)); *Messner*, 669 F.3d at 825).

31  *Zarichny*, 80 F. Supp. 3d at 624 (citing *Landsman*, 640 F.3d at 93 n.30).

32  *O.P. Schuman & Sons, Inc. v. DJM Advisory Group, LLC*, 2017 WL 634069, at *4 (E.D. Pa. Feb. 16, 2017).

33  *Id.*

34  80 F. Supp. 3d at 610.

35  *Id.* at 623. The plaintiff brought separate claims on behalf of a second putative class: people who received one or more telephone calls from the defendants to whom the defendants did not send written notice as required by the [Fair Debt Collection Practices Act]." *Id.*

36  *Zarichny*, 80 F. Supp. 3d at 625–26; *accord Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *8–9 (S.D. Ohio May 7, 2014) (granting motion to strike class allegations because "[e]ach of the [p]laintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an [automated dialing system]," making them fail-safe classes as they "consist solely of persons who can establish that defendant violated the TCPA") (internal quotation marks, brackets in the original, and citations omitted).

37  2015 WL 6599747, at *3–4 (E.D. Pa. Oct. 30, 2015).

38  *Id.* at *4.

39  2017 WL 3433689 at *1, 4.

40  *Id.* at *4.

41  2017 WL 634069 at *1, 5.

42  *Id.* at *4 (cleaned up).

43  Case No. 22-1934, Doc. 17 (E.D. Pa. Jan. 24, 2023).

44  *Id.* at 2 n.1.

45  Doc. 8 (Jackson Opp.) at 10.

46  *Johnson*, 2017 WL 3433689 at *4.

47  *O.P. Schuman*, 2017 WL 634069 at *4.

48  Doc. 7 (Meadowbrook Br.) at 4.

49  *Id.* at 5.

50  Fed. R. Civ. P. 23(a).

51  *Landsman*, 640 F.3d at 92 n.28.

52    *Id.*

53    *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

54    *Id.* at 93; *see also Shelton*, Case No. 22-1934, Doc. 17 (noting that courts generally "decide whether a plaintiff has met the requirements of Rule 23 on a motion for class certification, rather than a motion to dismiss," Judge Quiñones Alejandro "decline[d] to stray" from the general practice); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 680 (E.D. Pa. 2011) ("[C]ourts within the Third Circuit have ... [found] a motion to strike class allegations premature where a motion for class certification has not been made and denied.").

55    640 F.3d at 90–95.

56    2009 WL 2602200 (D.N.J. Aug. 24, 2009), *vacated by Landsman*, 640 F.3d at 90–95.

57    *Id.* at *4.

58    *Id.* at *4–6.

59    *Id.* at *5.

60    *Id.*

61    *Id.* at *6.

62    *Landsman*, 640 F.3d at 92–93.

63    *Id.*

64    *Id.* at 93–94.

65    *Id.* at 94.

66    *Id.*

67    *Id.* at 94–95.

68    *Id.*

69    *Id.*

70    *Id.* at 95.

71    *Id.*

72    Doc. 7 (Meadowbrook Br.) at 11.

73    *Id.* at 8.

74    640 F.3d at 93–94.

75    *Id.* at 94.

76    Separately, Meadowbrook asserts that Jackson cannot satisfy the numerosity requirement because "[o]ther than the allegation that he himself received three unwelcome calls, [Jackson] makes no allegations that any other individuals have received similar calls," and "no one has joined as an additional class representative." Doc. 7 (Meadowbrook Br.) at 9. The Court finds this similarly unpersuasive. As Jackson contends, his proposed class definition satisfies all requirements for a TCPA claim, and his factual allegations—namely, that he received three telemarketing calls on the same day, all of which followed a script, all of which came after his attorney sent Meadowbrook a cease-and-desist letter, Doc. 1 (Compl.)

¶¶ 19–21—"make clear [the] *en masse* nature of the calling." Doc. 8 (Jackson Opp.) at 11–12. Whether Jackson can substantiate those allegations, discovery will reveal.

77   Doc. 7 (Meadowbrook Br.) at 14.

78   *Id.* at 14–15.

79   Doc. 8 (Jackson Opp.) at 15 (citing *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 753 (2012)).

80   640 F.3d at 93–94 (rejecting the argument that individual TCPA actions in small claims court are inherently superior to joint resolution via class action).

81   *Martin*, 765 F. Supp. 2d at 680 (citing *Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007)).

---

**End of Document**                                           © 2025 Thomson Reuters. No claim to original U.S. Government Works.