Case 3:24-cv-01866-JKM    Document 53-11    Filed 03/25/25    Page 1 of 10

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

2022 WL 4586407
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brian WATSON, et al., Plaintiffs,
v.
MANHATTAN LUXURY AUTOMOBILES, INC., Defendant.

20 Civ. 4572 (LGS)
|
Signed September 29, 2022

**Attorneys and Law Firms**

Elizabeth Easley Apostola, Daniel Zemel, Zemel Law LLC, Patterson, NJ, for Plaintiffs Brian Watson, Daniel Samarghitan.

Daniel Zemel, Zemel Law LLC, Patterson, NJ, for Plaintiffs Annmarie Greene, Jose Espinal, Lymell Jackson.

Jason Marc Myers, Thomas Arthur Leghorn, London Fischer LLP, New York, NY, Salvatore A. Giampiccolo, Stephanie Lopez, Stevens & Lee, Elmwood Park, NJ, for Defendant Manhattan Luxury Automobiles, Inc.

CDK Global, LLC, Pro Se.

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

\*1 Plaintiffs Brian Watson, Danial Samarghitan, Annmarie Greene, Jose Espinal and Lymell Jackson bring this action against Defendant Manhattan Luxury Automobiles, Inc., alleging that Defendant's practice of sending unsolicited text messages to consumers violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA") and regulations promulgated thereunder. Plaintiffs move to certify three classes pursuant to Federal Rule of Civil Procedure 23(b)(3) and to preclude testimony by Defendant's expert witnesses. Defendant moves to preclude testimony by Plaintiffs' expert witnesses. For the reasons stated below, Plaintiffs' motion for class certification is granted in part and denied in part; Plaintiffs' *Daubert* motion is granted in part and denied in part; and Defendant's *Daubert* motions are denied.

**I. BACKGROUND**

**A. Factual Background**

The facts below are taken from the parties' submissions in connection with the pending motions, and factual disputes are resolved as necessary for the disposition of the motions. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011); *Clune v. Barry*, No. 16 Civ. 4441, 2019 WL 3369455, at \*2 (S.D.N.Y. July 26, 2019).

In January 2017, the car dealership Honda of Manhattan ("HOM") closed. HOM agreed with its "sister dealership," the Defendant in this case, that Defendant would offer service to HOM customers. On January 31, 2017, HOM sent its customers emails and text messages notifying them that Defendant could service their vehicles, and those communications contained an option to opt of future communications. Some HOM customers who had purchased or leased vehicles from HOM had signed contracts purportedly agreeing that HOM could contact them and share certain personal information with certain third parties. Defendant then sent text messages offering vehicle maintenance, service and inspections to HOM customers who did not affirmatively opt out of communications. Defendant used a platform called Zipwhip to send the text messages, and the parties dispute many details of how the Zipwhip platform worked. Many HOM customers received more than one message. After receiving messages, some named Plaintiffs went on to discuss and even purchase services, and others replied that they were not interested. None received a message after opting out.

**B. Proposed Classes**

Plaintiffs seek to certify the "ATDS Class" consisting of all HOM customers who received a text message from Defendant to a non-business cell phone, sent using the Zipwhip platform, with certain content, within four years of the action being filed. Plaintiffs allege on behalf of themselves and the ATDS Class that Defendant violated 47 U.S.C. § 227(b), which prohibits certain uses of an Automatic Telephone Dialing System ("ATDS") and creates a private right of action.

Plaintiffs also seek to certify the National Do-Not-Call Registry Class ("NDNCR Class"), consisting of all members of the ATDS Class who received at least two such text messages in a 12-month period when their phone numbers had been registered on the National Do-Not-Call Registry

Case 3:24-cv-01866-JKM    Document 53-11    Filed 03/25/25    Page 2 of 10

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

("NDNCR") for at least thirty-two days. Plaintiffs allege that 47 U.S.C. § 227(c)(3)(F), (5), and the regulations thereunder, 47 C.F.R. § 64.1200(c), prohibit such messages and provide a private right of action to anyone who receives more than one such message.

**\*2** Plaintiffs also seek to certify the Internal Do-Not-Call List Class ("IDNC Class"), consisting of all members of the ATDS Class who received messages while Defendant failed to institute procedures to maintain a list of persons who requested not to receive telemarketing calls. Plaintiffs allege that 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) prohibit such messages and provide a private right of action.

