2022 WL 17732717
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, El Paso Division.

Brandon CALLIER, Plaintiff,
v.
AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, a Florida Corporation, Defendant.

EP-22-CV-00018-FM
|
Signed October 18, 2022

**Attorneys and Law Firms**

Brandon Callier, El Paso, TX, Pro Se.

Danielle A. Gilbert, Husch Blackwell LLP, Austin, TX, for Defendant.

**ORDER DENYING MOTION TO DISMISS**

FRANK MONTALVO, UNITED STATES DISTRICT JUDGE

***1** Before the court are "Plaintiff's Second Amended Complaint" ("Complaint") [ECF No. 24], filed August 9, 2022, by Brandon Callier ("Plaintiff") and "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Motion") [ECF No. 26], filed August 23, 2022, by American Amicable Life Insurance Company of Texas ("Defendant"). In its Motion, Defendant moves to dismiss Plaintiff Brandon Callier's claims pursuant to Federal Rules of Civil Procedure ("Rule") 8(a), 10(b), and 12(b)(6).[1] After due consideration of the Complaint, Motion, and applicable law, the Motion is **DENIED**.

## I. BACKGROUND

*A. Factual Background*

At this stage, the court accepts all non-conclusory allegations in the Complaint as true. They are as follows: Plaintiff has at all relevant times been on the National Do-Not-Call Registry ("DNC").[2] Nevertheless, throughout November and December 2021, he received nineteen cell phone calls featuring a prerecorded message ("Hi, this is Kate from Senior Benefits") soliciting senior life insurance products.[3] Plaintiff consented to none of these calls, and none had an emergency purpose.[4]

On one such call, Plaintiff opted to be connected to a representative who asked certain qualifying questions to determine if Plaintiff was eligible for the life insurance products being sold; upon hearing Plaintiff was only forty-seven years old, the telemarketer hung up.[5] Plaintiff continued to receive prerecorded calls from "Kate." During one of these calls he again opted to connect to a representative, but this time he claimed he was fifty years old "to qualify for an insurance policy in order to find out who was behind the calls."[6] Now qualified, Plaintiff was promptly transferred to Ms. Sophia Ahmed, an insurance agent for Defendant, "who sold Plaintiff a life insurance policy."[7] Shortly thereafter, Plaintiff received a life insurance policy from Defendant American-Amicable Life Insurance Company of Texas.[8]

*B. Procedural Background*

Plaintiff filed his Complaint in August 2022, raising three claims for relief: damages from "non-emergency telemarketing robocalls" in violation of the Telephone Consumer Protection Act ("TCPA")[9]; damages from solicitation to his private phone number, which was listed on the DNC, in violation of the TCPA[10]; and damages pursuant to the Texas Business and Commerce Code, which prohibits telephone communications for purposes of solicitation.[11]

Defendant subsequently filed its Motion, arguing Plaintiff's complaint should be dismissed, first, for failure to meet "basic pleading standards under Rules 8 and 10" by improperly conflating and failing to differentiate between the parties and non-parties.[12] Second, Defendant asserts Plaintiff has not stated a claim for relief as his allegations 1) do not demonstrate vicarious liability and 2) are "entirely conclusory."[13]

## II. LEGAL STANDARD

***2** Rules 8 and 10 pertain to pleading clarity. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14] "Each allegation must be simple, concise, and direct."[15] Rule 10 requires a party to "state its claims or defenses in numbered

paragraphs, each limited as far as practicable to a single set of circumstances."[16]

Rule 12(b)(6) pertains to a pleading's substance, requiring dismissal of a complaint when it fails "to state a claim for which relief can be granted."[17] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[18] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[19] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[21] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[22]

### III. DISCUSSION

Defendant argues Plaintiff's complaint should be dismissed pursuant to Rules 8(a) and 10(b) for failure to meet pleading standards and Rule 12(b)(6) for failure to state a plausible claim for relief. Defendant's overwrought, disingenuous contentions fail at every step.

