IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH FRIEL,                              :        No. 3:24cv1866
individually and on behalf of others       :
similarly situated,                        :        (Judge Munley)
             Plaintiff          :
                                          :
       v.                  :
                                          :
LINE 5, LLC and HEADSTART                   :
WARRANTY GROUP, LLC,                        :
           Defendants         :

## MEMORANDUM

This putative class action case involves automated telephone calls allegedly sent by companies selling, guaranteeing, and/or financing vehicle service contracts, otherwise known as extended car warranties. After receiving numerous unsolicited extended-warranty calls over a two-month period, Plaintiff Joseph Friel filed this action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), seeking to represent a nationwide class of robocall recipients and a class of recipients on the National Do Not Call Registry ("DNCR"). Before the court is a motion to strike the class allegations from Friel's complaint prior to discovery. Also pending is a motion to bifurcate discovery, which actually requests that discovery be conducted in three separate phases. Both motions are ripe for disposition.

**Background[1]**

Friel's TCPA complaint alleges that former defendant JEA Management Services d/b/a Covered Auto ("JEA") sent prerecorded telemarketing calls on behalf of Defendants Headstart Warranty Group, LLC ("Headstart") and Line 5, LLC ("Line5"), including to recipients on the DNCR without the call recipient's express written consent. (Doc. 1, Compl. ¶ 5).

As for the extended car warranties involved in this TCPA litigation, Friel's complaint details a joint enterprise among the JEA, Headstart, and Line5 entities. Id. ¶ 17.  As alleged, JEA and Headstart sell vehicle service contracts with JEA acting as a sales agent and Headstart acting as the guarantor of the contracts. Id. ¶¶ 14–15.  Line5 handles customer management, payment processing, and provides financing for the contracts sold by JEA and guaranteed by Headstart. Id. ¶ 16.  To generate business, JEA places telemarketing calls, some of which are prerecorded, on behalf of Headstart and Line5. Id. ¶ 17.

Friel further alleges that he maintains a personal residential telephone number, which has been on the DNCR since 2011. Id. ¶¶ 18–20.  According to the plaintiff, he has never been a customer of JEA, Headstart, or Line5 and never inquired into being a customer of these entities. Id. ¶ 21.  Nevertheless, Friel

---

[1] This background section derives from the facts alleged in plaintiff's complaint.  The court makes no determination as to the veracity of these allegations.

received at least fourteen (14) telemarketing calls from JEA between August 8, 2024 and September 27, 2024. Id. ¶ 22. The caller IDs from these incoming calls reflected different phone numbers from area codes associated with the Philadelphia, Allentown-Bethlehem-Easton, and Scranton–Wilkes-Barre metropolitan areas. Id. ¶¶ 22, 27.

Friel answered the calls. They all began with a prerecorded voice message with fake typing and office background noise. Id. ¶¶ 23, 24. A robotic voice greeted Friel by name, identified that it was calling on behalf of the "vehicle service department," and asked how the plaintiff was doing. Id. ¶ 24. Friel hung up on most of the calls. Id. ¶ 26.

Friel answered one of the calls on September 27, 2024. Id. ¶ 27. Plaintiff heard the above prerecorded message, responded to questions posed by the artificial intelligence agent, and was then transferred to a human representative. Id. ¶¶ 23–32. Next, Friel listened to that representative's sales speech about a vehicle service contract and the financing program offered by Defendant Line5. Id. ¶¶ 32–33. Subsequently, Friel received various emails and text messages from Line5 and a copy of a vehicle service contract for signature. Id. ¶ 36. From these communications, Friel discerned JEA, Headstart, and Line5's roles in the telephone calls. Id. ¶¶ 37–39.

3

Approximately one month later, on October 29, 2024, Friel initiated this putative class action against JEA, Headstart, and Line5 under 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c)(5) seeking to represent himself and other similarly situated individuals. (Doc. 1, Compl. ¶¶ 90–99).   JEA responded by filing three motions: 1) a motion to strike class allegations, (Doc. 29); 2) a motion to dismiss for failure to state a claim, (Doc. 31), and 3) a motion to trifurcate discovery, (Doc. 33).   JEA filed briefs in support of each motion. (Docs. 30, 32, 34). Defendant Line5 joined JEA's motion to strike and motion to trifurcate discovery. (Docs. 45–46).