## II. DISCUSSION

**A.** *Daubert* **Motions**

Plaintiffs and Defendant have each submitted expert reports in support of their respective positions on class certification and on the merits. Plaintiffs' expert Anya Verkhovskaya opines on a methodology for identifying class members. Plaintiffs' expert Randall Snyder opines on technical characteristics of the Zipwhip platform that are relevant to whether it is an ATDS. Defendant's expert Ken Sponsler purports to rebut both. Each party has filed a *Daubert* motion to preclude the others' witness(es). For the reasons below, Plaintiffs' *Daubert* motion is granted in part and denied in part, and Defendant's *Daubert* motions are denied.

Federal Rule of Evidence 702, which governs admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [ ] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts play a " 'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (cleaned up); *see also In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021). "[A] slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *United States v. Jones*, 965 F.3d 149, 160 (2d Cir. 2020) (internal quotation marks omitted). The party proffering the expert bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *Id.* at 161.

The *Daubert* and Rule 702 concepts of "gatekeeping" and admissibility are ill suited for a class certification motion, which is determined by the Court. There is no admission or exclusion of testimony before a jury and no "gate" requiring threshold reliability determinations. In sum, every objection goes to the weight of the testimony. The Supreme Court has offered "limited dicta suggesting that a *Daubert* analysis may be required at least in some circumstances." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 (2d Cir. 2013); *accord In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D 5, 28-29 (S.D.N.Y. 2020). Because of these dicta, because Rule 702 provides a useful framework for evaluating expert testimony and because the parties have filed *Daubert* motions, this Opinion briefly addresses those motions separately before turning to Plaintiffs' class certification motion.

**1. Defendant's Motion to Preclude Snyder**

**\*3** Defendant's motion to preclude Snyder is irrelevant to class certification because Snyder opines solely on whether the technical features of Defendant's Zipwhip system are consistent with the statutory definition of an ATDS. Whatever the answer may be to that merits question, it is a common question with a common answer for purposes of class certification. *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). However, because the parties intend to proceed with summary judgment motions following the resolution of class certification, Defendant's motion is addressed below.

Case 3:24-cv-01866-JKM   Document 53-11   Filed 03/25/25   Page 3 of 10

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

First, Defendant's request to preclude Snyder's January 2021 report is denied as moot because Plaintiffs are relying exclusively on Snyder's June 2021 report.

Second, Defendant argues Snyder's June 2021 report is unreliable and may confuse a jury because Snyder analyzed the wrong version of the Zipwhip system. Contrary to Defendant's characterization, Snyder testified that he used only documentation applicable to the correct version when that was possible to discern, and that he reviewed and accounted for testimony by Zipwhip's CTO and Co-Founder, James Lapic in doing so. The fact that Defendant only read technical documentation and did not test the system, and that Defendant did not agree in every respect with Lapic's conclusions goes to weight, not admissibility.

Defendant's remaining arguments are similarly unavailing. Snyder's testimony that he was providing "lay" opinions meant only that his were not *legal* opinions on the meaning of the TCPA. Presumably, if Snyder had offered legal opinions, Defendant would move to preclude on that ground. Defendant's argument that courts in several other cases have precluded or criticized Snyder's testimony, without attempting to analogize to this case, is unpersuasive. Even if all seven of the cases Defendant cites were analogous in some way, Snyder's CV of hundreds of prior expert engagements is over 100 pages long. The weight of the evidence favors Plaintiffs.

In its reply, Defendant points to particular paragraphs and lines in Snyder's testimony and report and argues that they are not supported by the evidence on which Snyder relied. Because Snyder's report is not excludable in full, and none of the disputed points is relevant to the present motion, it would be premature to resolve those merits issues at this stage. Defendant may renew these arguments at summary judgment and/or in a motion *in limine*. See *Glasser v. Hilton Grand Vacations Co.*, 341 F. Supp. 3d 1305, 1312-13 (M.D. Fla. 2018) (addressing Snyder's opinions at summary judgment). As with Sponsler's report, discussed below, the Court will disregard any of Snyder's opinions that offer mere *ipse dixit* or legal conclusions on whether the Zipwhip system meets the legal definition of an ATDS. See *Marshall v. CBE Grp., Inc.*, No. 16 Civ. 2406, 2018 WL 1567852, at *3 n.2 (D. Nev. Mar. 30, 2018) (disregarding similar opinions of Snyder's).

**2. Defendant's Motion to Preclude Verkhovskaya**

Defendant's motion to preclude Verkhovskaya is denied. Defendant mounts four independent arguments for preclusion. One is moot and the other three are unpersuasive.

First, Defendant moves to preclude Verkhovskaya's identification of members of the IDNC Class as unreliable. This motion is denied as moot because, as discussed below, the IDNC claims are dismissed, and the motion to certify the IDNC Class is denied.