#### *A. Failure to Meet Pleading Standards*

Defendant complains that Plaintiff has improperly conflated alleged acts by Defendant and Defendant's insurance agent, Ms. Ahmed, who, until recently, was also a defendant in this case.[23] Specifically, Defendant points to Plaintiff's vague, occasional use of 1) "Defendant" in the singular and 2) "Defendants" without specification.[24] Defendant also takes issue with Plaintiff's imprecise reference to the actions by Ms. Ahmed "and/or" Defendant and by Defendants "and/or their affiliates or agents."[25]

According to Defendant, courts "consistently" dismiss "such facially-deficient pleadings ..., even in *pro se* cases."[26] Defendant cites several unreported, out-of-circuit cases. To say none of them are on point is putting it mildly. The best Defendant can muster is *Ewing v. GoNow Travel Club, LLC*[27] and *Cunningham v. Lifestyles Development, LLC*,[28] both of which pertained to inadequate pleading in the TCPA context. In *Ewing*, the plaintiffs' pleading failed because it lumped together and asserted TCPA claims against multiple defendants, any one of whom was alleged to be the possible source behind the violative calls.[29] That is not the case here as Defendant is the only alleged principal.

***3** In *Cunningham*, the plaintiff failed to demonstrate that the entity who physically made the telemarketing call (inviting him to a time share seminar) had any principal-agency relationship with the defendant, which was one of several commercial entities involved in the seminar.[30] There was no indication the defendant had any control over, or even knew about, the violative calls. Thus, *Cunningham* is also inapposite as the alleged principal-agency relationship here is direct and straightforward: Defendant is the alleged principal, Ms. Ahmed its agent, and an unnamed telemarketer a subagent.[31]

Furthermore, Defendant is plainly wrong that Plaintiff's complaint is inadequately pled. The "liberal" pleading standards of the Federal Rules of Civil Procedure aim simply to ensure a defendant has "fair notice of the basis for" a plaintiff's claims.[32] Here, Plaintiff has provided a "short and plain statement" outlining his claim, as required by Rule 8(a), and he has done so in a way that clearly indicates agency relationships between Defendant, Ms. Ahmed, and the telemarketer. His pleadings easily put Defendant on notice, apprising it of the nature of his claims, which he has stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," as required by Rule 10(b).[33] Additionally, the court must hold complaints by *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers."[34] Even if that were not the case, however, the court finds Plaintiff's Complaint is pled with sufficient clarity.

That said, it is true that Plaintiff does occasionally "conflate" Defendant and Ms. Ahmed. When he does, however, his allegations pertain to the relationship between Defendant "and/or" Ms. Ahmed, on the one hand, and the actual telemarketer, on the other. For example, he alleges "Ahmed and/or [Defendant] contracted with an unknown third-party telemarketer to market and solicit insurance products."[35] But such an allegation is permissible for two reasons. First, Plaintiff has no way of knowing who directly hired the telemarketer, although chances are it would have been Defendant and not Ms. Ahmed. Second, even if it had been Ms. Ahmed, she and Defendant allegedly had a principal-

agency relationship, meaning Defendant, the principal, may be liable for her conduct to the extent she was acting as an agent for and on behalf of Defendant.[36] Therefore, the outcome is the same whether Defendant directly hired the telemarketer or Ms. Ahmed did: Defendant may be on the hook.

*B. Failure to State a Claim for Relief*

Defendant next asserts Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claims for relief arise from Defendant's alleged 1) non-emergency telemarketing[37]; 2) solicitation to a DNC-registered phone number[38]; and 3) violations of the Texas Business and Commerce Code, which prohibits telephone solicitations.[39]

a. Non-Emergency Telemarketing

***4** Under the TCPA, it is "unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."[40] Further, "under federal common-law principles of agency, there is vicarious liability for TCPA violations."[41] Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of former.[42]

Plaintiff asserts Defendant made, authorized, or ratified "non-emergency telemarketing robocalls" to his cell phone "without his prior express written consent."[43] Defendant does not dispute Plaintiff received violative calls. Instead, Defendant simply claims Plaintiff failed to allege any facts supporting an agency relationship and therefore vicarious liability.[44]

Defendant again fortifies its position primarily with unreported, inapposite, misapplied, out-of-circuit cases.[45] Yet even a cursory review of this court's TCPA caselaw demonstrates Plaintiff has plausibly alleged an agency relationship between Defendant and the unnamed telemarketer and therefore vicarious liability.