On March 25, 2025, Friel filed a notice of voluntary dismissal regarding JEA. (Doc. 50).  JEA's dismissal rendered the motion to dismiss moot.  (Doc. 51). The court determined that Line5's joinder to the other motions required oppositional briefing. Id.  Friel subsequently filed his briefs in opposition as ordered. (Docs. 52–53).  Line5 then filed a reply brief regarding the motion to trifurcate discovery, (Doc. 54), but not the motion to strike.  Based on the briefs of JEA and Friel, the motion to strike plaintiff's TCPA class allegations is ripe for disposition.  Similarly, the motion seeking phased discovery is ready for a decision based upon the briefs of JEA, Friel, and Line5.

**Jurisdiction**

Because Friel brings suit under a federal statute, the court has subject

matter jurisdiction pursuant to 28 U.S.C. § 1331. See Mims v. Arrow Fin. Servs.,

LLC, 565 U.S. 368, 387 (2012) (holding that nothing in the text, structure, or

legislative history of the TCPA calls for displacement of federal question

jurisdiction).

**Analysis**

**1. The TCPA and the Proposed Classes**

This putative class action concerns alleged violations of the TCPA. "The

TCPA protects businesses and consumers from intrusive telemarketing

communications." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606

U.S. 146, 149 (2025). The TCPA "makes it unlawful to use an automatic

telephone dialing system or an artificial or prerecorded voice message, without

the prior express consent of the called party, to call any... cellular telephone, or

other service for which the receiver is charged for the call." Mims, 565 U.S. at

373 (citing 47 U.S.C. § 227(b)(1)(A)). The TCPA also "forbids using artificial or

prerecorded voice messages to call residential telephone lines without prior

express consent. Id. (citing 47 U.S.C. § 227(b)(1)(B)). "In plain English, the

TCPA prohibited almost all robocalls to cell phones." Barr v. Am. Ass'n of Pol.

Consultants, Inc., 591 U.S. 610, 615 (2020) (footnote omitted).

Additionally, Section 227(b) contains a private right of action based on violations of that subsection or the regulations prescribed under that subsection. 47 U.S.C. § 227(b)(3). Under Section 227(b)(3), a person or entity may: 1) obtain injunctive relief; 2) recover actual monetary loss or receive $500 in damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(b)(3)(A)–(C). "The TCPA imposes tough penalties for violating the robocall restriction," including trebling the above damages for willful or knowing violations, "which can add up quickly in a class action." Barr, 591 U.S. at 616.

Section 227(c) concerns further protections of residential telephone subscribers' privacy rights and directs the Federal Communications Commission ("FCC") to prescribe regulations regarding do-not-call systems. See 47 U.S.C. § 227(c)(1)–(4). Section 227(c) "authorizes a private right of action for violation of the FCC's implementing regulations[]" related to do-not-call. See 47 U.S.C. § 227(c)(5); Mims, 565 U.S. at 375 & n.5. Section 227(c)(5) permits a civil action by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations[.]" 47 U.S.C. § 227(c)(5).[2] Under Section 227(c)(5), a person or entity may: 1)

---

[2] Pursuant to FCC regulations, "[n]o person or entity shall initiate any telephone solicitation to: … A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

obtain injunctive relief; 2) recover actual monetary loss or receive $500 in

damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(c)(5)(A)–(C).  A

plaintiff may also seek treble damages for willful or knowing violations of the do-

not-call regulations. Id.

These statutory provisions and attendant regulations form the basis of

Friel's complaint against the defendants.  They also form the basis of his two

proposed classes.  The proposed Robocall Class stems from the alleged Section

227(b) and related regulatory violations, while the proposed National Do Not Call

Registry Class ("DNCR Class") derives from the alleged Section 227(c) and

related regulatory violations.

### 2. Motion to Strike Class Allegations

There are two motions presently pending before the court.  First, as

mentioned above, Line5 joined in JEA's motion to strike the class allegations

from Friel's complaint. The motion to strike is partly premised upon Rule 12(f) of

the Federal Rules of Civil Procedure.  Rule 12(f) provides that the court "may

strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter." FED. R. CIV. P. 12(f).  Rule 12(f) motions are

designed to clean up the pleadings, streamline litigation, and avoid unnecessary

forays into immaterial matters. Goode v. LexisNexis Risk & Info. Analytics Grp.,

Inc., 284 F.R.D. 238, 243 (E.D. Pa. 2012) (citations omitted); see also McInerney

7

v. Moyer Lumber and Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D. Pa. 2002).