Second, Defendant argues that Verkhovskaya's methodology to identify class members is unreliable because it has been tweaked several times, often in response to Plaintiffs' experts pointing out errors. Without resolving the parties' dispute over who is to blame for the number of reports, the fact that Verkhovskaya refined her methodology and fixed supposed problems suggests it is now more rather than less reliable. Defendant points to individual phone numbers or class members who may have been misclassified at some point, but that does not undermine the methodology. "[P]laintiffs need not precisely enumerate the class members." *Basso v. N.Y. Univ.*, 363 F. Supp. 3d 413, 421 (S.D.N.Y. 2019) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *see In re Petrobras Sec.*, 862 F.3d 250, 266 n.16 (2d Cir. 2017) ("Of course, identifiable does not mean identified; ascertainability does not require a complete list of class members at the certification stage." (cleaned up)).

 *4  Third, Defendant argues that Verkhovskaya cannot distinguish between residential and business phone numbers, and that LexisNexis does not provide sufficiently accurate data to do so. This argument was persuasively rejected in the only case cited by Defendant. See *Chinitz v. Intero Real Est. Servs.*, No. 18 Civ. 5623, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020). Verkhovskaya's approach of assuming that most unpublished numbers are residential is sound for the reason Verkhovskaya gives: Most businesses publish their phone numbers because they want to bring in business, making them more likely to be found in commercial databases than non-business numbers. That this step in Verkhovskaya's methodology may be accomplished in part through manual review and is not automated is irrelevant.

Fourth, Defendant's argument that Verkhovskaya's "reverse lookup" or "reverse append" methodology is unreliable is unpersuasive. The progression of Verkhovskaya's reports shows that the need to reverse-append data has diminished as more information on the class has become available. Verkhovskaya's methodology also uses more sources than the

Case 3:24-cv-01866-JKM   Document 53-11   Filed 03/25/25   Page 4 of 10

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

process disapproved in *Hunter v. Time Warner Cable Inc.*, No. 15 Civ. 6445, 2019 WL 3812063, at *10-12 (S.D.N.Y. Aug. 14, 2019), including backup sources if LexisNexis data is lacking. This methodology has withstood *Daubert* motions in other cases more analogous than *Hunter*. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, No. 14 Civ. 333, 2015 WL 5227693, at *11 (M.D.N.C. Sept. 8, 2015).

### 3. Plaintiffs' Motion to Preclude Sponsler

Plaintiffs' motion to preclude Sponsler's opinions is granted in part and denied in part. Plaintiffs' motion to preclude Sponsler's first opinion, on whether the Zipwhip platform is an ATDS, is granted. Assuming, without deciding, that Sponsler is qualified to opine on this issue, his opinions are not "based upon reliable data and methodology" nor will they "assist the trier of fact." *Nimely*, 414 F.3d at 397. Sponsler lists several documents that he purportedly reviewed, but there is no indication as to most that they form the basis for his ATDS opinions. Instead, most of this portion of Sponsler's report restates Lapic's characterization of the Zipwhip platform, which will not help the jury more than Lapic's testimony alone. Sponsler buttresses Lapic's testimony by describing one experience using Zipwhip. That is insufficient to show what the platform *cannot* do, and this testimony could mislead the jury. Other portions of Sponsler's report are either irrelevant history or unsupported assertions. Still other passages provide basic facts that do not require expert testimony -- e.g., that a smartphone user can input contacts into his or her phone, "select the contacts that will receive the text, and then manually send texts" -- to support policy arguments about the proper interpretation of the TCPA. Sponsler's rebuttal report is an extended legal argument that Plaintiffs' expert, Snyder, misunderstands the Supreme Court's decision in *Facebook Inc. v. Duguid*. An expert report is not the appropriate vehicle for legal argument. Sponsler's "Opinion One" is precluded in full.

Sponsler's second opinion is also precluded because it "will not assist the trier of fact." *Nimely*, 414 F.3d at 397. Sponsler opines that there is no way to determine who "received" a text message, based on the common-sense proposition that no database can tell you whether a person actually read a given text message. The opinion is improper because it seems to assert a legal proposition that a message must be "read" to be "received," and because it states an obvious factual proposition.

Plaintiffs' motion is denied to the extent Plaintiffs seek to preclude Sponsler's third opinion, which is offered to rebut Verkhovskaya's opinions. Contrary to Plaintiffs' cursory argument about Sponsler's qualifications, his extensive experience in the telemarketing industry, and specifically with the NDNCR, qualifies him to opine on the many difficulties of matching cell phone numbers to individual human beings, and on the prevalence of business phone numbers on the NDNCR. Plaintiffs' remaining arguments about whether Sponsler's opinions effectively rebut Verkhovskaya's go to their weight, not admissibility.