In *Callier v. National United Group, LLC*, this same plaintiff allegedly received a robocall, requested to connect to a live representative, and was then told by the telemarketer she would call him back so he could talk to a sales agent.[46] Mr. Callier received a call back shortly thereafter.[47] This court noted:

> Mr. Callier's information was provided to [the defendant] from the initial telemarketing call and [the defendant] subsequently contacted him because of the telemarketing call. The immediacy between the two calls and the purpose of both imply that the call back was closely linked to the preceding prerecorded call. The proximity and relatedness of these calls allows for a plausible inference that the first prerecorded call was made by or on behalf of [the defendant].[48]

The calls in this case are even more closely connected since no call back was necessary: Plaintiff was connected directly to Ms. Ahmed on the same initial call.[49]

In *Callier v. MultiPlan, Inc.*, although our intrepid litigator failed to identify which of three defendants was the principal, the agent, or the beneficiary behind the robocalls, the court nevertheless "reasonably infer[red] the existence of an agency relationship amongst" them because Mr. Callier claimed they had "authorized a third-party telemarketer to generate prospective customers."[50] "At the very least," this and other allegations suggested one of the defendants "was a principal that authorized other [d]efendants to make robocalls on its behalf or, alternatively, ratified the robocalls by accepting the benefits they yielded."[51]

When Mr. Callier has failed, it has been because he did not directly connect the sale of a solicited product to the original "producer" of that product. In *Callier v. SunPath Ltd.*, he allegedly purchased car warranty policies from an unnamed telemarketer—but he learned the policies were covered by the defendants only after those policies were mailed to his house.[52] The "mere fact that telemarketing calls were made on behalf of" the defendants, however, did not suffice to establish an agency relationship: although the defendants "undoubtedly benefited from the marketing calls, nothing in the pleadings indicate[d] either were aware of the actions allegedly in violation of the TCPA."[53]

***5** Such is not the case here. Plaintiff alleges Ms. Ahmed or Defendant "contracted with an unknown third-party telemarketer to market and solicit [its] insurance products," "supplied the telemarketer with the age, health,


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

income, and state of residence requirements to purchase [those] insurance products," "provided the telemarketer with access to real-time quotes and pricing information for the solicited life insurance products," "authorized the third-party telemarketer to generate automated phone calls with prerecorded voice message scripts," and "gave access to proprietary information to the third-party telemarketer to assist in the robocalling campaign."[54] The telemarketer then called Plaintiff numerous times.[55] Once Plaintiff met the criteria to purchase Defendant's life insurance policy, he was transferred directly to Ms. Ahmed, its sales agent, who sold him a policy.[56]

These allegations are not, as Defendant claims, "wholly conclusory and speculative."[57] Moreover, if they are true, which the court must assume at this stage, they reasonably imply an agency relationship between Defendant and the unnamed telemarketer. First, the allegations demonstrate an agency relationship between the telemarketer and Ms. Ahmed given her direct involvement in the call.[58] Second, they show an agency relationship between Ms. Ahmed and Defendant since Ms. Ahmed is a registered insurance agent for Defendant and sells insurance on its behalf.[59] Thus, the telemarketer was allegedly Defendant's subagent. Texas courts hold a principal vicariously liable for the tortious acts of its subagents.[60]

Accordingly, Defendant's Motion is denied with respect to Plaintiff's first claim for relief.

b. Solicitation to a DNC-Registered Phone Number

"No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."[61] Plaintiff alleges that he has at all relevant times "been on" the DNC.[62]

Defendant contends this second claim for relief must fail for the same reason as Plaintiff's first: he has not adequately pled vicarious liability.[63] As discussed above, the court disagrees.