Providing relief under Rule 12(f) is largely disfavored and such motions are

typically denied "unless the material bears no possible relation to the matter at

issue and may result in prejudice to the moving party." Miller v. Group Voyagers,

Inc., 912 F.Supp. 164, 168 (E.D. Pa. 1996).  In the class action context, however,

it is unlikely that a defendant can show that a plaintiff's class allegations

constitute matters usually contemplated by Rule 12(f). See In re Ry. Indus. Emp.

No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019) (citations

omitted).

The motion to strike is also premised upon Federal Rule of Civil Procedure

23, which governs the administration of class actions in federal courts. See

Perrigo Institutional Inv. Grp. v. Papa, No. 24-2861, --- F.4th ----, 2025 WL

2315977, at *4 (3d Cir. Aug. 12, 2025).  Although "an ingenious procedural

innovation[,]" Eubank v. Pella Corp., 753 F.3d 718, 719 (7th Cir. 2014), "[t]he

class action is 'an exception to the usual rule that litigation is conducted by and

on behalf of the individual named parties only.' " Wal-Mart Stores, Inc. v. Dukes,

564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701

(1979)).  Thus, to ensure that named plaintiffs are appropriate representatives of

the class whose claims they wish to litigate, Rule 23(a) contains four

requirements: numerosity, commonality, typicality, and adequacy of

representation. See id. at 348–49.  Additionally, for a class to be certified, the requirements of Rule 23(b)(1), (2), or (3) must also be met. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012).

Friel brings this putative TCPA class action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3). (Doc. 1, Compl. ¶ 73).  Rule 23(b)(2) is used to pursue injunctions in class actions. See In re: Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 323 (3d Cir. 2019).  The complaint requests injunctive relief to prohibit defendants from using prerecorded voices in the future and from making telemarketing calls to telephone numbers on the DNCR. (Doc. 1, Compl. ¶¶ 94, 99).  Friel, however, also seeks statutory damages on behalf of himself and the putative classes. Id. ¶¶ 92–93, 98.  Rule 23(b)(2) certification is not authorized when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant, or when each class member would be entitled to individualized award of monetary damages.  Wal-Mart Stores, Inc., 564 U.S. at 360.  Rather, "individualized monetary claims belong in Rule 23(b)(3)." Id. at 362.  Under Rule 23(b)(3), a class action may be maintained if the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to

9

other available methods for fairly and efficiently adjudicating the controversy."[3] FED. R. CIV. P. 23(b)(3).

Rule 23(c) further provides that "[a]t an early practicable time after a person sues…as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). Additionally, Rule 23(d) permits the court to issue orders that: 1) "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument[,]" FED. R. CIV. P. 23(d)(1)(A), and/or 2) "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[,]" FED. R. CIV. 23(d)(1)(D). Consequently, where the goal of the motion to strike is to eliminate class allegations prior to discovery, other district courts have concluded that such motions should be considered under the above provisions of Rule 23, not under Rule 12(f). See In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d at 496; see also Johnson v. Ally Fin. Inc., No. 1:16-CV-1100, 2017 WL 3433689,

---

[3] At this juncture, it is unknown how Friel will proceed if this matter reaches a motion for class certification. Given the availability of statutory damages of up to $1500 per class member under the TCPA, it may be later determined that this case is more driven by money damages than equitable relief, which would make certification under Rule 23(b)(2) inappropriate. See e.g. Jackson v. Locust Med., LLC, No. 4:22-CV-00424, 2024 WL 2701695, at *5 (M.D. Pa. May 24, 2024) (Brann, C.J.) (denying a plaintiff's motion to certify a class under Rule 23(b)(2) where the complaint included a request for statutory damages under the TCPA).

at *2 (M.D. Pa. Aug. 10, 2017) (Conner, J.) (concluding that a motion to strike class allegations is not an improper procedural device).

To determine whether the requirements of Rule 23 have been satisfied, "a district court must conduct a 'rigorous analysis.' " Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)).[4] There are "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Id. at 93, n.30. Thus, "delving into the propriety of class certification" can be "the wrong focus" at an early stage of a proceeding where there has been no motion for class certification and no discovery. Id. at 93–94. After all, "[a]n order striking class allegations is functionally equivalent to an order denying class certification[.]" Microsoft Corp. v. Baker, 582 U.S. 23, 34, n.7 (2017).