### B. Standing

**\*5** Neither Article III standing nor "statutory standing" is an impediment to certifying the ATDS Class and the NDNCR Class. Each of the named Plaintiffs has standing to seek relief for Defendant's alleged use of an ATDS, and Plaintiff Espinal has standing to seek relief for Defendant's alleged violation of the NDNCR regulations. *See Kachalsky v. County of Westchester*, 701 F.3d 81, 84 n.2 (2d Cir. 2012) (holding that only one named plaintiff need have standing with respect to each claim). Each of the ATDS and NDNCR classes is "defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). However, none of the named Plaintiffs has Article III standing to seek relief for Defendant's alleged violation of the IDNC regulations. The IDNC claims are dismissed for lack of standing, and the motion to certify the IDNC Class is denied as moot.

"Article III standing has three elements: (i) 'the plaintiff must have suffered an injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (ii) 'there must be a causal connection between the injury and the conduct complaint of'; and (iii) 'it must be likely ... that the injury will be redressed by a favorable judicial decision.' *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)), *cert. denied*, 142 S. Ct. 757 (2022). Standing must be shown for each claim. *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

What has, in the past, "been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.' " *Irvin v. Harris*, 944 F.3d 63, 68 n.4 (2d Cir. 2019) (quoting *Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016), in turn quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).

Because Defendant has framed some of its arguments about whether Plaintiffs have statutory causes of action under the old heading of "statutory standing," those arguments are addressed in this section.

### 1. The ATDS Class

As to the ATDS Class, Plaintiffs' receipt of allegedly unwanted text messages is itself injury-in-fact sufficient to confer Article III standing. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93-95 (2d Cir. 2019). The "nuisance and privacy invasion" inherent in receiving such messages were "the harms Congress identified when enacting the TCPA" and "the very injury [the TCPA] is intended to prevent." *Id.* at 93. Because Plaintiffs allegedly received unwanted text messages, "they 'need not allege any *additional* harm beyond the one Congress has identified.' " *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)). Defendant's argument that Plaintiffs lack standing because Defendant's Zipwhip platform is not in fact an ATDS is a merits argument, not a standing challenge. *See id.* at 94 n.6 (holding that defendant's argument about "whether the text messages in question were actually sent by an ATDS" is a merits argument, not standing, and declining to address it at class certification).

Defendant also argues that the classes cannot be certified because some class members may have consented or failed to object to receiving messages and thus lack standing. *See Denney*, 443 F.3d 253 at 264. As discussed below, Plaintiffs dispute whether the forms they signed or their failure to "opt out" constitutes "prior express consent" under the TCPA. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain communications "without the prior express consent of the" receiving party). Defendant's argument is, "in other words, plaintiffs were not injured because their claims are meritless." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018); *see Melito*, 923 F.3d at 94 n.6 (declining to address defendant's argument about "whether absent class members ineffectively revoked consent" because, though "though framed as [a] challenge[ ] to the district court's subject-matter jurisdiction, [it] actually attack[s] the merits of Plaintiffs' claims"). Defendant's argument fails because a court may not "decide the merits of the claim en route to determining its justiciability." *Dubuisson*, 887 F.3d at 574 (holding that a court must "assum[e] [plaintiffs] would be successful on the merits ... for purposes of [the] threshold jurisdictional analysis"); *see Denney*, 443 F.3d at 264 (noting that "injury-in-fact" for standing purposes "need not be capable of sustaining a valid cause of action under applicable ... law").

**\*6** Plaintiffs have met their "burden by alleging harm in the form of" text messages received from an allegedly illegal ATDS. *Dubuisson*, 887 F.3d at 575. "[T]hey have standing to pursue their ... claims irrespective of the fact that defendants propose a reading of a statute that would, if accepted, undermine the merits of plaintiffs' claims." *Id.* Even if lack of consent were necessary to have suffered an injury in fact, standing is not a barrier to class certification because Plaintiffs allege that they and class members did not consent, and the merits of Defendant's class-wide consent arguments can be resolved on a collective basis at a later stage of the litigation. *See Melito*, 923 F.3d at 94 n.6; *Denney*, 443 F.3d at 264-65; *Dubuisson*, 887 F.3d at 574-75.[1]

### 2. The NDNCR Class

Neither Article III nor "statutory" standing is a barrier to certification of the NDNCR class. Plaintiff Espinal, the only proffered representative plaintiff for this class, received unwanted text messages and therefore has Article III standing. *See Melito*, 923 F.3d at 93-95. Espinal's standing is sufficient to meet the jurisdictional requirement of Article III standing. *See Kachalsky*, 701 F.3d at 84 n.2. Even assuming consent is relevant to an NDNCR claim, which Plaintiffs dispute, consent does not defeat standing for the reasons discussed above.