Defendant next argues Plaintiff's second claim for relief fails as he did not allege that *he himself* registered his number on the DNC.[64] Defendant cites *Rombough v. Robert D. Smith Ins. Agency, Inc.*, an unreported, out-of-circuit case, which dismissed a TCPA claim because the plaintiff, although she claimed her number was registered with the DNC, did not allege she had been the one to register it.[65] Defendant's contention borders on frivolous.

First, this court has already considered a TCPA claim in which a plaintiff alleged her number was registered on the DNC but did not specifically allege she did the registering.[66] That detail, however, did not doom her TCPA claim, to which this court found she was entitled to summary judgment.[67]

***6** Second, *Rombough*'s nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals *who have requested* that telemarketers not contact them.[68] While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.[69]

Finally, at the motion to dismiss stage, "a district court must accept a plaintiff's allegations as true and *indulge all reasonable inferences in their favor.*"[70] A supremely reasonable inference from the allegation that Plaintiff's number was registered on the DNC is that *he* did the registering.

Defendant's Motion is therefore denied with respect to Plaintiff's second claim for relief.

c. Telephone Solicitations Under Texas State Law

Texas Business and Commerce Code provides that anyone "who receives a communication that violates" the TCPA may seek an injunction and damages "against the person who originates the communication."[71]

Defendant makes two arguments against Plaintiff's final claim. First, "[b]ecause Plaintiff's TCPA claims fail," his state law claim also fails.[72] As discussed, however, Plaintiff's TCPA claims do not fail and therefore neither must his state law claim.[73]

Second, Defendant contends Plaintiff's state law claim should be dismissed because "allowing [him] to recover under both statutory schemes for the same alleged calls would amount to an improper double recovery."[74] But Plaintiff is not recovering anything at this stage; the court is simply assessing whether he has plausibly alleged his claims for relief. He has.

## IV. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" [ECF No. 26] is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17732717

Footnotes

1 "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Mot.") 3, ECF No. 26, filed Aug. 23, 2022.

2 "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

3 *Id.* at 6 ¶¶ 30–31, 7–8 ¶ 36.

4 *Id.* at 6 ¶ 30.

5 *Id.* at 8 ¶ 37.

6 *Id.* at 6–7 ¶ 33, 8 ¶ 39.

7 *Id.* at 1 ¶ 3, 7 ¶ 34.

8 *Id.* at 7 ¶ 35.

9 *Id.* at 18–19; *see* 47 U.S.C. § 227(b).

10 *Id.* at 19; *see* 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c).

11 *Id.* at 20; *see* Tex. Bus. & Com. 305.053.

12 Mot. at 3.

13 *Id.* at 3, 2.

14 Fed. R. Civ. P. 8(a)(2).

15 *Id.* § 8(d)(1).

16 *Id.* § 10(b).

17 *Id.* § 12(b)(6).

18 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20 *Id.* (citing *Twombly*, 550 U.S. at 556).

21 *Twombly*, 550 U.S. at 555.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

22 *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

23 *See* "Order to Dismiss Sophia Ahmed," ECF No. 28, entered Sept. 13, 2022.

24 Mot. at 6; *see* Compl. at 2 ¶ 5, 10 ¶ 51, 11–12 ¶ 64, 17 ¶¶ 91–94, 18 ¶ 97, 98, 19 ¶ 3, 20.

25 Mot. at 7 (emphasis removed).

26 *Id.* at 5 (citing *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019); *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019); *Garig v. Travis*, No. 20-654-JWD-RLB, 2021 WL 2708910 (M.D. La. June 30, 2021); *Williams v. Am. Com. Lines, Inc.*, No. 20-139-SDD-EWD, 2020 WL 4574515 (M.D. La. July 23, 2020)); *see also id.* at 7 (citing *Ewing v. GoNow Travel Club, LLC*, No. 19-cv-297-BAS-AGS, 2019 WL 3253058 (S.D. Cal. July 19, 2019); *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 WL 2778250 (S.D. Tex. June 27, 2017); *Cobarobio v. Midland Cnty., Tex.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102 (W.D. Tex. Jan. 7, 2015)); id. at

27 *Ewing*, 2019 WL 3253058.