One of the "rare few" instances where an early motion to strike class allegations may be granted is where the class definitions create impermissible fail-safe classes. See Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015). "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has

---

[4] Landsman is an opinion that has been reinstated in part, to the extent it is consistent with Mims. See No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

a valid claim.' " Id. (quoting Messner v. Northshore University HealthSystem, 669

F.3d 802, 825 (7th Cir .2012)).

Friel's Robocall Class is defined as:

> All persons in the United States who, (1) within four years
> prior to the commencement of this litigation until the class
> is certified (2) received one or more calls on their cellular
> telephone or any other protected telephone service (3)
> from or on behalf of JEA Management Services d/b/a
> Covered Auto, Headstart Warranty Group LLC, or Line 5,
> LLC, (4) sent using the same, or substantially similar, pre-
> recorded message used to contact the Plaintiff.

(Doc. 1, Compl. ¶ 74).

Friel's DNCR Class is defined as:

> All persons within the United States: (1) whose residential
> telephone numbers were on the National Do Not Call
> Registry for at least 31 days; (2) but who received more
> than one telephone solicitation call from Defendants or a
> third party acting on Defendants' behalf; (3) within a 12-
> month period; (4) within the four years prior to the filing of
> the Complaint.

Id.

The motion to strike asserts that the proposed class definitions are facially

uncertifiable.  Line5 has adopted JEA's arguments that the proposed class

definitions are overbroad, lack commonality, and are defined vaguely.  There are

no specific arguments that the proposed classes are fail-safe, yet this

consideration hangs over the analysis.

### a. Overbreadth Arguments

Defendant Line5 has joined in former defendant JEA's argument that both

the proposed Robocall Class and the DNCR Class are overbroad.  The Robocall

Class definition is challenged as overbroad because it fails to exclude calls to

individuals who consented to their receipt.[5]  Similarly, the DNCR Class is

challenged because this proposed class may include calls made to individuals

with an established business relationship ("EBR") with the defendants and may

include individuals who did not personally place their number on the DNCR.[6]

After careful consideration, however, Friel appears to be in a situation

where he is forced to choose between two vulnerable alternatives in proposing

class definitions at the outset of the litigation.  On one hand, Friel must define his

---

[5] To succeed with a cause of action under 47 U.S.C. § 227(b)(1) under the circumstances alleged in the complaint, Friel must show that defendants: 1) made "any call…using any automatic telephone dialing system or an artificial or prerecorded voice[;]" 2) to "any telephone number assigned to a…cellular telephone service[;] 3) without "the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

[6] There are certain regulatory defenses to TCPA actions premised upon 47 U.S.C § 227(c) and the do-not-call regulations.  Pursuant to the regulations, a "telephone solicitation" does not include a call to any person with whom the caller has an EBR. 47 C.F.R. § 64.1200(f)(15)(ii). EBR is separately defined in 47 C.F.R. § 64.1200(f)(5).  Furthermore, pursuant to the do-not-call regulations, "[n]o person or entity shall initiate any telephone solicitation to…[a] residential subscriber who has registered his or her telephone on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).  Defendant Line5 adopts JEA's argument that this requires individuals to personally register their phones on the DNCR.  Friel counters that personal registration is not required and would be impossible to prove in any case. (Doc. 53, Pl. Br. in Opp. at 15–17).  The court need not reach this issue in disposing of the motion to strike.

classes with reference to objective criteria. See Lewis v. Gov't Emps. Ins. Co.,

98 F.4th 452, 462 (3d Cir. 2024) (citing Byrd v. Aaron's Inc., 784 F.3d 154, 163

(3d Cir. 2015)). On the other hand, if Friel uses certain qualifiers, his proposed

definitions could be deemed to advance improper fail-safe classes. [7]

As indicated above, "[a] fail-safe class bases its membership upon the

validity of putative members' legal claims, meaning that 'a class member either

wins or, by virtue of losing, is defined out of the class and is therefore not bound

by the judgment.' " Jackson, 2023 WL 2472606, at *3 (quoting Messner, 669

F.3d at 825). More simply stated, fail-safe classes preclude membership in the

class unless a putative member would prevail on the merits. See Orduno v.

Pietrzak, 932 F.3d 710, 716 (8th Cir. 2019).