Defendant argues that Plaintiffs lack "statutory standing" because one must have received more than one unwanted text message in the relevant period to bring suit under the NDNCR regulation. *See* 47 U.S.C. § 227(c)(5). This argument is unavailing because Plaintiff Espinal, the only named plaintiff offered to represent the NDNCR Class, undisputedly received more than one text message in the relevant time period. The NDNCR Class is defined to include only similarly situated persons who also received more than one message in the relevant period and therefore have a cause of action under the statute.

Defendant's other arguments that Espinal lacks a cause of action are similarly unpersuasive. That Espinal's name was not on the phone account or was not "assigned" the number is irrelevant. Espinal used the phone and received the unwanted messages. The statute provides a cause of action to "[a] person who has received" unwanted communications. *Id.*

Defendant points out that a different cause of action under the TCPA arises when a party receives a phone call that they pay for, § 227(b)(1)(A)(iii), but that is irrelevant to standing, whether constitutional or "statutory," to assert an NDNCR claim. See *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press...."). Defendant's argument that "Espinal never objected" to receiving automated texts is meritless, since Espinal testified that he registered with the NDNCR. Defendant asserts that Espinal does not have "documentation that he registered with the NDNCR," but Espinal's sworn testimony is sufficient evidence of his registration at this stage.

### 3. The Putative IDNC Class

Turning to the IDNC class, Plaintiffs have failed to show that any injury they suffered is traceable to a violation of the IDNC rules. The TCPA and its regulations prohibit solicitations unless the "entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that ... entity." 47 C.F.R. § 64.1200(d). Defendant asserts, and Plaintiffs do not dispute, that no Plaintiff ever requested not to receive messages "made by or on behalf of" Defendant prior to receiving a message. Thus, even if Defendant had complied perfectly with the IDNC provision of the TCPA, Plaintiffs still would have received those messages. Plaintiffs' injuries are thus not traceable to that violation, and Plaintiffs lack standing to bring this claim. See *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271-72 (11th Cir. 2019).

**\*7** Plaintiffs' request that their IDNC claims be remanded to state court and not dismissed is denied because the Court lacks statutory authority to remand. "An ordinary reading of" 28 U.S.C. § 1447(c)[2] "indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998). Section 1447(c) is not most naturally read to authorize severance and remand of individual claims, particularly in light of the specific grant of authority in § 1441(c) to "sever" unremovable claims and "remand the severed claims" at the time of removal. See *City of Almaty v. Ablyazov*, No. 15 Civ. 5345, 2021 WL 1180058, at \*6 (S.D.N.Y. Mar. 29, 2021). The IDNC claims are dismissed for lack of standing, and the motion to certify the IDNC Class is denied as moot. Because the IDNC claims fail for lack of Article III standing, it is unnecessary to consider Defendant's statutory standing arguments.

### C. Class Certification

Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Where class certification is sought pursuant to Rule 23(b)(3), a plaintiff must also show (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Second Circuit recognizes " 'an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' " *Petrobras*, 862 F.3d at 260 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)); *accord Basso*, 363 F. Supp. 3d at 420.

Courts give Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (citation omitted); *accord B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17 Civ. 2738, 2021 WL 234550, at \*9 (E.D.N.Y. Jan. 19, 2021). Plaintiffs must establish by a preponderance of the evidence that Rule 23's requirements are met. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016); *accord In re Perrigo Co. Sec. Litig.*, 493 F. Supp. 3d 291, 294 (S.D.N.Y. 2020).

Plaintiffs' motion to certify the IDNC Class is denied for lack of standing as discussed above, and Plaintiffs' motion to certify the ATDS and NDNCR Classes is granted for the reasons discussed below.

### 1. Class Redefinition

Plaintiffs' decision to seek certification of a different class than proposed in the Amended Complaint is not a reason to

Case 3:24-cv-01866-JKM   Document 53-11   Filed 03/25/25   Page 7 of 10
Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

deny certification. The Court's authority to reform the class and create subclasses on its own motion, or to permit Plaintiffs to redefine their own class(es), is well-settled. *See, e.g.*, *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 14 Civ. 6502, 2017 WL 3835339, at *5 (S.D.N.Y. Aug. 30, 2017).