28 *Cunningham*, 2019 WL 4282039.

29 *See Ewing*, 2019 WL 3253058, at *3.

30 *Cunningham*, 2019 WL 4282039, at *4.

31 Compl. at 6 ¶ 29.

32 *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

33 Fed. R. Civ. P. 10(b).

34 *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

35 Compl. at 11 ¶ 55.

36 *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997) ("A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them.").

37 Compl. at 18–19; *see* 47 U.S.C. § 227(b).

38 *Id.* at 19; *see* 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c).

39 *Id.* at 20; *see* Tex. Bus. & Com. 305.053.

40 47 U.S.C. § 227(b)(1).

41 *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, LLC, 2021 WL 8053527, *15 (W.D. Tex. Aug. 26, 2021).

42 *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

43 Compl. at 9 ¶ 43, 19 ¶ 2.

44 Mot. at 15.

45 *See generally id.* at 12–17.

46 *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, *4 (W.D. Tex. Nov. 17, 2021).

47 *Id.*

48 *Id.* at 7.

49 Compl. at 7 ¶ 34.

50 *MultiPlan*, 2021 WL 8053527, at *15 (internal quotation marks omitted).

51 *Id.*

52 *Callier v. SunPath Ltd.*, W.D. Tex, 3:20-cv-00106-FM, “Plaintiff's First Amended Complaint,” 6 ¶¶ 30–33, ECF No. 27, filed Sept. 9, 2020.

53 *Callier v. SunPath Ltd.*, EP-20-CV-00106-FM, 2020 WL 10285659, *3–4 (W.D. Tex. Aug. 10, 2020).

54 Compl. at 5–6. Plaintiff alleges Defendant “and/or” Ms. Ahmed did these things. Again, however, such allegations nevertheless suffice to imply Defendant's vicarious liability.

55 *Id.* at 6 ¶¶ 32–33.

56 *Id.* at 8 ¶ 39, 7 ¶ 34.

57 Mot. at 15.

58 *See Callier v. Nat'l United Grp., LLC*, EP-21-CV-71-DB, 2022 WL 4088205, *6 (W.D. Tex. Sept. 6, 2022) (finding an agency relationship may have existed between an unnamed telemarketer and an insurance agent because, although the insurance agent was not present on the call, she had a “high degree of ‘relatedness’ ” to the call as she was the one “responsible for the act of selling of insurance policies”).

59 Compl. at 1 ¶ 3.

60 *See, e.g., Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012).

61 47 C.F.R. § 64.1200(c).

62 “Plaintiff's Second Amended Complaint” (“Compl.”) 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

63 Mot. at 17.

64 Mot. at 18.

65 *Id.* (citing *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, *2–3 (N.D. Iowa June 9, 2022)).

66 *Atkinson v. Pro Custom Solar LLC*, SA-21-CV-00178-OLG, 2022 WL 4071998, *8 (W.D. Tex. Sept. 1, 2022).

67 *Id.*

68 *See* Federal Trade Commission, *National Do Not Call Registry*, https://www.donotcall.gov/.

69 *See, e.g., MultiPlan*, 2021 WL 8053527; *Nat'l United Grp., LLC*, 2022 WL 4088205; *Nat'l United Grp., LLC*, 2021 WL 5393829; *SunPath Ltd.*, 2020 WL 10285659.

70 *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, *2 (W.D. Tex. May 10, 2021) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)) (emphasis added).

71 Tex. Bus. & Com. 305.053.

72 Mot. at 19.

73 *See, e.g.*, *Nat'l United Grp., LLC*, 2021 WL 5393829, at *10 ("Since the Court has already found that Mr. Callier adequately states a claim under the TCPA, it also finds that he adequately states a claim under § 305.053.").

74 Mot. at 20.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.