Fail-safe classes cannot satisfy the ascertainability requirement of some

class actions. See Zarichny, 80 F. Supp. 3d at 625 (citation omitted); see also

Byrd, 784 F.3d at 163 & n.7 (explaining that a plaintiff seeking certification under

Rule 23(b)(3) must prove by a preponderance that the class is ascertainable, but

that ascertainability is not a requisite of a Rule 23(b)(2) class). The

ascertainability standard requires a plaintiff to show that: (1) the class is defined

---

[7] "Although the United States Court of Appeals for the Third Circuit has not explicitly considered whether fail-safe classes are permissible, it has approvingly cited rulings by other circuits that categorically disallow fail-safe classes." Jackson v. Meadowbrook Fin. Mortg. Bankers Corp., No. 4:22-CV-01659, 2023 WL 2472606, at *3 (M.D. Pa. Mar. 10, 2023) (Brann, C.J.) (citing Byrd, 784 F.3d at 167; In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015); Messner, 669 F.3d at 825)).

14

with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Byrd, 784 F.3d at 163 (citations omitted).

In Zarichny, the Honorable Stewart R. Dalzell in the Eastern District of Pennsylvania determined that a putative TCPA class was defined in a fail-safe manner and granted a motion to strike. 80 F.Supp. 3d at 623–26.  The proposed TCPA class was comprised of "those people 'who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system' without prior con[s]ent[.]" Id. at 623.  Because the class was defined in a manner which only would include those who did not provide the defendant with prior consent, the court determined that "there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]." Id. at 625–26.  In other words, the TCPA class could not be certified as defined in the initial pleading because the issue of consent was central to the merits of the underlying dispute.

Accordingly, many district courts within the Third Circuit have determined that TCPA class definitions avoid fail-safe concerns by omitting the issue of

consent or other merits-based criteria. See Jackson v. Direct Bldg. Supplies LLC, No. 4:23-CV-01569, 2024 WL 184449, at *9 & n.101 (M.D. Pa. Jan. 17, 2024) (Brann, C.J.) (collecting cases); see also Abella v. Student Aid Ctr., Inc., No. CV 15-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015) (noting the lack of reference to an automatic telephone dialing system in the proposed class definition since that is a required element of a Section 227(b)(1)(A) claim)).[8] Consequently, to avoid fail-safe issues with his proposed Robocall Class in this case, Friel asserts that he intentionally did not include consent language in his class definition. (Doc. 53, Pl. Br. in Opp. at 13).

As indicated above, Line5 has adopted arguments challenging the proposed Robocall Class definition because it fails to exclude calls made with consent. In joining the motion to strike, Line5 also finds fault in the proposed DNCR Class definition because it fails to exclude calls to individuals with an EBR. Adding these qualifiers to the class definitions would incorporate more elements of liability into the definitions. That would then arguably require all putative class members to have winning TCPA claims before being included in

---

[8] On the other hand, the Honorable Christopher C. Conner reached a slightly different result when faced with this issue on a motion to strike in Johnson. 2017 WL 3433689 at *2–*3. Although the proposed TCPA class in Johnson included reference to consent, Judge Conner determined that it was not a facially uncertifiable fail-safe class because the proposed class definition contained reference to business records, which, with discovery, could reveal an ascertainable class. Id. at *1, *4.

the class. Although non-binding, the above cases discussing fail-safe classes would provide defendants with different arguments to strike the class allegations if Friel included reference to a lack of consent or an EBR in his proposed definitions. The court cannot fault Friel for choosing to define his classes around TCPA merits-based criteria.

As for authority binding on this court, "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of [automated phone calls]." Landsman, 640 F.3d at 93–94. Friel's complaint alleges that the proposed classes are identifiable as presently defined through defendants' dialer records, other phone records, and phone number databases. (Doc. 1, Compl. ¶ 79). In the absence of discovery into these records, the court is unwilling to determine whether Friel's classes are defined too broadly or whether they fall short of ascertainability. Line5 thus has not demonstrated a valid reason to strike Friel's class allegations based on the potential breadth of the proposed classes.

### b. Commonality Arguments

Line5 has also adopted JEA's arguments that Friel's proposed classes lack commonality, that is, "the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Wal-Mart Stores, Inc., 564 U.S. at

17

349 (citing FED. R. CIV. P. 23(a)).  Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, not merely that they have all suffered violation of the same provision of law. See id. (citations omitted).  The claims "must depend upon a common contention[,]" which "must be of such a nature that is capable of classwide resolution[,]" meaning that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. As observed, "[t]he commonality requirement is not especially arduous." Johnson, 2017 WL 3433689, at *4.