Revising the class definition after *Daubert* motions were briefed has not caused any prejudice to Defendant, since the reliability of Plaintiffs' experts' opinions is independent of the merits of their class certification arguments. This is particularly true here where many of the opinions at issue pertain to the merits and are irrelevant to class certification.

### 2. Ascertainability

**\*8** Defendant frames its argument about identification of class members in terms of ascertainability, but it does not dispute that the class is defined "by objective criteria." *Petrobras*, 862 F.3d at 264 (internal quotation marks omitted). Whether a class member received a text message containing certain content during a particular time period is an objective inquiry. To the extent Defendant argues that the members of the putative classes have not already been ascertained, that is not required at the class certification stage. At this stage, class members must be identifiable but need not have been identified. *Id.* at 266 n.16. To the extent Defendant argues that objective determinations of class membership will require individualized inquiries, as opposed to Verkhovskaya's class-wide approach, that argument goes to predominance, as discussed below. *See id.* at 268.

### 3. Predominance

As discussed above, Defendant argues that Verkhovskaya's purportedly common, class-wide method of identifying class members fails. Defendant also points to two other purportedly individual issues that predominate over common issues: consent and the identity of the person who actually registered their phone number with the NDNCR. As explained below, these arguments are unpersuasive. The many common issues -- including whether the Zipwhip system is an ATDS, whether messages of the form that define the class are solicitations and whether class members' common acts constitute effective across-the-board consent -- predominate over what are speculative individual issues.

#### a. Class Member Identification

Defendant's argument that individual inquiries will be required to identify class members is unsuccessful for the same reason as Defendant's *Daubert* motion to preclude Verkhovskaya. Courts have repeatedly approved the use of LexisNexis's phone number databases for reliably identifying business numbers, which are especially likely to be associated publicly with their owners. *See Chinitz*, 2020 WL 7391299, at *14 (collecting cases). Once business phone numbers are weeded out, it is common sense to label the remaining numbers "most likely residential." As discussed above, it is doubtful whether the "reverse append" process remains relevant at all. The full class lists produced by Defendant and a third party obviate the need to reverse-append class members' names to numbers. To the extent Verkhovskaya's methodology will still require some reverse-appending, it is more robust than the LexisNexis-only methodology criticized by other courts. *Cf. Hunter*, 2019 WL 3812063, at *10-12.

#### b. Consent

Defendant argues that individualized inquiries will be required to determine whether each class member consented to receive text messages. The parties agree that consent is a defense to an alleged violation of the TCPA's ATDS provision. That provision prohibits certain calls made using an ATDS only "without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Plaintiffs dispute whether consent is also a defense to an NDNCR violation, which contains no similar language. Even assuming consent is a defense to liability under any of Plaintiffs' surviving claims, it does not preclude a finding of predominance. Defendant makes two potentially viable consent arguments. Neither requires individualized inquiries, and both can be resolved with class-wide evidence.

First, Defendant argues that certain class members signed two forms by which they purportedly consented to receive texts: a contact authorization form and a privacy notice and acknowledgment. Those forms were signed by every person who purchased or leased a vehicle from HOM, including named Plaintiffs Watson, Espinal, Samarghitan and Greene. Because every class member in that category signed the same forms, the legal issue of whether those signatures support a consent defense and whether that consent transferred to Defendant can be adjudicated with common proof.

**\*9** Second, Defendant argues that even class members who did not sign those forms, such as Plaintiff Jackson, had the opportunity to opt out in response to a text or email. When HOM closed, it texted and emailed its customers, including those who did not purchase or lease vehicles from HOM but only received service, to let them know that Defendant could still service their vehicles. Those texts and emails offered an opportunity to opt out. Defendant asserts that it then sent further messages only to those customers who did not opt out. The legal issues of whether failure to opt out constitutes consent again can be litigated on a common basis because every class member received the same opportunity to opt out.

Plaintiffs suggest creating two sub-classes within the ATDS Class according to the type of purported consent given. Plaintiffs do not suggest the same approach for the NDNCR Class because Plaintiffs argue that consent is not a defense to an NDNCR claim. The issue of subclasses need not be resolved now. Whether applied to one or both classes, adjudicating two class-wide consent defenses will be manageable.