For his part, Friel's complaint alleges that he received calls related to some extended-warranty sales effort using an artificial or prerecorded voice without his consent in violation of the TCPA. (Doc. 1, Compl. ¶¶ 18–31).  Only discovery will reveal whether Friel's proposed classes sustained the same injuries from those sales efforts.  Accordingly, the court also rejects arguments that the proposed classes are facially uncertifiable based on a lack of commonality.

### c. Vagueness Arguments

Lastly, Line5 has adopted JEA's arguments that the Robocall Class must be stricken for vagueness because that proposed definition uses the phrase "same, or substantially similar" when describing the prerecorded messages allegedly sent by the defendants.  In support, the motion to strike argues that, as

presently defined, there would be no way for defendants to know which putative

class members received the exact message that Friel received, and which

putative class members received a "substantially similar" message. (Doc. 30,

JEA Br. in Supp. at 20–21). Furthermore, per the arguments advanced in the

motion to strike, the "substantially similar" definition uses improper subjective

criteria and is improperly imprecise for a class action. Id.

Friel counters that such a definition is not vague under the circumstances

because it essentially contemplates that defendants could have violated the

TCPA as to other putative class members through the same sales efforts, but by

using a different robotic voice, for example, or the same voice with a different

script. (Doc. 53, Pl. Br. in Opp. at 21). Moreover, Friel explains that, even with

this definition, his proposed Robocall Class is limited to calls that presumably had

the same factual predicate for being sent, i.e., sales calls. Id. at 22.

Friel's argument signals that he is open to adding more qualifiers to his

class definitions as this case moves forward. The court, however, will not strike

the definitions or adjust any portion *sua sponte.* Discovery has not yet

commenced and no motion to certify the class has been filed. To the extent that

there are critical vagueness issues with Friel's proposed Robocall Class

definition, those issues would be more easily understood following a period of

discovery. Accordingly, the motion to strike Friel's class allegations will be denied.

### 3. Motion to Trifurcate Discovery

On the issue of discovery, Defendant Line5 also joined in JEA's motion seeking to conduct discovery in three separate stages, that is, 1) discovery into Friel's individual claims; 2) discovery into the appropriateness of class certification if Friel's claims proceed; and 3) if any class is ultimately certified, merits discovery for the class or classes. (Doc. 34, JEA Br. in Supp.; Doc. 45, Line5 Joinder Notice). Friel opposes, arguing that, if this TCPA action has merit, a trifurcated course of discovery will lead to three rounds of written discovery, three rounds of depositions (with the same witnesses being deposed three times), three rounds of potential discovery disputes, and then three rounds of dispositive motions. [9]  (Doc. 52, Pl. Br. in Opp. at 1-3).

Unlike JEA, which has been dismissed, Defendant Line5 filed an answer to Friel's complaint. (Doc. 20). Line5's answer does not raise any defenses unique to Friel's individual claims, only defenses common across the putative TCPA classes. (See Doc. 20, Affirmative and Other Defenses, ¶ 1 ("Line5 did not make

---

[9] Defendant Line5 indicates in its reply brief (filed after JEA's dismissal) that it only wishes to *bifurcate*, not *trifurcate* discovery. (Doc. 54). After review of Line5's reply brief, Line5 proposes a course of discovery that has no discernable distinction from the one proposed by JEA in the motion as initially filed.

or authorize any calls on its behalf."), ¶ 3 ("Upon information and belief, the alleged calls were not selling Line5's services, but rather the calls were made for the purpose of selling an extended car warranty provided by another of the defendants.")).  Line5 has not otherwise demonstrated why Friel's specific TCPA claims would be any different from the claims of the putative class members. The court thus sees no reason to bifurcate, trifurcate, or otherwise order that discovery be conducted in phases at this time.  Accordingly, the discovery motion will be denied, and this case will be scheduled for a case management conference.

**Conclusion**

    For the reasons set forth above, JEA's motion to strike class plaintiff's allegations and motion to trifurcate discovery will be denied.  An appropriate order follows.

Date:  8/21/25

JUDGE JULIA K. MUNLEY
United States District Court