Defendant suggests two other forms of consent that lack legal merit. First, Defendant suggests that some customers have a "preexisting business relationship" with HOM. Defendant has not offered any examples or suggested what kind of relationship a customer might have with her car dealership that would constitute a defense. Second, Defendant suggests that a class member might have consented merely by providing his phone number to HOM. Even if consent were implied by providing one's phone number (which seems unlikely), that theory would be superfluous here. If one of Defendant's theories above involving more explicit consent has merit, Defendant has established consent as to that group of class members. If those more explicit consent theories lack merit, then merely sharing one's number necessarily does not suffice. In any case, the Court will not need to consider, for any class member, whether disclosing one's phone number alone constitutes consent.

c. NDNCR Registration

Whether each class member registered their number on the NDNCR is irrelevant, so that issue cannot predominate over common issues. Defendant suggests that a class member might have inherited a phone number that is registered on the NDNCR by a prior user of that number. That would not affect that class member's entitlement to relief. The NDNCR regulation provides that, once a phone number is registered, it remains protected until it is affirmatively removed from the registry. Several other courts have found "no reason that the private right of action should be limited only to those who can list their numbers on the registry." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019); *see Chinitz*, 2020 WL 7391299, at \*14 ("[Defendant] has provided no basis for its argument that the subsequent call to a number listed on the NDNCR must be to the person who registered the number on the NDNCR.").

Defendant claims that only a person who registered his or her number on the NDNCR can assert a claim under relevant TCPA regulations, and a person whose number was registered by someone else cannot. In support of its reading, Defendant relies on the language of the regulation prohibiting solicitations to a person "who has registered his or her telephone number on the" NDNCR. 47 C.F.R. § 64.1200(c)(2). Defendant's reading does not account for the language that appears immediately after, which provides that "[s]uch do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*; *see Williams v. PillPack LLC*, No. C19-5282, 2021 WL 535215, at \*8 (W.D. Wash. Feb. 12, 2021), *class decertified on other grounds*, 2021 WL 5113467. That provision anticipates the issue Defendant raises, that as phone numbers change hands, the NDNCR may not always perfectly reflect which consumers requested to be included. To resolve the potential ambiguity about who is protected from unwanted calls, the regulation provides that numbers remain protected until they are removed, regardless of whether they "should" still be on the list. The regulation lists two events that result in a phone number no longer being protected – cancellation by the consumer and removal by the administrator -- and the reassignment of a number is not such an enumerated event.

4. Fail-safe Class

**\*10** "A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership." *Nypl v. JP Morgan Chase & Co.*, No. 15 Civ. 9300, 2022 WL 819771, at \*9 (S.D.N.Y. Mar. 18, 2022). Fail-safe classes are "defined in terms of a legal injury" and "beg[ ] the very legal question at issue in the case." *Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649, 2021 WL 2026229, at \*6 (S.D.N.Y. May 20, 2021) (cleaned up). Courts decline to

Case 3:24-cv-01866-JKM    Document 53-11    Filed 03/25/25    Page 9 of 10
Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

certify fail-safe classes because they "are unfair to defendants, prevent an adverse judgment being entered against plaintiffs, and are unmanageable." *Id.* (cleaned up).

The ATDS Class is not a fail-safe class. The ATDS Class includes customers who received "any text messages from" Defendant "using the Zipwhip texting platform" with certain content during a specified period. None of the key liability issues are baked into that class definition, such as whether the Zipwhip platform is an ATDS, whether the messages at issue constituted solicitations or whether class members' conduct constituted consent. Class membership can be determined before any of those questions are adjudicated. If Defendant wins on any or all of those questions, all class members will be bound to that adverse judgment. Defendant's remaining "fail-safe" arguments are simply merits arguments that are premature.

### 5. Commonality and Typicality

Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *accord Dixon v. Bemis*, Nos. 19 Civ. 3356, 19 Civ. 3412, 2020 WL 7212082, at *3 (S.D.N.Y. Mar. 10, 2020). In order to be typical, however, "the lead plaintiff's claims need not be identical to the claims of the class...." *Dixon*, 2020 WL 7212082, at *3 (cleaned up). Defendant's argument that the named Plaintiffs may be subject to unique Article III standing and consent defenses is unpersuasive because, as discussed above, Defendant asserts those defenses against all ATDS Class members on identical grounds. Defendant's argument that Espinal's claims are atypical of the NDNCR Class because he is only the user and not the accountholder for his phone also is unsuccessful. The alleged injury that Espinal and every other class member suffered is *receiving* text messages, not paying for them. *See Melito*, 923 F.3d at 93-95. Defendant has not asserted any meritorious defense based on Espinal's supposed atypicality, so any differences between him and other class members are immaterial.

The commonality requirement is satisfied if questions "capable of classwide resolution" will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson*, 780 F.3d at 137 (quoting *Wal-Mart*, 564 U.S. at 350). As discussed above, common issues include whether Defendant sent solicitations and whether class members provided across-the-board consent. Those issues are central enough to predominate over individual issues, so the commonality requirement necessarily is satisfied as well. *See Johnson*, 780 F.3d at 138 ("Rule 23(b)(3)'s predominance requirement is 'more demanding than Rule 23(a).' ").

### 6. Adequacy & Class Counsel

Defendant's arguments that the Zemel firm cannot adequately represent the class are unpersuasive. Defendant fails to explain why a "conflict" exists because the Zemel firm solicited Plaintiffs or why counsel's and Plaintiffs' interests may not be aligned in this litigation. Especially if Defendant is correct that this action is largely lawyer-driven, then it appears that Plaintiffs' counsel have done extensive work "in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i).

**\*11** Plaintiffs' counsel have been appointed as class counsel many times before. They have extensive experience representing consumers and deep, specialized knowledge of the law in TCPA cases. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii). That counsel's extensive TCPA experience and extensive class action experience have not yet overlapped does not diminish their competence. Nor does the fact that Plaintiffs' counsel have yet to be appointed class counsel in a case in New York. Defendant has given no reason to question counsel's sworn declarations that they will continue to commit the resources required to prosecute this case. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).

Plaintiffs' motion to appoint class counsel is granted, and Plaintiffs' counsel from Zemel Law LLC are appointed to serve as class counsel.

### 7. Superiority

Defendant argues that "[t]he superiority requirement is not met here for the same reasons that Plaintiffs cannot show predominance or commonality." That argument is rejected for the same reasons Defendant's predominance and commonality arguments are rejected above. "Courts routinely hold that a class action is superior where," as here, "potential class members are aggrieved by the same policies and the damages suffered are small relative to the expense and burden of individual litigation." *Clark v. City of New York*, No. 18 Civ. 2334, 2021 WL 603046, at *6 (S.D.N.Y. Feb. 16,

Case 3:24-cv-01866-JKM    Document 53-11    Filed 03/25/25    Page 10 of 10

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)
2022 WL 4586407

2021) (cleaned up). A class action is "superior to other available methods for fairly and efficiently adjudicating" this controversy as well. Fed. R. Civ. P. 23(b)(3).

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED as to the ATDS Class and the NDNCR Class, and Plaintiffs' motion is DENIED as to the IDNC Class. The IDNC claims in the Amended Complaint are DISMISSED for lack of Article III standing. Plaintiffs' motion to appoint the Zemel Law Firm as class counsel is GRANTED. It is hereby ORDERED that

(1) Plaintiffs are appointed class representatives to sue on behalf of the ATDS Class of all HOM customers within the United States that were sent any text messages from Defendant, using the Zipwhip texting platform, stating "Can I text you regarding maintenance of your Honda vehicle" or a similar variant thereof, to nonbusiness wireless telephone numbers, within four years of the filing of this action.

(2) Plaintiff Espinal is appointed the class representative to sue on behalf of the NDNCR Class of all HOM customers within the United States that were sent two or more text messages from Defendant within a 12 month period, using the Zipwhip texting platform, stating "Can I text you regarding maintenance of your Honda vehicle" or a similar variant thereof, to non-business wireless telephone numbers, whose telephone numbers were registered on the NDNCR more than thirty-two days before the first message was sent, within four years of the filing of this action.

(3) Zemel Law LLC is appointed class counsel for both classes.

(4) The parties shall confer as to Notice and any proposed Class Action Notice Administration form, and Plaintiffs shall submit a proposed form of Class Notification to the Court for review and approval within twenty-one days of this Order.

Plaintiffs' motion to preclude Sponsler's first and third opinions is GRANTED to the extent stated above and otherwise DENIED. Defendant's motion to preclude Verkhovskaya's opinion is DENIED, and Defendant's motion to preclude Snyder's opinion is DENIED without prejudice to renewing arguments for precluding or disregarding specific opinions at later stages of the case.

**\*12** Defendant's motion to strike certain statements from Plaintiffs' letter at Docket Number 177 and Plaintiffs' motion to strike certain of Defendant's exhibits are both DENIED as moot. This Opinion does not rely upon the materials that are the subject of these motions.

The Clerk of Court is respectfully directed to close the motions at Docket Number 139, 147, 164 and 186.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4586407

---

Footnotes

1   Defendant's other standing argument -- that class members might have received messages to a business phone number -- is incorrect. Each class expressly excludes business numbers. Apart from its arguments about Article III standing, Defendant does not separately argue that Plaintiffs lack "statutory standing" to pursue ATDS claims.

2   "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.